IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH AWALT, as Administrator of the ESTATE OF ROBERT AWALT, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| TERRY MARKETTI, individually and in his official capacity as SHERIFF OF GRUNDY COUNTY; COUNTY OF GRUNDY; DUANE MCCOMAS, individually and in his official capacity as Superintendent of Grundy County Jail; Correctional Officers, MELONEY VAN CLEAVE, PATRICK SELOCK, MATTHEW WALKER, ROBERT MATTESON, DAVID OBROCHTA and UNKNOWN EMPLOYEES OF GRUNDY COUNTY JAIL; CORRECTIONAL HEALTHCARE COMPANIES, INC.; HEALTH PROFESSIONALS, LTD.; Health Professionals, Ltd. employees DR. STEPHEN CULLINAN, M. CLAUSON, R.N., and UNKNOWN EMPLOYEES OF CORRECTIONAL HEALTHCARE COMPANIES, INC. AND HEALTH PROFESSIONALS, LTD. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 11 C 6142<br><br>Judge Virginia M. Kendall |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Elizabeth Awalt sued Grundy County, its Sheriff, and employees of the Grundy County Jail

(collectively "Grundy County Defendants"). She also sued Correctional Healthcare Companies, Inc.

("CHC") and Health Professionals, Ltd. ("HPL"), two companies that provide medical services to

the Grundy County Jail, and their employees, including Dr. Stephen Cullinan and Nurse Marjorie

1

Clauson (collectively "Defendant Medical Care Providers"). Mrs. Awalt's claims arise out of the death of her husband, Robert Awalt, who died while in the custody of the Grundy County Jail. Mrs. Awalt alleges that the Defendants violated her husband's federal constitutional rights and asserts claims under 42 U.S.C. § 1983 for denial of medical care (Count I); conspiracy (Count II); and failure to intervene (Count III). Mrs. Awalt also alleges supplemental state-law claims, including a survival action for intentional infliction of emotional distress pursuant to the Illinois Survival Act, 755 ILCS 5/27-6 (Count IV); a wrongful death action based on an intentional battery to Mr. Awalt pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq*., (Count V); a wrongful death action based on the Defendants' negligent or willful and wanton conduct towards Mr. Awalt pursuant to the Illinois Wrongful Death Act (Count VII); a survival action based on the Defendants's negligent or willful and wanton conduct towards Mr. Awalt pursuant to the Illinois Survival Act (Count VIII); a claim for *respondeat superior* against CHC and HPL (Count IX); a claim for *respondeat superior* against the Sheriff (Count X); and a claim for indemnification (Count XI).

The Grundy County Defendants answered Mrs. Awalt's Complaint and the Defendant Medical Care Providers filed three Motions to Dismiss; one by Dr. Cullinan, one by Nurse Clauson, and one by CHC and HPL. The Defendants ask the Court to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8, 10, 12(b)(6), 12(f), and Illinois Code of Civil Procedure Section 2-622. CHC and HPL also ask the Court to bifurcate and stay the *Monell* claims arising out of the Complaint.

## I. Background

In deciding the instant Motions, the Court assumes the veracity of the well-pled allegations in Mrs. Awalt's Complaint and construes all reasonable inferences in her favor. *See Killingsworth*

2

*v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007), citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). On September 15, 2010, Mr. Awalt was arrested and detained at the Grundy County Jail. Mr. Awalt was an epileptic, and he controlled his seizures with the prescription drugs Dilantin and Topamax. Mr. Awalt did not have his medication with him at the time he was booked and jailed. The Defendants were repeatedly warned by both Mr. and Mrs. Awalt about Mr. Awalt's medical condition and informed that he required monitoring and medication. The Defendants recorded the drugs that Mr. Awalt required on his intake forms and in medical evaluations, and they observed his physical symptoms. Mrs. Awalt alleges that all of this clerical work made Mr. Awalt's serious medical condition apparent to the Defendants. Despite all of this information, none of the Defendants provided Mr. Awalt with medicine or other needed medical attention. On September 19, 2010, Mr. Awalt called for help from his cell, telling the Defendants that he needed medicine. Inmates in nearby cells also called out for help, asking the Defendants to provide medical attention to Mr. Awalt. Mrs. Awalt alleges that the Defendants heard all of these calls for help but did nothing. Mr. Awalt was found pulseless in his cell and taken to Morris Hospital. He was pronounced brain dead on September 20, 2010.

## II. Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007), citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when

"accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. If the factual allegations are well-pleaded, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *Id* at 679. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 678.

## III.  Discussion

### A.  Motions to Dismiss

In their Motion to Dismiss, the Defendants argue that: (1) Section 2-622 of the Illinois Code of Civil Procedure bars Mrs. Awalt's state-law claims; (2) Counts VII and VIII assert a claim for "willful or wanton conduct" which is a tort theory that does not exist under Illinois law; (3) Section 2-1115 of the Illinois Code of Civil Procedure bars recovery for punitive damages on Mrs. Awalt's state-law claims; (4) either Count I or III should be stricken because they are redundant; and (5) the Complaint does not satisfy the federal pleading requirements of Rule 8 as interpreted by the Supreme Court in *Twombly* and *Iqbal*.

### *I. Section 2-622 of the Illinois Code of Civil Procedure*

Defendants challenge Counts IV through IX by asserting that Mrs. Awalt failed to file the requisite affidavit pursuant to Section 2-622 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-622. Section 2-622 is a "procedural pleading requirement" that requires any plaintiff bringing a medical malpractice suit to attach to the complaint an affidavit stating that the plaintiff has consulted

with a healthcare professional who opines that the plaintiff has a reasonable and meritorious cause to file the claim. *See Espedido v. St. Joseph Hosp., Inc.*, 526 N.E.2d 664, 670 (Ill. App. Ct. 1988).

In determining whether this is fatal to her claim, the Court addresses whether this is a substantive or procedural law first. Under the *Erie* doctrine, federal courts sitting in a case in which state law supplies the rule of decision apply the appropriate state's 'substantive' law but follow federal 'procedural' law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); accord *Gasperini v. Center for Humanities*, 518 U.S. 415, 427 (1996). The Seventh Circuit has implicitly held that Section 2-622 applies to state-law claims brought in federal court by holding that it was an abuse of discretion to dismiss a complaint which did not have the affidavit rather than allowing the plaintiff an opportunity to amend that complaint. *See Lingle* 223 F.3d 605, 613 (7th Cir. 2000).

