IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ELIZABETH AWALT, as Administrator of the ESTATE OF ROBERT AWALT, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | 11 C 6142 |
| | ) | |
| | ) | Judge Virginia M. Kendall |
| TERRY MARKETTI, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

Plaintiff Elizabeth Awalt brought this suit against certain personnel who worked at or supervised the Grundy County Jail (collectively "the Grundy County Defendants"), as well as certain medical care providers who serviced the Jail (collectively "the Medical Care Defendants") after her husband died at the Jail as a result of the Defendants' alleged violations of his constitutional rights or their alleged murder of him. (Doc. 28; First Amended Complaint).

The Grundy County Defendants now move to compel discovery against Mrs. Awalt (Doc. 72), and she asserts the psychotherapist-patient privilege in response.[1] The

---

[1]The parties have satisfied the procedural prerequisites required by the Federal Rules of Civil Procedure and the Local Rules for the Northern District of Illinois in bringing the instant Motion. Federal Rule of Civil Procedure 37(a)(2)(A) and Local Rule 37.2 require that the movant make a good faith attempt to confer with the nonmovant before bringing a motion to

Defendants seek documents obtained by Mrs. Awalt concerning Mr. Awalt's mental health care provided by the Illinois Department of Corrections and waivers for those documents, they also seek documents and waivers related to psychological evaluations of Mr. Awalt conducted by the Social Security Administration, waivers for Mr. Awalt's records at Provena St. Joseph's Hospital Mental Facilities and Fort Logan Mental Hospital, and waivers and records relating to Mrs. Awalt's treatment received at Guardian Angel Community Services, a counseling center, and documents and waivers from the hospital where Mrs. Awalt allegedly sought medical treatment for domestic abuse by Mr. Awalt.[2]

The manner in which Mr. Awalt died is of critical importance to Mrs. Awalt's theories of liability in this case. The Grundy County Coroner determined that Mr. Awalt's death was caused by suffocation from the presence of a sock in his mouth, presumably in anticipation of a seizure. Mrs. Awalt has alleged two alternative theories of death in this case. First, she alleges that Mr. Awalt's seizure was caused by the Defendants' failure to provide him with adequate medical care in violation of his constitutional rights secured by the Eighth and Fourteenth Amendments to the Constitution. Alternatively, she alleges that the Grundy County Defendants murdered Mr. Awalt by asphyxiating him when they

---

compel discovery in a federal district court. The Defendants satisfied their obligations under these rules by making a good faith effort to confer with Mrs. Awalt's counsel concerning the instant discovery disputes before asking for this Court's assistance and intervention. Thus, the Defendants' Motion to Compel is properly before the Court.

[2]The parites have resolved their dispute regarding the Defendants' contention interrogatories, thereby mooting that portion of this Motion to Compel

allegedly stuffed a sock down his throat. Defendants argue that Mrs. Awalt's first theory is contrary to the evidence, which they allege proves that anti-seizure medication was administered to Mr. Awalt and was in his system at the time of his death. Defendants also contend that the murder theory is refuted by evidence that Mr. Awalt allegedly committed suicide. The Defendants argue that Morris Hospital records disclosed by Mrs. Awalt state that on the night of Mr. Awalt's death she told hospital staff that her husband suffered from bi-polar disorder and manic depression. Mrs. Awalt also disclosed a treatment record which states that in 2008 Mr. Awalt was prescribed Prozac, a psychiatric medication, as well as Social Security Administration documents that claim manic depression, bi-polar disorder, and seizures as grounds for disability applications that Mr. Awalt filed with the agency in 2008, 2009, and 2010.

The Defendants argue that Mrs. Awalt's continuing denial of Mr. Awalt's history of mental health conditions, coupled with her disclosure of documents evidencing potentially long-standing and sporadically medicated mental health conditions, leave them with no choice but to subpoena Mr. Awalt's mental health records to investigate the possibility that Mr. Awalt's death was indeed caused by suicide. In her Amended Complaint, Mrs. Awalt alleges as one of her theories pertaining to the cause of Mr. Awalt's death that one or more of the Grundy County Defendants intentionally put a sock in Mr. Awalt's throat causing him to asphyxiate. The Defendants argue that they must be

permitted to investigate every possible cause of death to refute this claim, including the possibility that Mr. Awalt took his own life. They argue that this includes discovery of Mr. Awalt's mental health records kept by the Illinois Department of Corrections, the Social Security Administration, and Provena St. Joseph's Hospital Mental Facilities and Fort Logan Mental Hospital. The Defendants assert that in light of the evidence disclosed so far and Mrs. Awalt's alternative theory of liability concerning the cause of her husband's death they must be permitted to examine Mr. Awalt's psychological records to discover the nature and extent of any mental illnesses he may have had in the period before his death to present the defense that suicide was the actual cause of his death.

In addition, the Defendants seek records pertaining to Mrs. Awalts alleged treatment for domestic abuse by Mr. Awalt so that they can paint a picture of the Awalt's relationship that undermines Mrs. Awalt's claim of damages for loss of consortium and severe emotional distress. To these ends the Defendants seek records from Guardian Angel Community Services, a counseling center, as well as medical records from treaters who may have treated Mrs. Awalt for domestic abuse by Mr. Awalt. For the reasons stated herein, the Defendants' Motion to Compel all of Mr. Awalt's psychological records as well as Mrs. Awalt's Guardian Angel records is denied because these documents that they seek discovery of from Mrs. Awalt are protected from compelled disclosure by the federal common law psychotherapist-patient privilege. The Defendants' Motion is granted with

respect to medical records pertaining to Mrs. Awalt's treatment for domestic abuse, and Mrs. Awalt is hereby ordered to sign a waiver permitting the Defendants to subpoena records from treaters relating to her treatment for domestic abuse by Mr. Awalt.