The majority of district courts to address the issue post-*Lingle* have also assumed that the statute provides a substantive rule of law and therefore that it applies to state-law claims brought in federal court. *See*, *e.g.*, *Maldonado v. Sinai Medical Group, Inc.,* No. 06 C 4149, 2008 WL 161671, at *4 n.5 (N.D. Ill. Jan. 16, 2008), citing *Chapman v. Chandra*, No. 06 C 0651, 2007 WL 1655799, at *3 (S.D. Ill. June 5, 2007) (collecting cases). One district court has rejected the notion that Section 2-622 is a substantive law and held that as a procedural pleading rule it is not applicable to state-law claims in federal court. *See, e.g.*, *Obermeyer v. Pedicini*, No. 99 C 2440, 2000 WL 290444, at *4 (N.D. Ill. March 17, 2000).

It is not necessary to resolve the dispute, however, since Awalt has not alleged any state-law claims of medical malpractice against any of the Defendants. Without a single state-law claim of medical malpractice, Section 2-622 has no application to the instant case. Section 2-622 applies *exclusively* to claims for medical malpractice. *See Eads v. Heritage Enterprises, Inc.,* 787 N.E.2d

5

771, 775 (Ill. 2003) (Section 2-622 "does not apply to all civil actions. By its terms, it is applicable only to actions...in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice") (internal citations and quotations omitted). Both Illinois courts and federal courts interpreting Illinois law have repeatedly held that Section 2-622 applies to claims for medical malpractice only. *See id.*; *see also Ayon v. Balanoff*, 721 N.E.2d 719, 722 (Ill. App. Ct. 1999) (holding that the statute does not extend beyond claims for medical malpractice); *Gragg v. Calandra*, 696 N.E.2d 1282, 1286 (Ill. App. Ct. 1998) (holding that Section 2-622 does not apply to intentional torts); *see, e.g., Lindgren v. Moore*, 907 F.Supp. 1183, 1193 (N.D. Ill. 1995) (only claims for medical malpractice are covered by Section 2-622); *Doe v. City of Chicago*, 883 F.Supp. 1126, 1134 (N.D. Ill. 1994) (holding that Section 2-622 does not apply to claims brought pursuant to Illinois statutes or to claims for intentional infliction of emotional distress); *Glade ex rel. Lundskow v. United States*, No. 10 C 3942, 2011 WL 6716698, at *3 (N.D. Ill. Dec. 23, 2011) (holding that Section 2-622 applies only to medical malpractice cases and does not apply to claims for negligence); *Fox v. Ghosh*, No. 09 C 5453, 2010 WL 345899, at *3 (N.D. Ill. Jan. 26, 2010) (holding that Section 2-622 does not apply to claims for intentional infliction of emotional distress); *Barrios v. Sherman Hosp.*, No. 06 C 2853, 2006 WL 3754922, at *2 (N.D. Ill. Dec. 15, 2006) (same).

In her Complaint, Awalt does not allege a claim for medical malpractice. Counts IV, V, and VI all allege intentional conduct on the part of the Defendants. Section 2-622 has no application to claims for intentional torts and thus no affidavit of merit is required to assert these claims. *See, e.g., Gragg*, 696 N.E.2d 1282 at 1286; *Cohen v. Smith*, 648 N.E.2d 329, 334-336 (Ill. App. Ct. 1995) (holding Section 2-622 inapplicable to claims for battery and intentional infliction of emotional

distress asserted against a healthcare provider). Counts VII and VIII assert claims for negligence or willful and wanton conduct, but this does not make them claims for medical malpractice. Malpractice claims are not synonymous with claims for ordinary negligence. *See Woodard v. Krans,* 600 N.E. 2d 477, 486 (Ill. App. Ct. 1992) ("Where to draw the line between medical malpractice and common-law negligence is" a question of law to be determined from the pleading; "negligence suits, essentially common-law in character, that happen to be directed against health care providers" are not medical malpractice suits); *Roe v. Catholic Charities of the Diocese*, 588 N.E.2d 354, 359 (Ill. App. Ct.1992) ("Professional malpractice is a species of negligence, not fraud. However, not every tort committed by a professional rises to the level of malpractice."); *Kolanowski v. Illinois Valley Community Hosp.*, 544 N.E. 2d 821, 823 (Ill. App. Ct. 1989) ("To determine whether a complaint sounds in ordinary negligence or healing art malpractice, courts look to the evidence that will be necessary to establish the defendant's standard of care.").

A claim for malpractice lies when a professional applies his expert knowledge or skill in an unreasonably deficient way resulting in injury. *See Purtill v. Hess*, 489 N.E. 2d 867, 871 (Ill. 1986). Medical malpractice is a special species of negligence claims, but a claim for negligence is not a medical malpractice claim merely because it involves medical treatment or care. *See*, *e.g.*, *Glade*, 2011 WL 6716698, at *3. ("Just because [a state-law count in a complaint] is a negligence claim against a hospital does not make it a medical malpractice claim."); *Catholic Charities of the Diocese*, 588 N.E.2d at 359. Providers of medical care are held to the same standard of care as non-providers of medical care in the performance of their duties unrelated to the application of their expert knowledge or skill. *See, e.g.*, *Glade*, 2011 WL 6716698, at *3; see also *Jones v. Chi. HMO Ltd.,* 730 N.E. 2d 1119, 1129-1131 (Ill. 2000) (distinguishing between the standard of care applicable "in an

7

ordinary negligence case" from that "in a professional negligence case," such as one for medical malpractice); *Lyon v. Hasbro Industries, Inc.*, 509 N.E.2d 702, 706-707 (Ill. App. Ct. 1987) (defendant was liable for negligence and medical malpractice: malpractice in not applying skill in supplying ambulance services, negligence in the way it maintained its vehicles); *Owens v. Manor Health Care Corp.*, 512 N.E.2d 820, 823 (Ill. App. Ct. 1987) (nursing home found to be negligent, but not involved in "healing art" with respect to the patient's care, and thus not liable for medical malpractice). Here, the alleged breach of a duty does not arise out of the unreasonable application of the Defendants's expertise in medicine, but rather out of the reckless disregard by all of the Defendants (including the Grundy County Defendants) of the probability that an injury would likely result from their course of conduct. That is a distinct claim, alleging the breach of a duty wholly separate and apart from any claim that Mrs. Awalt may have for medical malpractice.