## II. Discussion

Mrs. Awalt argues that the requested discovery materials are covered by the federal common law psychotherapist-patient privilege recognized by the Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1 (1996), and thus are protected from compelled disclosure by the Defendants. The Defendants argue that Mrs. Awalt's assertion of privilege is overbroad and that such a blanket assertion of the psychotherapist-patient privilege is improper. Further, they argue that Mrs. Awalt has waived the protections of the psychotherapist-patient privilege in this case by, among other things, putting her emotional state at issue in the litigation by claiming damages for loss of consortium and sever emotional distress. They contend that Mr. and Mrs. Awalt's history of mental health issues, including records pertaining to Mrs. Awalt's counseling and treatment for domestic abuse, go to the heart of Mrs. Awalt's theory of liability in this case, as well as to the issue of damages to which she may be entitled. For these reasons, the Defendants ask this Court to compel disclosure of the requested documents as relevant and not protected by the psychotherapist-patient privilege.

The Defendants have not provided a single authority, and this Court is aware of

none, which holds that the psychotherapist-patient privilege may be abrogated by a defendant's desire to present an alternative theory of liability to a jury. In particular, the Defendants here wish to argue that Mr. Awalt's death was the result of suicide, and that his psychological history as reflected in his medical records establishes that he was suicidal. The Defendants have not supplied any case which holds that psychological records are discoverable over the protections provided by the psychotherapist-patient privilege in order to present an alternative theory of suicide as the cause of death of the plaintiff, as represented by his estate. On the contrary, the Second Circuit and the District of Columbia Circuit have both concluded that the privilege is not overcome when the plaintiff's mental state is put into issue only by the defendants, which is the case here. *See In re Sims*, 534 F.3d 117, 134 (2nd Cir. 2008); *Koch v. Cox,* 489 F.3d 384, 391 (D.C. Cir. 2007). In addition, the Eighth Circuit has held that a patient's suicidal tendencies and threats are not sufficient to waive the psychotherapist-patient privilege. *See United States v. Ghane*, 673 F.3d 771, 785 (8th Cir. 2012). Furthermore, in recognizing the psychotherapist-patient privilege, the *Jaffee* Court rejected a balancing approach to deciding whether the privilege applies, stating that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Jaffee*, 518 U.S. at 17. As the Second Circuit explained, "as confidentiality is a *sine qua non*, the *Jaffee* Court refused to

endorse the proposition that a court could subject a claim of psychotherapist-patient privilege to a balancing test and deny protection if it found 'in the interests of justice, [that] the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests.'" *See In re Sims*, 534 F.3d at 131 (quoting *Jaffee*, 518 U.S. at 7). Thus, this Court may not balance the Defendants' need for Mr. Awalt's psychological records against Mr. Awalt's privacy interest in compelling mandated disclosure of those records.

### i. Mr. Awalt's Illinois Department of Corrections Mental Health Records

The Defendants seek twenty-three pages of documents obtained by Mrs. Awalt from the Illinois Department of Corrections ("IDOC"), which she has withheld on the basis of the psychotherapist-patient privilege. In her initial Rule 26 disclosures Mrs. Awalt disclosed Mr. Awalt's medical records from the night of his death. Included in these records were notations by the hospital staff that Mrs. Awalt informed them that Mr. Awalt suffered from bi-polar disorder and manic depression. The discharge diagnosis in the hospital records was a possible suicide attempt. In response to the Defendants' discovery requests regarding these statements, Mrs. Awalt asserted that she was unaware that Mr. Awalt suffered from manic depression, bi-polar disorder, suicidal ideation or attempts, or other mental or psychological conditions prior to his death. Notwithstanding Mrs. Awalt's assertions that she was unaware that Mr. Awalt may have suffered from any mental health

conditions, she disclosed records to the Defendants which indicate that the opposite is true.

Mrs. Awalt is aware that Mr. Awalt was evaluated by a psychologist or psychiatrist when he was incarcerated at the IDOC on an unknown date. She is also aware of the treatment because she has certain IDOC records in her possession which she has refused to produce, instead identifying them in her privilege log. The Defendants requested that Mrs. Awalt execute a waiver so they could obtain the records directly from the IDOC, which she has refused to do on the basis of the psychotherapist-patient privilege. Mrs. Awalt subpoenaed a copy of Mr. Awalt's IDOC file herself, including his medical and mental health records. She disclosed the documents received in response to the subpoena but withheld eight additional pages of documents, which are also identified in her privilege log. The Defendants assert that Mrs. Awalt should be compelled to disclose the documents she originally had in her possession from the IDOC as well as the documents she later received in response to her subpoena of the IDOC because these records bear upon the suicide theory that the Defendants wish to present as the actual cause of Mr. Awalt's death.

Mrs. Awalt has provided this Court with the documents over which she asserts privilege for an *ex parte in camera* review. The records that the Defendants seek from the IDOC confirm that Mr. Awalt had no suicidal tendencies. In 2004 and 2006, Mr. Awalt reported during IDOC mental health evaluations that he had never received treatment or used medication for mental or emotional issues, and he was found by IDOC personnel to

present no risk of suicide. In 2007, Mr. Awalt discussed depression with psychologists at the IDOC but denied any thoughts of suicide. One of the most common features of the IDOC records is Mr. Awalt's denial of any suicidal ideation and there is no document anywhere in the IDOC records of any suicide attempt by Mr. Awalt. The IDOC psychologists diagnosed Mr. Awalt with major depressive disorder in full remission, substance dependence, and adjustment disorder.

Mrs. Awalt asserts that the psychotherapist-patient privilege applies to protect from disclosure the IDOC documents relating to Mr. Awalt's mental health. In resolving a split among the Circuits, the Supreme Court in *Jaffee*, 518 U.S. at 15, affirmatively recognized the existence of a psychotherapist-patient privilege as a matter of federal common law under Federal Rule of Evidence 501.[3] The Court held in *Jaffee* that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment

---

[3] Although this federal question suit, brought under the Court's grant of authority to hear such cases pursuant to 28 U.S.C. § 1331, involves supplemental state-law claims arising under Illinois law, the resolution of the privilege issues are governed by the federal common law of privileges and not by the Illinois psychotherapist-patient privilege which is codified in the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1 *et seq. See Jaffee*, 518 U.S. 1 at 5 (applying the federal common law of privileges, and not Illinois state law of privilege, to a case that included a claim arising under 42 U.S.C. § 1983 as well as a state-law claim under the Illinois Wrongful Death Act); *In re Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983) (holding that in nondiversity actions the contours and exceptions of privileges are matters of federal common law and that state-created principles of privilege do not control); *see also Doe v. Oberwise Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (Posner, J.) (applying the federal common law psychotherapist-patient privilege recognized in *Jaffee* to a case involving a federal claim arising under Title VII of the Civil Rights Act of 1964 as well as a host of supplemental state-law claims brought pursuant to Illinois state law).

are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."
*Id*. The purpose of the privilege, as explained by the Supreme Court, is to promote the public interest in the honest exchange of communication between a psychotherapist and their patient by establishing that information about the patient's mental health will not be disclosed to third-parties. *See Id.* at 10-12 ("Effective psychotherapy. . .depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. . .The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance."). Likewise, the privilege exists to avoid deterring people from obtaining needed mental health treatment out of fear that by doing so they will put themselves at a disadvantage in litigation. *See Doe v. Oberwise Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (Posner, J.).