### ii. *"Willful and Wanton Conduct" Under Counts VII and VIII*

Defendants assert, in a highly conclusory fashion, that Counts VII and VIII should be dismissed "because willful and wanton conduct is not a separate cause of action in Illinois." Counts VII and VIII, however, are not simply claims for willful and wanton conduct. Rather they are claims arising under the Illinois Wrongful Death Act and the Illinois Survival Act. Defendants argue that wrongful death and survival claims must be predicated upon a theory of liability that is recognized in Illinois. They claim that because Mrs. Awalt failed to comply with Section 2-622, and because Illinois does not recognize a claim for willful and wanton conduct, Mrs. Awalt's wrongful death and survival claims cannot be maintained.

In Counts VII and VIII, Mrs. Awalt alleges that by ignoring Mr. Awalt's request for medical attention, the Defendants breached the duty of care owed to detainees in their care. This is a claim

8

based on a valid theory of liability: negligent failure to provide medical care to a detainee in the Defendants's care. *See, e.g.*, *Freeman v. Fairman*, 916 F. Supp. 786, 792 (N.D. Ill. 1996) ("Under Illinois law, jailers must exercise ordinary and reasonable care for the preservation of their prisoners' health and life...") (internal citations omitted); *see also Mitchell v. Elrod*, 655 N.E.2d 1104, 1111 (Ill. App. 1995) ("Jailers are obliged to provide a prisoner with reasonable care."); *Delasky v. Hinsdale*, 441 N.E.2d 367, 370 (Ill. App. Ct. 1982) ("[T]he duty of law enforcement officers to those who have been arrested and incarcerated under their care is to exercise ordinary and reasonable care for the preservation of their prisoner's health and life..."), *quoting Dezort v. Village of Hinsdale*, 342 N.E.2d 468 (Ill. App. Ct. 1976) (internal quotations omitted). As discussed above, negligence by a health care provider that is unrelated to the unreasonable application of his medical expertise is not a claim for medical malpractice. Mrs. Awalt claims that the Defendants negligently and/or willfully and wantonly failed to act by disregarding Mr. Awalt's cry for help, despite knowledge of his serious medical condition. Alternatively, she claims that the Defendants were conscious that an injury would probably result from their course of conduct and recklessly disregarded the consequences of their actions. She claims that these actions were negligent and/or willful and wanton in that they demonstrated an utter indifference to the safety of others.

The Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, creates a cause of action in derogation of the common law permitting recovery for the death of an individual by "wrongful act, neglect, or default." 740 ILCS 180/1; *see also Williams v. Manchester,* 888 N.E.2d 1, 22 (Ill. 2008); *Pasquale v. Speed Products Engineering,* 654 N.E.2d 1365, 1378 (Ill. 1995). The Act itself prescribes who may sue and how they must file suit. *See Williams,* 888 N.E.2d at 22; accord *Wilson v. Tromly*, 89 N.E.2d 22 (Ill. 1949). The Act allows the surviving spouse (or next-of-kin) of a

deceased individual to bring suit, as the decedent's personal representative, for the pecuniary losses, such as loss of support, arising from the decedent's death. *See Williams,* 888 N.E.2d at 22; *Pasquale*, 654 N.E.2d at 1378. The decedent must have had the potential, at the time of his death, to maintain a viable cause of action for a personal injury against the defendant. *See Williams,* 888 N.E.2d at 22; *see also Biddy v. Blue Bird Air Serv.*, 30 N.E.2d 14, 18 (Ill. 1940). If he did, that right of action transfers to the surviving spouse as his representative. *See Crane v. Chicago & Western Indiana R.R. Co.,* 84 N.E. 222, 223 (Ill. 1908). The injury that the representative alleges caused the victim's death must be the same injury that the decedent was victim to at the time of his death. *See Williams,* 888 N.E.2d at 22; *Biddy,* 30 N.E.2d at 18; *Crane,* 84 N.E. at 223. A cause of action under the Act must be commenced within two years after the decedent's death. *See* 740 ILCS 180/2. Mrs. Awalt meets all the statutory criteria for bringing a cause of action, as the representative of Mr. Awalt, for his allegedly wrongful death at the hands of the Defendants. The acts occurred in September 2010, and Mrs. Awalt timely filed suit on September 2, 2011. Mrs. Awalt may allege that the Defendants's actions under the Act were "willful and wanton." *See Abruzzo v. City of Park Ridge,* 898 N.E.2d 631, 634 (Ill. 2008); accord *Myers v. Krajefska,* 134 N.E. 2d 277, 280 (Ill. 1956) ("The basic element in all of these cases [defining wilful and wanton conduct] indicates that liability can be founded under such a cause of action where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved.")

The Illinois Survival Act, 755 ILCS § 5/27-6, provides: "In addition to the actions which survive by common law, the following also survive:..actions to recover damages for an injury to the person (except slander and libel)..." 755 ILCS §5/27-6. Unlike the Wrongful Death Act, the

10

Survival Act does not independently create a statutory cause of action–it is not in derogation of the common law, but rather preserves for the representative of the decedent those actions at common law which had already accrued to the decedent at the time of his death. *See Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1029 (Ill. 1996); *Wyness v. Armstrong World Industries, Inc.*, 546 N.E.2d 568, 571 (Ill. 1989); *National Bank v. Norfolk & Western Ry. Co.*, 383 N.E.2d 919, 923 (Ill. 1978). Thus, a claim under the Survival Act is a derivative one; it is brought by the decedent's representative but based on the injury to the decedent. *See Advincula*, 678 N.E.2d at 1029. Under the Survival Act, damages in a personal injury action such as this one may be recovered for "conscious pain and suffering, loss of earning, medical expenses, and physical disability." *Murphy v. Martin Oil Co.,* 308 N.E.2d 583, 585 (Ill. 1974). For triggering the statute of limitations, the controlling date is the date upon which the decedent learned of his injury. *See Advincula*, 678 N.E.2d at 1029; *Janetis v. Christensen*, 558 N.E.2d 304, 309 (Ill. 1990); *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868 (Ill. 1981). Since the Supreme Court of Illinois decided *Murphy*, disapproving the rule of abatement, plaintiffs have been able to maintain Survival Act actions for deaths that result from the cause that gives rise to the personal injury, and often maintain actions both under the Survival Act and the Wrongful Death Act. *See Murphy,* 308 N.E.2d at 585. Mrs. Awalt claims damages under the Survival Act for the pain and suffering that Mr. Awalt suffered as a result of the Defendants's "willful and wanton" conduct. The claim survives. *See Abruzzo v. City of Park Ridge,* 898 N.E.2d at 634.