A threshold issue of whether Mrs. Awalt can assert the psychotherapist-patient privilege on behalf of her deceased husband arises. Whether the psychotherapist-patient privilege survives the death of the patient, or is otherwise affected by the patient's death, is a matter that has not been conclusively decided. There is a paucity of decisions on the issue of whether the federal common law psychotherapist-patient privilege (as opposed to

parallel state-law psychotherapist-patient privileges) survives the death of the patient. The only two courts to have addressed the issue since *Jaffee* that this Court is aware of both held that the privilege can be asserted on behalf of the patient, even where the patient is deceased. *See, e.g., Richardson v. Sexual Assault/Spouse Abuse Resource Center, Inc.*, 764 F. Supp. 2d 736, 741 (D. Mary. 2011) (concluding that an unlicenced counselor working under the supervision of a licensed social worker had standing to assert the privilege on behalf of the patient); *United States v. Hansen*, 955 F. Supp. 1225 (D. Mont. 1997) (concluding that a psychotherapist has standing to assert the privilege on behalf of a deceased patient and stating that "[m]ost jurisdictions allow a psychotherapist to assert the privilege on behalf of a patient" and citing as examples Ala. R. Ev. Rule 503(c); Fla. Stat. Ann. § 90.503(3)(d); Haw.Rev.Stat. § 626–1, R. 504.1(c); N.J. R. Ev. Rule 505; Okla. Stat. Ann. tit. 12, § 2503(C); Ore.Rev.Stat. § 40.230 Rule 504(3)(d)); *see also* 1 Kenneth S. Croun et al., *McCormick on Evidence* § 102, at 462 (6th ed. 2006) (recognizing that the privilege continues to apply after the patient's death). The majority of courts that recognized the psychotherapist-patient privilege prior to *Jaffee* also concluded that the privilege could be asserted on behalf of the patient, while a minority of pre-*Jaffe* cases concluded that the patient's death extinguished the privilege. *Compare In re August, 1993 Regular Grand Jury (Medical Corp. Subpoena II)*, 854 F. Supp 1392, 1397-1398 (S.D. Ind. 1994) (holding that a medical corporation could assert the psychotherapist-patient privilege on behalf of patients in the context of a grand jury

subpoena that sought communications between patients and psychotherapists) and *Cunningham v. Southlake Center for Mental Health*, 125 F.R.D. 474 (N.D. Ind. 1989) (recognizing that under proposed Federal Rule of Evidence 504, the personal representative of a deceased patient may claim the privilege) with *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1451 (10th Cir. 1990) (holding that the psychotherapist-patient privilege, which the court assumed existed under federal common law without deciding that it did in fact exist in the Tenth Circuit, does not apply after the patient's death).

Although the federal common law of privileges is supreme, state privilege law may be considered by a court as instructive authority in determining the proper scope of the privilege. *See, e.g., Clemmer v. Office of Chief Judge*, 544 F. Supp. 2d 722, 725 (N.D. Ill. 2008) ("Although the federal common law is supreme with respect to privileged information, state law may be considered 'as one of the factors in making the fact intensive determination of whether or not the asserted privilege applies.'") (quoting *United States v. State of Ill.*, 148 F.R.D. 587, 590 (N.D. Ill. 1993)). Thus, although the issue of privilege in this federal question suit is governed by the federal common law of privileges, a "strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Memorial Hospital For McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981); *see also Jaffee*, 518 U.S. at 12-13 ("the policy decisions of the States bear on the

12

question whether federal courts should recognize a new privilege or amend the coverage of an existing one."). Under the Illinois psychotherapist-patient privilege, which is codified in the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1 *et seq.*, the privilege survives the death of the patient subject to two narrow exceptions. One of these exceptions holds that a decedent's privilege over their psychological records is waived in civil proceedings where the mental or physical conditions of the patient is introduced as an element of the plaintiff's claim. *See* 740 ILCS 110/10(a)(2). The Illinois courts have construed this exception very narrowly, and have confined it to cases in which the plaintiff's damages include an affirmative claim for mental loss. *See Thiele v. Ortiz*, 520 N.E.2d 881, 887-888 (Ill. App. Ct. 1988) (citing *Webb v. Quincy City Lines, Inc.*, 219 N.E.2d 165 (Ill. App. Ct. 1966)). Under Illinois law, a claim for loss of society under the Illinois Wrongful Death Act does not place the decedent's mental condition at issue to fall within the exception to the protections provided by the Mental Health and Developmental Disability Confidentiality Act. *See Thiele*, 520 N.E.2d at 888. Thus, the policy of Illinois with respect to the psychotherapist-patient privilege is that the privilege survives the death of the patient and that bringing a claim under the Illinois Wrongful Death Act, as Mrs. Awalt has done here, does not waive the decedent's privilege to prevent his psychological records from compelled disclosure.