### iii.  Section 2-1115 of the Illinois Code of Civil Procedure

Defendants argue that to the extent that Mrs. Awalt seeks punitive damages with respect to Counts IV, VII, VIII, and IX, her prayer for relief should be stricken because in Illinois punitive

damages are not recoverable against medical care providers such as the Defendants. Section 2-1115 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1115, states: "In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." As discussed fully above, Mrs. Awalt's Complaint does not set forth a state-law claim for medical malpractice. "The fact that the defendants attempt to shield themselves from the plaintiffs' claim by calling this action a medical malpractice claim does not transform it into one." *Cohen*, 648 N.E.2d 329 at 334. Rather, Mrs. Awalt asserts state-law claims for intentional torts and for negligence and/or willful and wanton conduct against the Defendant Medical Care Providers that do not rest on a theory of unreasonable application of the Defendants's special expertise in medical care. *See Grant v. Petroff,* 684 N.E.2d 1020, 1026 (Ill. App. Ct. 1997) (holding that a claim against a doctor for willful and wanton battery was not one for medical malpractice and that therefore Section 2-1115 did not bar punitive damages); *Cripe v. Leiter*, 683 N.E.2d 516, 519 (Ill. App. Ct. 1997) (holding that a claim for malpractice is distinct from other common law claims, even when asserted against a lawyer or doctor, and that Section 2-1115 bars punitive damages only in claims of malpractice). Asserting a claim of negligence against a medical care provider is not the same as asserting a claim of medical malpractice. *See*, *e.g.*, *Glade*, 2011 WL 6716698, at *3 (holding that a claim for negligence against a hospital is not a medical malpractice claim merely because the defendant is a hospital). A medical care provider may be bound to a duty of care wholly separate and apart from his expert skill or knowledge in medicine. *See Jones*, 730 N.E. 2d at 1129-1131. Mrs. Awalt is therefore entitled to seek punitive damages against the Defendants pursuant to Counts

IV, VII, VIII, and IX of her Complaint. The Defendants's request to strike her prayer for punitive damages with respect to these state-law claims is denied.

### iv. Failure to Intervene, Denial of Medical Care, and Rule 12(f)

Defendants argue that Mrs. Awalt's claim in Count I for denial of medical care is duplicative of her claim in Count III for failure to intervene, and that the Court should therefore strike one of the two claims pursuant to Federal Rule of Civil Procedure 12(f). Under Rule 12(f) the Court "may strike…any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because they tend to cause undue delay. *See Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) ("[T]he general rule [is] that motions to strike are disfavored...because motions to strike potentially serve only to delay."); *see also*, *Nielsen Co. (US), LLC v. Truck Ads, LLC*, No. 08 C 6446, 2011 WL 221838, at *5 (N.D. Ill. Jan. 24, 2011). Motions to strike under Rule 12(f) are granted in limited circumstances, such as when claims are repetitious insofar as they merely restate issues already asserted in other claims before the court. *See Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) (disapproving of the use of Rule 12(f) even where a "complaint is not short, concise, or plain...is highly repetitious, and includes material which...is irrelevant") but *see*, *e.g.*, *OgoSport, LLC v. Maranda Enterprises*, No. 10 C 0155, 2011 WL 4404070, at *2 (E.D. Wis. Sept. 20, 2011). The Court maintains considerable discretion in deciding whether to strike a claim under Rule 12(f). *See Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

Count I of Mrs. Awalt's Complaint alleges that the Defendants denied Mr. Awalt necessary medical care in violation of the Constitution. By contrast, Count III alleges that the Defendants failed to intervene to stop constitutional violations by others. Mrs. Awalt's § 1983 claim for

inadequate medical care under the Eighth or Fourteenth Amendments requires that she establish that Mr. Awalt had an objectively serious medical condition and that the Defendants were deliberately indifferent to the risks posed by that condition. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). Mrs. Awalt's § 1983 claim for failure to intervene requires that she show that one or more of the Defendants had a realistic opportunity to prevent another state actor from committing a constitutional violation but failed to do so. *See Leaf v. Shelnutt*, 400 F.3d 1070, 1093 (7th Cir. 2005). A claim for failure to provide medical care concerns the defendant's knowledge of, and disregard for, a serious medical risk; whereas a claim for failure to intervene concerns the defendant's failure to prevent another from committing a constitutional violation. These are distinct legal theories of liability; they are not duplicative. Therefore, the Defendants' Motion to Strike either Count I or Count III is denied.

### v. Adequacy of the Pleadings Under Twombly/Iqbal

Defendants argue that Mrs. Awalt's Complaint does not satisfy the "plausibility" requirement required under Rule 8 of the Federal Rules of Civil Procedure as interpreted by the Supreme Court in *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555 and *Iqbal*, 556 U.S. at 678. Defendants claim that Awalt fails to plead sufficient facts against each of the Defendants to put them on notice of their alleged misconduct. Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A cause of action will be dismissed for failure to state a claim "only when the allegations in the complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. As is discussed above, under *Twombly* and *Iqbal*, the plaintiff must state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678. A claim has facial plausibly when the plaintiff pleads enough

14

factual allegations so that the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id*. The plausibility requirement of Rule 8 mandates that the plaintiff plead enough facts to give rise to a right to relief that is more than speculative or a "mere possibility." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555. The plausibility requirement "does not imply that…the court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, in order to survive the motion to dismiss under *Twombly* and *Iqbal*, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

Defendants Cullinan and Clauson each argue that Awalt makes nothing more than a single factual allegation against each one of them. CHC and HPL argue that Awalt merely asserts legal conclusions against them that are couched as facts. A plain reading belies those arguments. First, Awalt defines the "Defendants" as the four known "Defendant Medical Care Providers" at the beginning of her Complaint. She then alleges that CHC and HPL contracted with the Jail to provide medical services to the detainees housed there. She alleges that CHC and HPL promulgated policies for the provision of medical care, including policies concerning the distribution and administration of medication and requests for medication. She alleges that Cullinan and Clauson, who were employees of CHC and HPL at all times relevant to this suit, implemented the policies promulgated by CHC and HPL. She alleges that Cullinan and Clauson were responsible for providing medical care to detainees at the jail. She also alleges that in September 2010, CHC and HPL were put on notice of a widespread practice by employees and contractors of the Jail, that detainees with serious