In *Jaffee* the Supreme Court closely analogized the psychotherapist-patient privilege

to the attorney-client privilege, and observed that both are "rooted in the imperative need for confidence and trust." *See Jaffee*, 518 U.S. at 10 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). The *Jaffee* Court, throughout much of its decision, analyzed the confidential communications protected by the psychotherapist-patient privilege in accordance with the protections created by the attorney-client privilege. The Court essentially held that the psychotherapist-patient privilege is identical in all material respects to the attorney-client privilege. *See Koch*, 489 F.3d at 390 (recognizing that the *Jaffee* Court closely analogized the attorney-client privilege to the psychotherapist-patient privilege and held them to be substantially similar); *In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 76 (1st Cir. 1999) ("The *Jaffee* Court justified the psychotherapist-patient privilege in terms parallel to those used for the attorney-client privilege."); *see, e.g., Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Cal. 2003) ("In *Jaffee*, the Supreme Court repeatedly analogized the psychotherapist-patient privilege to the attorney-client privilege. There is good reason, therefore, to treat the two privileges similarly"); *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999) (citing *Jaffee*, 518 U.S. at 10) (noting that the Supreme Court in *Jaffee* found the attorney-client privilege "to be analogous to the psychotherapist-patient privilege"); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229 (recognizing the close analogy the *Jaffee* Court made between the attorney-client privilege and the psychotherapist-patient privilege). Only two years after its decision

14

in *Jaffee*, the Supreme Court held in *Swidler & Berlin v. United States*, 524 U.S. 399, 410-411 (1998), that the attorney-client privilege survives the death of the party who holds the privilege. In light of the close connection made by the *Jaffee* Court between the psychotherapist-patient privilege and the attorney-client privilege, it is reasonable to conclude that *Swidler*, which holds that the attorney-client privilege survives the death of the party who holds the privilege, likewise applies to the psychotherapist-patient privilege.

Given the federal caselaw holding that the privilege may be asserted on behalf of the patient and that it survives the death of the privilege holder; the nature of Illinois's psychotherapist-patient privilege, which is instructive authority in this nondiversity case given the strong policy in favor of state and federal comity with respect to testimonial privileges; in addition to the Supreme Court's treatment in *Jaffee* of the psychotherapist-patient privilege as materially similar to the attorney-client privilege (as well as subsequent lower courts' similar treatment of the psychotherapist-patient privilege as essentially identical in procedural nature to the attorney-client privilege), which the Supreme Court held survives the death of the privilege holder, this Court concludes that the psychotherapist-patient privilege survives the death of the patient and may be asserted on their behalf by a plaintiff with proper standing to assert the privilege. Accordingly Mrs. Awalt may assert the psychotherapist-patient privilege on behalf of her deceased husband to prevent from compelled disclosure his psychological records that are properly protected

15

by the privilege. The question then becomes whether the privilege has been waived in this case.

The *Jaffee* Court explicitly held that the psychotherapist-patient privilege, like all other testimonial privileges, can be waived. *See Jaffee*, 518 U.S. at 15 n.14. The Supreme Court, however, declined to explicitly set forth the manner in which the privilege would be waived, instead leaving it to the lower courts to fashion a doctrine of waiver to be applied to the psychotherapist-patient privilege. The Court did reject the notion that the privilege was subject to a balancing test, an approach that had been previously taken by some federal and state courts in evaluating the privilege, stating that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *See Id*. at 17. Thus, this Court is not to balance Mr. Awalt's interest in the privacy of his psychological records against the need for the psychotherapist-patient communications by the Defendants. *See Id*. at 7 (rejecting a "balancing component of the privilege," and holding that a court should not deny the protections of the privilege even if it found "in the interests of justice, [that] the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests.") (internal quotations omitted). Thus, the alleged interest of justice served by allowing the Defendants to compel disclosure of Mr. Awalt's

psychological records to present the theory that his death was in fact caused by suicide must not be balanced against Mr. Awalt's privacy interest in maintaining the confidentiality of his psychological records that are protected by the privilege. A plaintiff waives their right under the privilege when, by seeking damages for emotional distress, they place their psychological state at issue in the litigation. *See Doe*, 456 F.3d at 718. If the plaintiff does this, then the defendant is entitled to discover any records of the plaintiff's psychological state. *See Id.* Whether a plaintiff has placed their psychological state at issue in the litigation by claiming damages for emotion distress is a heavily fact-intensive, case-by-case inquiry into the nature of the damages claimed and the extent to which the plaintiff has put their psychological state at issue.

The issue of waiver of the psychotherapist-patient privilege arises frequently in civil litigation when the plaintiff claims damages for emotion distress. Federal courts faced with this issue have developed divergent approaches for ascertaining whether the privilege has been waived. The so-called "narrow" approach holds that a patient only waives the privilege by putting the substance of the advice or communication with their psychotherapist directly at issue in the suit. *See Koch*, 489 F.3d at 390. Courts employing the "narrow" approach will only find a waiver of the privilege where the emotional distress claims are "severe," where the plaintiff relies on communications with a therapist as part of their case, or where the plaintiff intends to offer expert testimony on the claim of

17

emotional distress. *See Id.*; *see, e.g., John v. Napolitano*, 274 F.R.D. 12, 17–19 (D. D.C. 2011); *Walton v. North Carolina Dept. of Agriculture and Consumer Services*, No. 09 C 302, 2011 WL 883579, *3 (E.D. N.C. March 11, 2011); *Ortiz v. Potter*, No. 08 C 1326, 2010 WL 796960, *6 (E.D. Cal. March 5, 2010); *Valentine v. First Advantage Saferent Inc.,* No. 08 C 142, 2009 WL 3841967, *1 (C.D. Cal. Sept. 18, 2009); *Doe v. City of Chula Vista*, 196 F.R.D. 562, 568–69 (C.D. Cal. 1999). On the other side of the spectrum, under the so-called "broad" approach, courts have held that a plaintiff places their mental condition at issue and waives the privilege simply by making a claim for emotional distress damages. *See Koch*, 489 F.3d at 390. Courts employing the "broad" approach will find a waiver of the privilege merely from the plaintiff putting their emotional state as issue in the litigation. *See Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000); *see, e.g., Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 (D. N.J. 2000); *Fox v. Gates Corp*, 179 F.R.D. 303, 306 (D. Colo. 1998); *Sarko v. Penn–Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997); *Vann v. Lone Star Steakhouse & Saloon, Inc.*, 967 F. Supp. 346, 349–50 (C.D. Ill. 1997); *EEOC v. Danka Indus., Inc.*, 990 F. Supp. 1138, 1142 (E.D. Mo. 1997). There is a final approach, the so-called "middle ground" approach—which has become the majority view—which holds that "[w]here a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient

18

privilege." *See Koch*, 489 F.3d at 390.