15

medical conditions were not receiving the necessary treatment for their conditions. Awalt alleges that CHC and HPL failed to adequately train, supervise, or control those people providing medical care in the Jail. She alleges that this encouraged and motivated the relevant Jail personnel to fail or refuse to: (1) properly examine a detainee with a serious medical condition; (2) provide proper medication to a detainee with a serious medical condition; (3) respond to detainees who requested medical attention or asked to see a doctor; or (4) respond to detainees who exhibited obvious signs of a serious medical condition or illness. She alleges that CHC and HPL implemented policies and maintained an environment that led to Mr. Awalt's death. She alleges in detail the circumstances surrounding the notice given to the Jail, and to Cullinan and Clauson, of Mr. Awalt's serious condition, as well as his need for certain anti-seizure medications. This includes evidence of a note written on Mr. Awalt's medical chart by Clauson indicating that Mr. Awalt had a history of seizures and that he needed Dilantin and Topamax, putting Clauson on notice of Awalt's serious medical need. Mrs. Awalt alleges that Cullinan reviewed this note, thereby putting him on notice as well. She alleges that neither Cullinan nor Clauson provided Mr. Awalt with medication, and that neither ensured that he would receive his medication from anyone else. Mrs. Awalt alleges that Mr. Awalt cried out to Cullinan and Clauson for help, that Cullinan and Clauson heard those cries for help, that they knew that Mr. Awalt needed help because they had observed his condition, and that they did nothing to help Mr. Awalt.

In over fifty paragraphs, Mrs. Awalt details her account of what happened to her husband while he was in the custody of the Grundy County Jail. The allegations in the complaint are comprehensive and factually detailed enough to give the Defendants adequate notice of the misconduct alleged against them. The Complaint meets the plausibility requirement of Rule 8 as

16

interpreted by *Twombly* and *Iqbal*. To the extent that the Defendants argue that Mrs. Awalt fails to name the individual Defendants in each allegation of her complaint rather than "Defendant Medical Care Providers," this argument also fails. An allegation directed at a specific group or subgroup of defendants is sufficient to plead personal involvement by the members of the group, even if each defendant comprising the group is not named individually in each allegation. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (holding that "a prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted-if it names the persons responsible for the problem."); *accord Warren ex rel. Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923, at *7 (N.D. Ill. Nov. 24, 2010) (holding that "although it is true that Plaintiffs' complaint does not explicitly parse which of the named Defendants were responsible for which of the above acts or omissions, that level of specificity is not required under federal notice pleading standards."). Mrs. Awalt's Complaint names the persons allegedly responsible for her husband's death. *See Burks*, 555 F.3d at 594. That is enough to satisfy the pleading requirements that Mrs. Awalt faces at this stage of the litigation. Once Mrs. Awalt conducts discovery, she will have to demonstrate through competent evidence how each of the Defendants was personally involved in Mr. Awalt's death in order to survive summary judgment or present her case to a jury. However, at the motion to dismiss stage it is sufficient that Mrs. Awalt has alleged a set of facts from which the Court can infer that the misconduct alleged could have happened. *See Swanson,* 614 F.3d at 404.

Defendant Medical Care Providers argue that Mrs. Awalt is attempting to hold them vicariously liable for the acts of others. There is no *respondeat superior* liability under 42 U.S.C. § 1983. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978); *see also Burks*,

555 F.3d at 593-594; *Gonzalez v. City of Elgin*, 578 F.3d 526, 536 (7th Cir. 2009). Nevertheless, "a defendant need not participate directly in the deprivation for liability to follow under § 1983." *Backes v. Village of Peoria Heights, Ill.*, 622 F.3d 866, 869-870 (7th Cir. 2011), citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (internal quotations omitted). A supervisor may be liable under § 1983 for the acts of his subordinates if he "approves of the conduct and the basis for it." *Backes*, 622 F.3d at 870, citing *Chavez v. Illinois State Police*, 251 F.3d 612 at 651 (7th Cir. 2001) (internal quotations and citations omitted). "Supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Chavez*, 251 F.3d at 651, quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-993 (7th Cir. 1988). Mrs. Awalt asserts claims against Cullinan and Clauson for their individual conduct towards Mr. Awalt. As against CHC and HPL, she asserts claims that give rise to liability under *Monell*. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764-766 (7th Cir. 2002). A pretrial detainee is entitled to adequate medical care under the Fourteenth Amendment, and a private service provider acting under color of state law is liable for an unconstitutional depravation of that care as a result of an express policy or custom of the government unit. *See id.* Mrs. Awalt's claims for relief under § 1983 do not depend on a theory of *respondeat superior*. In her state-law claims against CHC and HPL, Mrs. Awalt relies on *respondeat superior* to establish vicarious liability against CHC's and HPL's employees and agents. But this is not contrary to law, as a plaintiff may assert *respondeat superior* in state-law claims brought supplemental to claims arising under § 1983. *See Gonzalez*, 578 F.3d at 541.

*vi. Federal Rule of Civil Procedure 10(b)*

18

Without citation to any legal authority, Defendants argue that Mrs. Awalt's Complaint runs afoul of Federal Rule of Civil Procedure 10(b). Rule 10(b) states that "[a] party must state its claims…in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). It further provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence…must be stated in a separate count or defense." *Id.* Defendants claim that Mrs. Awalt names thirteen Defendants in her Complaint but alleges several of her claims against the Defendants jointly. The Defendant Medical Care Providers argue that they are unable to decipher which allegations are directed against them as opposed to the Grundy County Defendants.