The majority view—or the "middle ground" approach—to waiver of the psychotherapist-patient privilege in cases in which the plaintiff seeks damages for emotional distress carefully evaluates the kind of emotional distress claimed before concluding whether the privilege has been waived or not. *See, e.g., Flowers v. Owens*, 274 F.R.D. 218, 223-226 (N.D. Ill. 2011) (giving a detailed account of waiver of the psychotherapist-patient privilege, and describing the contours of the doctrine that make the nature of the damages sought relevant to the issue of waiver). The weight of authority holds that a party waives the privilege by claiming damages in situations where that party plans to introduce evidence of psychological treatment in support of their damages claim at trial. *See, e.g., Noe v. R.R. Donnelley & Sons*, No. 10 C 2018, 2011 WL 1376968, *1 (N.D. Ill. April 12, 2011) (collecting cases) (stating that a number of courts within the territorial jurisdiction of the Seventh Circuit recognize that the privilege is not waived when a plaintiff does not intend to offer evidence of consultations with a psychotherapist at trial); *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 990 (N.D. Ill. 2010) (privilege is not waived when plaintiff does not intend to introduce records or testimony of psychotherapists in support of their claim for damages); *Santos v. The Boeing Co.*, No. 02 C 9310, 2003 WL 23162439, *1 (N.D. Ill. Oct. 21, 2003) (the fact that a plaintiff seeks emotional damages does not justify giving defendants access to mental health records); *Hucko v. City*

*of Oak Forest*, 185 F.R.D. 526, 529 (N.D. Ill. 1999) (privilege is not waived where plaintiff is not offering evidence of psychological treatment of her emotional distress at trial). Thus, the privilege may be waived where the plaintiff seeks to put into evidence psychological treatment in support of their claim for damages, but it is not waived where the plaintiff does not seek damages for emotional distress by introducing evidence that is not specific, concrete, or for which they received counseling as a result.

Courts in this District, as well as others throughout the Country which apply the "middle ground" approach, have held that where the plaintiff seeks 'garden variety' emotional damages—which is to say, damages limited to the typical negative emotional impact on the plaintiff that obviously flow from the defendant's alleged misconduct—the privilege remains intact and is not waived. *See, e.g., Flowers*, 274 F.R.D. at 225 ("Since *Jaffee*, most courts have held that claims of 'garden variety' emotional damage do not result in a waiver of the psychotherapist/patient privilege."); *E.E.O.C. v. Area Erectors, Inc.*, 247 F.R.D. 549, 552 (N.D. Ill. 2007); *Taylor v. ABT Electronics, Inc.*, No. 05 C 576, 2007 WL 1455842, *2 (N.D. Ill. May 14, 2007); *Santelli*, 188 F.R.D. at 309; *see also In re Sims*, 534 F.3d at 129; *Koch*, 489 F.3d at 390; *Diehl v. Bank of America Corp.*, No. 09 C 1220, 2010 WL 4829970, *1–2 (M.D. Fla. Nov. 19, 2010); *Kunstler v. City of New York*, No. 04 C 1145, 2006 WL 2516625, *9 (S.D. N.Y. Aug. 29, 2006); *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 657, 660 (D. Kan. 2004); *Vanderbilt*, 174 F.R.D. at 228; *Sabree v. United Brotherhood of Carpenters & Joiners of America*,

*Local No. 33*, 126 F.R.D. 422, 426 (D. Mass. 1989). Under this "middle ground" approach when a plaintiff seeks damages for emotional distress for which they later sought psychotherapeutic treatment or otherwise affirmatively puts the privileged communication directly at issue in the lawsuit, the privilege is waived and the defendant is entitled to discover otherwise privileged information concerning the plaintiff's mental health. *See, e.g., Santelli*, 188 F.R.D. at 308-309; *Wynne v. Loyola Univ. of Chicago*, No. 97 C 6417, 1999 WL 759401, *1 (N.D. Ill. Sept. 3, 1999); *see also Schoffstall*, 223 F.3d at 823; *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 399–400 (E.D. Cal. 2009); *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 629 (S.D. Cal. 1999); *Vanderbilt*, 174 F.R.D. at 229. However, where the plaintiff's claim for emotional distress damages are limited to those that naturally flow from the defendants' alleged misconduct the privilege remains intact and can be asserted by the plaintiff to prevent mental health records from compelled disclosure—that is, claims for 'garden variety' emotional distress damages do not waive the privilege.

The rule distinguishing between 'garden variety' claims for emotional damages and claims in which the plaintiff puts their psychological well-being into issue "is based upon the obvious principle of fairness that a party cannot inject his or her psychological treatment, condition, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Kronenberg*, 747 F. Supp. 2d at 989 (quoting *Santelli*, 188 F.R.D. at 309; citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir.

2000)).  Mrs. Awalt has not injected Mr. Awalt's psychological treatment, condition, or symptoms into this case.  She has not made any claims for damages for Mr. Awalt's psychological treatment, condition, or symptoms resulting from the alleged misconduct of the Defendants.  Furthermore, Mrs. Awalt does not intend to use Mr. Awalt's psychological treatment, conditions, or symptoms for any purpose in this case, including proving her damages.  Mrs. Awalt's claims for damages are of the 'garden variety' nature, and she has not put her specific psychological state at issue in this suit nor any psychological treatment she received as a result of Mr. Awalt's untimely death.  Thus, the Court concludes that the psychotherapist-patient privilege has not been waived with respect to Mr. Awalt's IDOC mental health records because Mrs. Awalt is merely alleging 'garden variety' emotional damages resulting from the Defendants' alleged misconduct.  As such, Mrs. Awalt may assert the privilege over Mr. Awalt's mental health records maintained by the IDOC and thereby prevent the Defendants from compelling their disclosure.  The Defendants' Motion to Compel documents relating to the psychological treatment that Mr. Awalt received at the IDOC is denied.

### ii. Mr. Awalt's Social Security Administration Records

The Defendants also seek disclosure of psychological evaluations of Mr. Awalt conducted by the Social Security Administration ("SSA") in connection with his application for Social Security benefits.  Mrs. Awalt has disclosed documents that demonstrate that Mr.