All that Rule 10(b) requires is that each claim be stated in separate numbered paragraphs so that each claim founded on a separate transaction or occurrence is averred in a separate count if such separation would clarify the presentation of the issues. *See* Stanard v. Nygren, 658 F.3d 792, 797 (7th Cir. 2011); *accord, McDougall v. Donovan*, 552 F. Supp. 1206, 1209 (N.D. Ill. 1982); *see also* 2-10 Moore's Federal Practice § 10.04 (2012 rev.). *See Stanard v. Nygren,* 658 F.3d 792, 797 (7th Cir. 2011); accord, *McDougall v. Donovan,* 552 F. Supp. 1206, 1209 (N.D. Ill. 1982); *see also* 2-10 *Moore's Federal Practice* § 10.04 (2012 rev.). The obvious purpose animating the Rule is to put the defendants on notice, in a clear fashion, of the claims against them, the grounds supporting the claims, and the factual allegations pled. A complaint that comports with Rule 10(b) helps to frame the legal issues and provide a basis for pretrial proceedings. *See generally Nygren,* 658 F.3d at 797. Where the complaint alleges a conspiracy or a common scheme, as does the Complaint here, Rule 10(b) does not require that every claim against each defendant be alleged in a separate count merely because not

19

every defendant is alleged to be involved in each act or occurrence. The loadstar of Rule 10 is intelligibility, good organization, and basic coherence. *See, e.g.*, *Nygren,* 658 F.3d at 797.

Here, Mrs. Awalt's Complaint is divided into eleven different Counts, each organized around a specific and distinct legal cause of action. Her Complaint contains numbered paragraphs and each is limited to a single set of circumstances. Indeed, the subject matter of each paragraph of Mrs. Awalt's Complaint is limited in scope. Although it is true that Mrs. Awalt seeks recovery on certain claims against multiple Defendants, the Complaint is clear as to which Defendants are liable for which misconduct alleged. The Complaint is intelligible.

## B. Motion to Bifurcate or Stay the Monell Claims

Rule 42(b) of the Federal Rules of Civil Procedure empowers this Court to separate claims and to decide particular claims and issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *see also Houskins v. Sheahan,* 549 F.3d 480, 495 (7th Cir. 2008). The Court exercises considerable discretion in making this determination. *See id.*; *see also Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir.2000). The Defendants claim that bifurcation of any *Monell* claim is warranted because: (1) before Mrs. Awalt can prevail on a *Monell* claim, she must first succeed in her actions against the individual Defendants for violating Mr. Awalt's constitutional rights; (2) it would reduce or potentially eliminate the need for substantial, unnecessary discovery into the confidential and privileged medical histories of other inmates; and, (3) if *Monell* evidence is offered at trial, it would unfairly prejudice the individual Defendants. That is the entire argument upon which the Defendants rest their Motion. The Defendants do not provide

the Court with any more analysis, factual or legal, than this.[1]          Bifurcation motions, such as the

instant Motion, have become routine in § 1983 litigation.[2]  *See* generally *Terry v. Cook County Dept.*

---

[1]The Court was inclined to find the arguments made in the Defendants' Motion to Bifurcate and Stay waived. Arguments that are so perfunctory and undeveloped, and which are unsupported by relevant authority, are considered waived–even when those arguments raise constitutional issues. *See United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) . The Defendants, perhaps in realization of the insufficiency of their opening Motion, have supplied a bit more to the Court in their Reply to Mrs. Awalt's Response brief. However, arguments raised or developed for the first time in a reply brief are waived. *See Broaddus v. Shields*, 665 F.3d 846, 854 (7th Cir. 2011)*; Mendez v. Perla Dental,* 646 F.3d 420, 423-24 (7th Cir. 2011). The Court notes that while it does not necessarily follow that arguments that are more fully developed in a reply brief are waived, the insufficiency of the Defendants' opening brief makes it difficult to discern which arguments are brought for the first time in reply, and which are merely finally developed. *See United States v. Kimoto,* 588 F.3d 464 n. 29 (7th Cir. 2009). On this, the Court will construe the filings liberally, giving the Defendants the benefit of the doubt.

[2]The Court has looked at every decision in this District involving bifurcation of *Monell* claims from claims against individual defendants in § 1983 suits since the Seventh Circuit decided *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009). It is clear that the weight of authority holds that bifurcation is now heavily disfavored. *See, e.g.*, *Martinez v. Cook County*, No. 11 C 1794, 2011 WL 4686438, at *3-*4 (N.D. Ill. Oct. 4, 2011) (Kendall, J.) (no bifurcation of *Monell* claims from claims against individual defendants in case under § 1983); *Harper v. Dart*, No. 10 C 3873, slip op. at *11 (N.D. Ill. May 3, 2011) (Kocoras, J.) (same); *Carter v. Dart*, No. 09 C 956, 2011 WL 1466599, at *2-*5 (N.D. Ill. Apr. 18, 2011) (Dow, J.) (same); *Clarett v. Suroviak*, No. 09 C 6918, 2011 WL 37838, at *1-*3 (N.D. Ill. Jan. 3, 2011) (Gotschall, J.) (same); *Hughes v. City of Chicago*, No. 08 C 627, slip op. at *10 (N.D. Ill. Sept. 16, 2010) (Dow, J.) (same); *Terry v. Cook County Dep't of Corr.*, No. 09 C 3093, 2010 WL 2720754, at *1-*3  (N.D. Ill. July 8, 2010) (Dow, J.) (same); *Bell v. City of Chi.*, No. 09 C 4537, 2010 WL 432310, at *2-*4 (N.D. Ill. Feb. 3, 2010) (Der-Yeghiayan, J.) (same); *Bradley v. City of Chicago*, No. 09 C 4538, 2010 WL 432313 (N.D. Ill. Feb. 3, 2010) (Der-Yeghiayan, J.) (same), cf. *Guzman v. City of Chicago*, No. 09 C 7570, slip op. at *3-*6 (N.D. Ill. Mar. 1, 2011) (Kocoras, J.) (holding that, unlike *Thomas*, because the claim was for excessive force "a verdict against the City...cannot presently be sustained if the officers accused of administering the excessive force are found not liable. The City's liability depends on the determination that one or more of the Individual Defendants violated Guzman's rights. Accordingly, we believe that bifurcation will provide benefits in terms of economy."); *Demouchette v. Dart*, No. 09 C 6016, 2011 WL 679914, *2-*11 (Keys, J.) (N.D. Ill. Feb. 16, 2011) (bifurcation was unproblematic because City stipulated to pay *Monell* damages if a finding of liability for unconstitutional acts was found against individual defendants); *Tanner v. City of Waukegan*, No. 10 C 1645, 2011 WL 686867, *2-*11 (N.D. Ill. Feb. 16, 2011) (Keys, J.) (same).