Awalt applied for disability benefits in 2008, 2009, and 2010 on the basis of a seizure condition, bi-polar disorder, and manic depression. Mrs. Awalt has obtained Mr. Awalt's SSA records and submitted a privilege log stating that she has withheld four records on the grounds that they are protected by the psychotherapist-patient privilege under federal common law. The Defendants contend that the SSA documents appear to represent three psychiatric examination by three physicians within approximately one year of Mr. Awlat's death. They contend that because these documents may contain information related to Mr. Awalt's mental state, the degree of his alleged psychological disorders, possible past suicide attempts, and potential suicidal ideation, the records are directly relevant to their defense of death by suicide. Defendants requested a waiver from Mrs. Awalt to procure Mr. Awalt's SSA records. She refused to sign the waiver, insisting on procuring the documents herself. The Defendants Motion to Compel asserts what they view as their right to discover the records without having to filter them through Mrs. Awalt's counsel. Since this Motion to Compel has been pending, Mrs. Awalt undertook to obtain all of the records that the Defendants have requested from the SSA. The parties agreed that the Defendants would not persist to compel a signed waiver if Mrs. Awalt could demonstrate that she produced all documents provided to her by the SSA in response to her subpoena, such as by providing a statement of the number of pages disclosed or a billing record showing Mrs. Awalt's payment for copies. Mrs. Awalt provided a privilege log for documents retained,

23

but did not provide documentation from the SSA indicating how many pages she received in response to her subpoena. Consequently, the Defendants further request that Mrs. Awalt be compelled not only to disclose the SSA records but also to sign a release for Mr. Awalt's SSA medical records and medical providers identified therein so that they can pursue avenues of follow-up from the records and verify that Mrs. Awalt's disclosure is complete.

Again, Mrs. Awalt has provided the Court with the relevant documents for an *ex parte in camera* review. Psychological records created in March 2010 reflect that Mr. Awalt was not suicidal and that he had never been formally treated for bipolar disorder. Records from August 2009 reflect Mr. Awalt's history of seizures, substance abuse, and affective disorder in remission. A July 2009 report reflects that Mr. Awalt reported that he once attempted suicide in the late 1990s by drinking beer and then blowing the pilot lights out on his stove. At that time, Mr. Awalt explained what had happened to the staff at Provena St. Joseph's Hospital, where he was taken, as a big accident. The July 2009 report also reflects that Mr. Awalt had been suffering from seizures for two years and that he had seen doctors at the IDOC who had treated him for bipolar disorder, and that he was diagnosed with a substance abuse problem, depression, and a seizure disorder.

Mrs. Awalt argues that one mention of an alleged suicide attempt that purportedly took place fifteen years before Mr. Awalt was found dead in his cell at the Grundy County

Jail is of little or no probative value in this case. This is especially true in light of the fact that the record assembled so far as well as the privileged documents are lacking in any evidence of suicidal ideation on Mr. Awalt's part since at least 1995. The fact that Mr. Awalt may have been living with mental disorders for a long period of time without any issues is far less relevant to the instant case than if he had attempted suicide a month or two before his death—something that the record and the evidence does not reflect he did.

Aside from the limited probative value of this information, Mrs. Awalt contends that the SSA files are protected by the psychotherapist-patient privilege, and that the privilege has not been waived. For the same reasons discussed above, neither Mrs. Awalt's claim of damages nor Mr. Awalt's untimely death waive the privilege. Mrs. Awalt is merely seeking 'garden variety' damages in connection with the death of her husband, and she has not put his or her specific mental state at issue in the case with respect to the SSA documents, nor does she intend to use those documents to prove her damages. *See, e.g., Flowers*, 274 F.R.D. at 225; *Santelli*, 188 F.R.D. at 309; *Noe*, 2011 WL 1376968 at *1. The Defendants advance another waiver argument with respect to the SSA files by claiming that Mr. Awalt waived the psychotherapist-patient privilege by applying to the SSA for Social Security benefits in the first place.

A person who discloses privileged information to a third-party waives the privilege in the absence of an agreement to keep the information confidential. *See Dellwood Farms,*

*Inc. v. Cargill*, 128 F.3d 1122, 1127. "In the case of selective disclosure, the courts feel, reasonably enough, that the possessor of the privileged information should have been more careful, as by obtaining an agreement by the person to whom they made the disclosure not to spread it further." *Id*. Applying this rule, the court in *Lawrence E. Jaffe Pension Plan v. Household, Intern., Inc.*, 224 F.R.D. 412 (N.D. Ill. 2006), held that the disclosure of information to the Securities and Exchange Commission pursuant to a confidentiality agreement did not waive applicable privileges.

Mr. Awalt's disclosure of information to the SSA took place with all of the protections of the Privacy Act of 1974, 5 U.S.C. § 551 *et seq.*, in place. The Privacy Act guarantees that information disclosed in support of an application to the SSA for benefits will never be disclosed beyond the agency without the express consent of the applicant. *See* 5 U.S.C. § 552a(b). Thus, the Privacy Act is just the sort of "agreement. . .not to spread [privileged information] further" that the Seventh Circuit was describing in *Dellwood Farms*. Therefore, Mr. Awalt's application for benefits did not waive the psychotherapist-patient privilege that protects psychiatric records that are a part of Mr. Awalt's agency file because the SSA records were provided to the agency by Mr. Awalt against the backdrop of the protections provided by the Privacy Act of 1974. Because the SSA documents have little to no probative value to this case, and because they are protected by the psychotherapist-patient privilege which has not been waived by Mr. Awalt's request for benefits to the SSA,

the Defendants' Motion to Compel production of the SSA documents is accordingly denied.

### iii. Mr. Awalt's Provena St. Joseph's Hospital Mental Facilities and Fort Logan Mental Hospital Records

Finally with respect to Mr. Awalt's mental health records the Defendants seek compelled disclosure of records that they allege are in the possession of Provena St. Joseph's Hospital Mental Facilities and the Fort Logan Mental Hospital in Colorado. The Defendants are in the possession of a handwritten document by Mr. Awalt submitted to the SSA, which bears his signature as well as the signature of Mrs. Awalt. Mrs. Awalt disclosed this document to the Defendants pursuant to their discovery requests. The Defendants allege that the document states that Mr. Awalt previously attempted suicide, and that he sought mental health treatment and submitted "records from S. Joes Mental Facilities for attempting suicide" and "Ft. Logan Mental Hospital-Colorado as a teenager for uncontrollable behavior." Based on Mrs. Awalt's disclosure of this record the Defendants have requested waivers so that they may obtain records from these entities. Mrs. Awalt denied that request, consistent with her denial of requests for HIPPA waivers for any medical records, pending resolution of the instant Motion. The Defendants contend that from an examination of the handwritten note and Mrs. Awalt privilege log it appears that Mr. Awalt began suffering from mental health conditions within four years of his death, although he was not regularly medicated. Alternatively, the Defendants argue that

even if Mr. Awalt's alleged mental illnesses had been a problem with which he struggled throughout his entire life that does not preclude the possibility that those conditions led him on a path that culminated in suicide years later.