*of Corrections*, No. 09 C 3093, 2010 WL 2720754, *2-*3 (N.D. Ill. July 8, 2010) (recognizing a "dearth of cases favoring bifurcation post-*Thomas*..."). The reasons for this are obvious–the expenses incurred in trying a case with *Monell* claims are usually much higher than without. But the plaintiff is the master of her complaint, and so the (often times extraordinary) costs associated with bringing a claim for municipal liability should not sway the Courts' consideration too far. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The [well-pleaded complaint] rule makes the plaintiff the master of the claim..."); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon") (Holmes, J.). Although considerations of the cost of the defense is one concern to take into account, those considerations dissipate if it is determined that the parties may have to litigate the *Monell* claims irrespective of the bifurcation decision, and thus incur the costs nonetheless, just at a later date. It is unsurprising that there is a growing body of law within this District on the subject of *Monell* bifurcation. *See, e.g.*, *Ojeda-Beltran v. Lucio,* No. 07 C 6667, 2008 WL 2782815, at *1 n. 2 and n. 3 (N.D. Ill. July 16, 2008) (collecting cases). Having surveyed the cases, it is clear that the decision to grant or deny bifurcation is a heavily fact-intensive analysis, dependent upon the costs and benefits of bifurcation under the unique circumstances of each case.

### I. Split or Inconsistent Verdicts

First, Defendants are simply wrong in their contention that in order to prevail on her *Monell* claim Mrs. Awalt must first succeed in proving that the individual Defendants violated Mr. Awalt's constitutional rights. *See Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009) ("a rule that requires individual officer liability before a municipality can ever be held liable for damages under *Monell*..is [] unreasonable..."). It is possible that a jury will find in favor of the

individual Defendants on Mrs. Awalt's other constitutional claims while finding against CHC or HPL on a *Monell* theory. Because CHC and HPL are treated as municipal entities for the purposes of claims arising under § 1983, they are liable for violations of a detainee's constitutional rights if they maintained policies that sanctioned prison conditions that infringed on the constitutional rights of the detainee. See *Illinois Medi-Car, Inc.*, 300 F.3d at 766 n.6 ("For purposes of § 1983, we have treated a private corporation acting under color of state law as though it were a municipal entity."); *Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir. 2004), quoting *Estate of Novack v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). Thus, to succeed on her *Monell* claims, Mrs. Awalt must demonstrate that CHC or HPL promulgated an express policy or custom that was the "moving force" behind Mr. Awalt's death or needless suffering. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978); *Gayton v. McCoy,* 593 F.3d 610, 622 (7th Cir. 2010).

The Defendant Medical Care Providers in this case may be found liable for violating § 1983 by maintaining an unconstitutional policy or practice even if none of the individual Grundy County Defendants are found liable under § 1983. "[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas*, 604 F.3d at 305 (emphasis in original). A plaintiff alleging a *Monell* claim can succeed against a municipality on that claim despite failing to demonstrate to a jury that a particular individual defendant is liable for the unconstitutional acts alleged, so long as the two results are compatible. See, e.g., *Martinez v. Cook County*, No. 11 C 1794, 2011 WL 4686438, at *1 (N.D. Ill. Oct. 4, 2011); *Cage v. City of Chicago*, No. 09 C 3078, 2010 WL 3613981, at *1 (N.D. Ill. Sept.8, 2010).

This case presents a situation in which two such results would be entirely compatible. As the court noted in *Thomas*, a split verdict might result if a jury concluded that the individual officers were

23

not deliberately indifferent to a prisoner's serious medical condition, but rather could not respond to his needs because of the policies in place at the jail. *See Thomas*, 604 F.3d at 305. It is entirely plausible that CHC or HPL promulgated policies or customs that created unconstitutional conditions under *Monell*. At the same time it is equally plausible that no individual actor was deliberately indifferent to Mr. Awalt's serious medical needs. If a jury concluded that this was the case, it would result in an entirely consistent verdict–albeit a split one.

In addition, it is likely that some of the Defendants in this case will assert immunity from liability–qualified immunity, state-law immunity, etc. *See, e.g.*, *McCauley v. City of Chicago*, No. 09-3561, 2011 WL 4975644 (7th Cir. Oct. 20, 2011) (sovereign-immunity for IDOC director in his official capacity); *Florek v. Vill. of Mundelein*, 649 F.3d 594, 598 (7th Cir. 2011) (qualified immunity); *Remet Corp. v. City of Chicago*, 509 F.3d 816, 818 (7th Cir. 2007) (state-law immunity); *Abruzzo v. City of Park Ridge*, 898 N.E.2d 631, 636 (Ill. 2008) (state-law immunity); *see also* Local Government and Government Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq.* (state-law immunity). This leaves open the possibility that no inconsistent verdict will arise–CHC or HPL will be found liable while the individual Grundy County Defendants will be immunized from liability.

Furthermore, there are unknown Defendants named in Mrs. Awalt's Complaint. The known Defendants might testify that they did not behave with deliberate indifference to Mr. Awalt's serious medical needs, but that other, unknown Defendants did so behave. If such testimony is adduced, and a jury credits it, the individually named Defendants might escape liability but CHC or HPL could still be held liable for implementing a policy or custom that was the "moving force" behind the unknown Defendants' unconstitutional acts against Mr. Awalt. Again, if a jury were to conclude that this was the case, it would create a split verdict, but an entirely consistent one.

24

### ii. *Economy of Judicial Resources*

The Defendants claim that bifurcation would reduce or possibly eliminate the need for what they assert will be substantial and unnecessary discovery, as well as discovery of confidential and privileged medical histories of other inmates. As the Court has already stated, this observation about the costs of discovery is only true if one assumes that a second trial on the *Monell* claims will never happen. Mrs. Awalt claims that regardless of the verdict against the individual Grundy County Defendants, if the Court bifurcates the claims, a second trial will nevertheless occur on the *Monell* claims against the Defendant Medical Care Providers. If a jury finds in favor of the individual Defendants, CHC and HPL are still vulnerable to liability. Bifurcation would therefore result in two rounds of litigation: two rounds of discovery; two rounds of dispositive briefing; culminating in two trials, likely comprising many of the same witnesses, who would therefore be called to testify two times. Under these circumstances, it is more likely that bifurcation would only frustrate the purposes that Rule 42(b) is meant to promote.