Mrs. Awalt contends that these as-of-yet unidentified set of documents that may or may not be in dispute are both irrelevant to the instant suit and are protected by the psychotherapist-patient privilege. Mrs. Awalt claims that she has no idea whether this hypothetical set of documents exists and that she has not had the opportunity to obtain these documents for the Court's *ex parte in camera* review. The reason for this lack of clarity is that the Defendants delayed requesting the documents until after the parties appeared before this Court on June 18, 2012, whereafter the Defendants asked for the first time for psychological records that may be in the possession of Provena St. Joseph's Hospital or the Fort Logan Mental Hospital in Colorado pertaining to treatment received by Mr. Awalt between 1995 and 1997. This time frame is referenced in the handwritten release that Mr. Awalt provided to the SSA, in which he mentioned the mid-1990s suicide attempt and gave the SSA permission to explore any documents kept by these two institutions. No records from either institution are among the files that were produced to Mrs. Awalt by the SSA pursuant to her subpoena for Mr. Awalt's agency file and therefore the Court is not in the possession of these potential records either.

As the evidence provided by Mrs. Awalt demonstrates, the record assembled so far

28

has yielded zero evidence that Mr. Awalt had suicidal tendencies at all in the fifteen years preceding his death at the Grundy County Jail. Indeed the record and the evidence shows that in evaluations conducted by both the IDOC and the SSA over a period of years Mr. Awalt was repeatedly found to pose no threat of suicide. Fifteen-year-old records of Mr. Awalt's psychological treatment have little, if any, probative value in this case. No requested record purports to establish that Mr. Awalt was suicidal right before his untimely death. Furthermore, any documents, if they exist at all, would be covered by the psychotherapist-patient privilege, which has not been waived here. To repeat, Mrs. Awalt has not put her psychological state or her deceased husband's at issue in this suit, and she is seeking only 'garden variety' emotion damages and therefore the privilege is not waived by her prayer for relief. *See, e.g., Flowers*, 274 F.R.D. at 225; *Santelli*, 188 F.R.D. at 309. Mrs. Awalt has no plans to rely on records from Provena St. Joseph's Hospital Mental Facilities and Fort Logan Mental Hospital in proving her case. *See, e.g., Noe*, 2011 WL 1376968 at *1. Thus, the Defendants' Motion to Compel Mr. Awalt's mental health records kept by Provena St. Joseph's Hospital Mental Facilities and Fort Logan Mental Hospital is also denied.

### iv. Mrs. Awalt's Guardian Angel Community Services Records

The Defendants next contend that they are entitled to signed waivers for records relating to Mrs. Awalt's alleged domestic abuse treatment received at Guardian Angel

Community Services, a counseling center. The Defendants contend that Mr. Awalt was in the Grundy County Jail in the days preceding his death as a result of a domestic disturbance with Mrs. Awalt that occurred on September 7, 2010. Following the incident Mrs. Awalt requested an order of protection wherein she stated that Mr. Awalt had been abusing her for a long period of time, that she was afraid for her life, that she was moving to a new house, and that she was shortly filing for divorce from Mr. Awalt. The Defendants claim that Mrs. Awalt has put the good character of her husband into issue by claiming damages for loss of consortium, companionship, comfort, guidance, protection, counsel, advice, and extreme emotional distress, and therefore that they are entitled to paint a picture of her husband that differs from the one that Mrs. Awalt attempts to draw, or at least to undertake an investigation into the nature of the relationship between the Awalts.

The Defendants principally rely on *Cobige v. City of Chicago, Ill.*, 651 F.3d 780 (7th Cir. 2011), to support their argument that Mrs. Awalt cannot simultaneously allege that Mr. Awalt was a source of support, advice, and companionship while also attempting to exclude from evidence negative attributes of his character that bear on those same issues. The Defendants' reliance on *Cobige* is misplaced. The court in *Cobige* was not faced with the question of whether the negative character evidence at issue was protected by any of the testimonial privileges that would protect from disclosure otherwise relevant character

evidence. *Cobige* holds that under Illinois law, which makes a surviving relatives' emotional loss and familial ties relevant to the issue of damages, it is a reversible error to exclude negative evidence of a decedent's character proffered to contradict a favorable portrait of a decedent's character under Federal Rule of Evidence 403. *See Cobige*, 651 F.3d at 785 (citing *Pleasance v. Chicago*, 920 N.E.2d 572, 578 (Ill. App. Ct. 2009)). Thus, the issue of privilege had no bearing on the decision in *Cobige*. That is not the case here, where the documents at issue may be protected by the psychotherapist-patient privilege.

Mrs. Awalt contends that the documents the Defendants seek only concern counseling that she received after her minor daughter became the victim of a sexual assault and do not include any records relating to counseling for domestic abuse. Mrs. Awalt provided the documents to this Court for its *ex parte in camera* review. Guardian Angel is not in the possession of any documents related to domestic abuse counseling of Mrs. Awalt because Mrs. Awalt never sought any domestic abuse counseling there. The Guardian Angel files concern counseling regarding the rape of Mrs. Awalt's minor daughter. The Defendants argue that because such traumatic incidents often have a significant impact on every member of the family and every relationship therein, the files may contain statements about the effect that the event had on Mr. Awalt personally, his troubled relationship with his wife, or the family unit. The Defendants admit that they can only speculate about whether the files contain information that is relevant to this suit.