There is an even more compelling economic consideration against bifurcation in this case, and that is the very high incentive of Mrs. Awalt to prosecute the *Monell* claims regardless of bifurcation. As other courts in this District have pointed out, bifurcation often makes sense because a plaintiff who is successful against an individual officer has a low incentive to prosecute her *Monell* claims after the judgment against the individual officer is secured. *See, e.g.*, *Ojeda-Beltran,* 2008 WL 2782815, at *3-*4. This follows because under Illinois law, local government units are required to pay § 1983 tort judgments entered against their officers. *See Wilson v. City of Chicago*, 120 F.3d 681, 684-685 (7th Cir. 2005); *Carver v. Sheriff of La Salle County,* 787 N.E.2d 127, 135-136 (Ill. 2003); *see also* 745 ILCS 10/9-102 ("A local public entity is empowered and directed to pay any tort judgment...for

which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article."). Therefore, a plaintiff can circumvent *Monell* and obtain a money judgment against a municipality so long as she is successful against an individual officer. While Illinois does not require a municipality to indemnify its officers for punitive damages, punitive damages are not recoverable under a *Monell* claim. *See Robinson v. City of Harvey*, 617 F.3d 915, 916 (7th Cir. 2010), citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Yang v. City of Chi.*, 745 N.E.2d 541, 546 (Ill. 2001). In this case, punitive damages *are* recoverable by Mrs. Awalt because she is proceeding against two private corporations. *See Woodward*, 368 F.3d at 930. Therefore, Mrs. Awalt has a far greater economic incentive to pursue her *Monell* claims against CHC and HPL than does an ordinary plaintiff in a § 1983 cause of action in which bifurcation is contemplated.

Bifurcation of the claims against the Sheriff and the Jail from those against CHC and HPL would further complicate the proceedings in this case because discovery would be permitted into the practices of the Sheriff and the Jail but stayed against the Defendant Medical Care Providers, who provide the medical services to the Jail, and whose practices and policies are highly relevant to the issues in the case. Mrs. Awalt will want to show whether the individual Grundy County Defendants were compliant with CHC or HPL policies in demonstrating whether the individual Defendants acted with deliberate indifference to Mr. Awalt's serious medical needs. Thus, even if the Court were to bifurcate the *Monell* claims from the claims against the individual Defendants, evidence that is relevant to CHC and HPL's practices and policies will be discoverable and admissible against the individual Defendants. Because the policies and practices of CHC and HPL are the subject of the

26

*Monell* claims against them, discovery on the *Monell* claims will likely proceed at this stage of the litigation whether the *Monell* claims are bifurcated and stayed or not.

### iii. Unfair Prejudice

The Court has at its disposal and number of tools to properly order and organize a trial that will not be unfairly prejudicial to any of the Defendants, regardless of whether the *Monell* claims are tried at the same time as the rest of the claims. As Mrs. Awalt notes, to limit the possibility of prejudice and confusion the Court can "restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. Jurors are presumed able to follow instructions given by the Court–including, and especially, the limiting and curative instructions. *See Harding v. Sternes,* 380 F.3d 1034, 1046 (7th Cir. 2004); *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002) This presumption is rebuttable but very strong; absent evidence of "an overwhelming probability" that the jury was unable to follow its instructions, they are presumed to have done so. *United States v. James*, 487 F.3d 518, 524 (7th Cir. 2007), quoting *United States v. Eberhart*, 434 F.3d 935, 939 (7th Cir. 2006). A properly instructed jury is fully capable of understanding and considering the evidence that is relevant to each legal theory. See *United States v. Joshua*, 648 F.3d 547, 554 (7th Cir. 2011). The Defendants raise concern about the discovery of medical information of past and prior inmates of jails at which CHC or HPL have provided medical care. Again, the Court has at its disposal a number of means for protecting sensitive documents. Documents can be filed under seal or subject to a protective order.

Bifurcation of this case is not in the interest of any of the purposes that Rule 42(b) was promulgated to promote. Aside from the costs to the Defendant Medical Care Providers of defending against the *Monell* claims, the Court does not find that they will endure any additional hardships from

a denial of bifurcation.  The danger of undue prejudice to the Defendants of trying the claims together is low, judicial economy militates in favor of trying the claims together and not against, and neither convenience nor expediency will be served by bifurcation–indeed, they may in fact be hindered.  In addition, Mrs. Awalt claims to be pursuing non-economic benefits in prosecuting the Defendant Medical Care Providers.  She hopes to deter them from continuing the policies which she claims needlessly caused her husband's death, and to affect reform of illegal prison conditions.  Deterrence is a well-founded part of our system of tort liability and a proper objective of bringing suit; the common law being an efficient system of rules that has evolved to deter negligent, willful, and reckless conduct such as that at issue here.  See *Jones v. Reagan*, 696 F.2d 551, 554 (7th Cir. Ill. 1983) ("[T]ort law, including the law of constitutional torts, has a deterrent as well as a compensatory function.  Indeed, it has long been one view that deterrence, accomplished through the setting of standards of conduct and the punishment by means of damage awards, compensatory and punitive, of those who deviate from them, is the main function of tort law.") (internal citations omitted); see also O. Holmes, The Common Law, pgs. 94-96 (1881) and R. Posner, Economic Analysis of Law § 6.10, pgs. 243-244 (on the function of tort damages) and § 8.1, pgs. 315-320 (on the implicit economic logic of the common law) (8th ed. 2010).  Deterring conduct is thus a proper basis for bringing tort suits, including suits for constitutional torts of the sort that Mrs. Awalt alleges the Defendants committed.  See *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 727 (1999) ("There is no doubt that the cause of action created by § 1983 is, and was always regarded as, a tort claim...it is designed to provide compensation for injuries arising from the violation of legal duties and thereby, of course, to deter future violations.") (internal citations omitted); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of

28

their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."); *Jones*, 696 F.2d at 554 ("Even if the plaintiffs in this case have not been injured, not measurably anyway, allowing them to bring actions for punitive damages would deter violations of the Constitution; and it can be argued that there is a social interest in such deterrence even if the particular violations do not give rise to damages that a court could measure."). Given the nature and purpose of Rule 42(b) and considering all of the fact and circumstances of the present case, bifurcation is unwarranted and unwise. The Court therefore declines to bifurcate and stay Mrs. Awalt's *Monell* claims against the Defendant Medical Care Providers.

## IV. Conclusion

The Defendants' Motion to Dismiss is denied in its entirety. The Defendants' Motion to Bifurcate and Stay the *Monell* Claims is also denied.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 9, 2012