There is no basis upon which to argue that records of rape-crisis counseling that took place in response to an unrelated crime committed against Mrs. Awalt's minor daughter are probative of any fact at issue in this suit. Even assuming some hypothetical relevance, which this Court doubts exists from its *ex parte in camera* review, the documents are protected by the federal psychotherapist-patient privilege from compelled disclosure. Mrs. Awalt has not put her counseling or mental state into issue with respect to the case, except to the extent that she claims 'garden variety' emotional damages resulting from the Defendants' alleged misconduct—the sort of damages that are the natural consequence of the alleged misconduct and not specific, concrete evidence of psychological distress or counseling for such distress. *See, e.g., Flowers*, 274 F.R.D. at 225; *Santelli*, 188 F.R.D. at 309. Such a claim for 'garden variety' emotional damages is not sufficient to find a waiver of the psychotherapist-patient privilege. *See Id.* Furthermore, these records are not "germane to the plaintiff's lawsuit," *Doe*, 456 F.3d at 718, another requirement to finding waiver of the privilege, because Mrs. Awalt has not made any claim for damages based on anything even remotely related to the sexual assault of her daughter and she will not be relying on counseling documents related to that assault to prove liability or her damages in this case.

Furthermore, even if the documents were of some relevance, and assuming that the federal common law privilege did not apply, Illinois law protects these documents from disclosure. Illinois statutory law "protect[s] victims of rape from public disclosure of

statements they make in confidence to counselors or organizations established to help them." 735 ILCS 5/8-802.1. This state-law prohibition on disclosure is absolute and cannot be waived through litigation conduct. *See Schabell v. Nozawa-Joffe*, No. 08 C 50018, 2010 WL 1704471, *1-*2 (N.D. Ill. April 278, 2010); *People v. Foggy*, 521 N.E.2d 86, 91 (Ill. 1998) ("Moreover, as the appellate court noted in this case, the legislature originally allowed only a qualified privilege for communications between sexual assault counselors and victims but later decided to strengthen the privilege and make it absolute."). Therefore, Mrs. Awalt may assert the federal common law psychotherapist-patient privilege, as well as the Illinois state statutory law, to protect from compelled disclosure her confidential communications with counselors at Guardian Angel. The Defendants' Motion to Compel waivers for records of Mrs. Awalt's treatment at Guardian Angel Community Services is therefore also denied.

### v. Mrs. Awalt's Other Domestic Violence Records

The Defendants argue that they are entitled to discover records of Mrs. Awalt's treatment for domestic abuse by Mr. Awalt. In the petition for an order of protection that Mrs. Awalt filed against Mr. Awalt she stated that she went to the hospital on September 7, 2010 to get medical attention after the domestic incidence with Mr. Awalt transpired. Mrs. Awalt's counsel has stated that Mrs. Awalt did not seek treatment from any psychotherapist related to that incident, but she has nevertheless refused to sign HIPPA

waivers allowing the Defendants to investigate her claims of domestic violence on the basis of the psychotherapist-patient privilege.

Mrs. Awalt insisted on obtaining her own records from Morris Hospital, which she disclosed to the Defendants on June 29, 2012, but which do not contain any records of treatment on September 7, 2010. The Defendants thus issued an interrogatory to Mrs. Awalt requesting the name of the hospital where she sought treatment for the domestic abuse. Once the Defendants become aware of where Mrs. Awalt sought treatment they will request records from that entity. Therefore, the Defendants request that this Court order Mrs. Awalt to sign a medical release for any treaters from whom she sought treatment related to domestic abuse during her relationship with Mr. Awalt.

Unlike the psychotherapist-patient privilege the federal common law of privileges does not recognize a more general physician-patient privilege. *See Whalen v. Roe,* 429 U.S. 589, 602 n.28 (1977) ("The physician-patient evidentiary privilege is unknown to the common law. In States where it exists by legislative enactment, it is subject to many exceptions and to waiver for many reasons."); *United States v. Bek,* 493 F.3d 790, 802 (7th Cir. 2007) ("But we can find no circuit authority in support of a physician-patient privilege, even after *Jaffee*."); *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 926 (7th Cir. 2004) ("the evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law, Fed. R. Evid. 501, which does not recognize a

physician-patient (or hospital-patient) privilege.").

The psychotherapist-patient privilege applies to licensed psychiatrists, psychotherapists, social workers, or any other kind of counselor to whom the privilege might attach. *See United States v. Schwensow*, 151 F.3d 650, 654 (7th Cir. 1998). Furthermore, for the privilege to apply the statements must have been made for the purpose of obtaining psychiatric treatment. *See Id*. Here the Defendants simply seek disclosure of medical records pertaining to Mrs. Awalt's treatment for physical abuse for which she admits she did not receive psychiatric treatment. These medical records are relevant to Mrs. Awalt's claim of damages for loss of consortium and severe emotional distress, and should be admitted into evidence so that the Defendants have an opportunity to paint a portrait of Mr. Awalt that differs from the one Mrs. Awalt wishes to paint. *See Cobige*, 651 F.3d at 785. In Illinois a surviving relatives' emotional loss and familial ties are relevant to the issue of damages and it is a reversible error to exclude negative evidence of a decedent's character offered into evidence to contradict a more favorable portrait of a decedent's character under Federal Rule of Evidence 403. *See Id*. Once the Defendants ascertain where Mrs. Awalt received treatment from for domestic abuse by Mr. Awalt she is ordered to sign a medical release for any treaters from whom she sought treatment from for such abuse by Mr. Awalt.

### III. Conclusion

For the foregoing reasons, the Court finds that the preponderance of materials that the Defendants seek to discovery are protected from compelled disclosure by the psychotherapist-patient privilege, with the exception of medical records regarding Mrs. Awalt's treatment for domestic abuse. Therefore, the Defendants' Motion to Compel is denied with respect to Mr. Awalt's mental health care records kept by the IDOC, the SSA, and Provena St. Joseph's Hospital Mental Facilities and Fort Logan Mental Hospital. The Motion is also denied with respect to Mrs. Awalt's counseling records from Guardian Angel. The Defendants' Motion to Compel is granted with respect to medical records pertaining to Mrs. Atwalt's treatment for domestic abuse by Mr. Awalt. Mrs. Awalt is ordered to sign a medical waiver for any records relating to her treatment for domestic abuse during her relationship with Mr. Awalt.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 29, 2012

36