IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ELIZABETH AWALT, as Administrator of the ESTATE OF ROBERT AWALT, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | 11 C 6142 |
| | ) | |
| | ) | Judge Virginia M. Kendall |
| TERRY MARKETTI, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elizabeth Awalt ("Plaintiff") brought this suit against Grundy County, its Sheriff, and employees of the Grundy County Jail (collectively "the Grundy County Defendants"), as well as Correctional Healthcare Companies, Inc. and Health Professionals, Ltd., two companies that provide medical services to the Grundy County Jail, and their employees (collectively "the Medical Care Defendants"). Plaintiff's claims arise out of the death of her husband, Robert Awalt ("Mr. Awalt"), who died while in the custody of the Grundy County Jail ("the GCJ"). Plaintiff alleges Defendants violated her husband's federal constitutional rights and asserts claims under 42 U.S.C. § 1983 for denial of medical care, conspiracy, and failure to intervene. Plaintiff also alleges several supplemental state-law claims. Plaintiff now moves to compel discovery of various documents relating to medical care provided at the GCJ.[1] For the reasons stated below, Plaintiff's Motion to

---

[1] The parties have satisfied the procedural prerequisites required by the Federal Rules of Civil Procedure and the Local Rules for the Northern District of Illinois in bringing the instant Motion. Federal Rule of Civil Procedure 37(a)(2)(A) and Local Rule 37.2 require that the movant make a good faith attempt to confer with the nonmovant before bringing a motion to compel discovery in a federal district court. The Defendants satisfied their obligations under these rules by making a good faith effort to confer with Plaintiff's counsel concerning the instant discovery disputes before asking for this Court's assistance and intervention. Thus, the Defendants' Motion to Compel is properly before the Court.

Compel Discovery is granted in part and denied in part.

## BACKGROUND

### I.  Grundy County Jail's Filing System

The Grundy County Sheriff's Office maintains an "inmate file" for each inmate detained at the GCJ. This file, which is created upon the inmate's first detention, contains all documentation related to the detainee with the exception of medical records. Inmate Screening Forms, which are used by GCJ booking officers upon intake and contain detainees' statements about their medical condition, are considered part of the inmate file and are not kept with the detainee's medical records. Approximately 15,000 inmate files are currently maintained at the jail. According to Plaintiffs, this includes files for inmates detained at the GCJ at any point from the mid-1980s through the present.

In addition to the inmate file, a "medical file" is maintained by the Medical Care Defendants for any detainee who receives medical care or prescription medication at the GCJ. These files are kept in a designated medical room, and contain medical records from outside treaters, progress notes written by any nurse or physician who treats the detainee at the jail, medical requests (also known as "Sick Call Request Forms") submitted by the detainee, and any general inmate request forms that relate solely to medical care. The medical files also contain detainees' Medical Administration Record ("MAR"), which documents the provision of prescription medication to each detainee. Plaintiff estimates that the GCJ maintains approximately 1,000 medical files. Both inmate and medical files at the GCJ are filed alphabetically and in paper form only.

### II.  Plaintiff's Motion to Compel Discovery

In her Motion to Compel, Plaintiff seeks production of the following: (1) all documents relating to any and all complaints by detainees or any other person alleging inadequate medical care,

denial of medical care, or denial of medication at the GCJ, including officer notes reporting medical care, for the five-year period from September 14, 2005 to September 19, 2010;[2] (2) documents from inmate files at the GCJ indicating a detainee had any medical issue, took medication, or needed medication, including Inmate Screening Forms, MARs, medical progress notes, prescriptions, and communications between detainees and the GCJ nurse or doctor for the five-year period from September 14, 2005 to September 19, 2010; (3) MARs for any detainee present at the GCJ on any date between September 1, 2010 and September 30, 2010; (4) any and all documents showing the number of detainees at GCJ who were receiving or supposed to be receiving Dilantin (or phenytoin) or Topamax (or topirmate) from August 14, 2010 through September 20, 2010;[3] and (5) any and all Sick Call Request Forms, or other documents requesting to be placed on sick call, obtain medication, or be seen by a nurse or doctor, for any detainee at the GCJ dating from August 14, 2010 through September 30, 2010.

### III.    Parties' Subsequent Discussions Pertaining to Plaintiff's Motion

By the time Plaintiff's Motion was fully briefed, the parties had already resolved many of the disputes related to Plaintiff's discovery requests. The Medical Care Defendants agreed to fully comply with the third, fourth, and fifth requests described above. Furthermore, the Defendants do not deny that documents falling within Plaintiff's first and second request may lead to evidence that is relevant and admissible at trial, and have agreed to produce detainees' grievances alleging inadequate medical care, denial of medical care, and denial of medication from December 1, 2008

---

[2] Plaintiff also moved to compel the same documents for "any jail or correctional facility in Illinois that HPL is contracted with to provide health care services . . . ." (Pl. Mot., p. 3.) Since filing her initial brief, Plaintiff has agreed to limit her request to documents pertaining to the GCJ.

[3] Phenytoin and topirmate are generic forms of Dilantin and Topamax – seizure seizure Plaintiff alleges Mr. Awalt should have been receiving during his detention at the GCJ.

to December 31, 2010, provided that an appropriate protective order is entered. This includes formal written grievances, Sick Call Request Forms, and general request forms that reflect medical care complaints. The Grundy County Defendants have also agreed to produce all oral complaints made to jail and medical staff that were later reduced to writing in the form of "pass on notes" from December 1, 2008 to September, 2010. Lastly, it is the Court's understanding that the Medical Care Defendants have agreed to produce the file containing "officers' notes" describing medical care as reflected in Plaintiff's Motion to Compel at page 7.[4]

The Defendants object, however, to Plaintiff's request for documents dated before December 1, 2008. According to the Defendants, Plaintiff's request for the production of documents that predate December 1, 2008 is overly broad because it encompasses an irrelevant time period during which Grundy County Sheriff's Office did not use the Medical Care Defendants for medical care at the GCJ. The Defendants also argue that Plaintiff's definition of "medical complaints" is overly broad and would lead to an unduly burdensome and expensive document production that is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Defendants argue that Plaintiff's request for Inmate Screening Forms and documents related to "any medical issues" a detainee at the GCJ may have had is overly broad because those documents do not reflect detainees' actual complaints about the care they were receiving. The Defendants propose that discovery in this area be limited to medical grievances submitted by detainees, sick call requests, and general request forms that contain medically-related complaints.

---

[4]The Court's understanding is based on representations contained in the Grundy County Defendants' response brief. (Dkt. No. 117, p. 5.) The Medical Care Defendants do not mention an agreement to produce the file containing officers' notes in their response brief. To the extent the Medical Care Defendants maintain their objection to producing these documents, this Court's ruling with respect to documents relating to detainees' medical issues applies to Plaintiff's request for officer notes as well.

Given that the parties have resolved most of the issues presented in Plaintiff's Motion to Compel Discovery, the Court is left to decide the following: (1) whether Plaintiff is entitled to documents related to "any medical issue" a detainee may have had at the GCJ or only those documents that reflect actual complaints filed by detainees for inadequate medical care; and (2) whether the relevant period for Plaintiff's *Monell* discovery of medical care at the GCJ reasonably includes the time period between September 14, 2005 to December 1, 2008, despite the fact that this time period predates the GCJ's contract with the Medical Care Defendants.

## **STANDARD OF REVIEW**

The federal notice pleading system contemplates that parties will have broad discovery to investigate the facts and to help define and clarify the issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993). Accordingly, Federal Rule of Civil Procedure 26(b)(1) gives broad power to discover information "regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id. See also Oppenheimer*, 437 U.S. at 351 (information is relevant if it "bears on" or might reasonably lead to information that "bears on" any material fact or issue in the action); *EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 369 (7th Cir. 2011). Because discovery is concerned with "relevant information"—not "relevant evidence"—the scope of relevance for discovery purposes is necessarily broader than it is for trial evidence under Federal Rule of Evidence 401. *See, e.g., Konica Minolta*, 639 F.3d at 369 (EEOC subpoena); *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002) (EEOC subpoena) (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 814) (1984) (IRS subpoena)).

District courts addressing discovery-related disputes in cases involving *Monell* claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights. *See Castillo v. City of Chicago*, No. 11 C 7359, 2012 WL 1658350, *2 (N.D. Ill. May 11, 2012); *Tanner v. City of Waukegan*, No. 10 C 1645, 2011 WL 686867, *8 (N.D. Ill. Feb. 16, 2011); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000) ("[T]he decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of discovery and proof.");   However, liberal discovery does not mean unlimited discovery, *Oppenheimer*, 437 U.S. at 351–52, and Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and dictate its sequence.  *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

## DISCUSSION

### I.    Plaintiff's Request for Documents Pertaining to Detainee Medical Issues

Plaintiff's request for documents related to GCJ detainees' medical issues is reasonably calculated to lead to the discovery of admissible evidence relevant to her *Monell* theory of liability. Plaintiff may not recover against the entity defendants in this case under section 1983 unless she is able to demonstrate that the deprivation of her husband's constitutional rights was caused by the Defendants' official policy, or widespread practice or custom. *See Walker v. Sheahan*, 526 F. 3d 973, 977 (7th Cir. 2008) (citing *Kujawski v. Bd. of Comm'rs of Bartholomew Cty*, 183 F. 3d 734, 737 (7th Cir. 1999)); *see also Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978).  While there is no clear consensus as to how frequently conduct must occur to constitute a "widespread policy or custom," Plaintiff must demonstrate that the alleged violation of her husband's constitutional rights was not merely a random event. *See Thomas v. Cook County Sheriff's Dep't*,

6

604 F. 3d 293, 303 (7th Cir. 2010). This may be accomplished by proving an implicit policy, gaps in expressed policies, or a series of violations that lay the premise of deliberate indifference. *Id.* (citations omitted).

Here, Plaintiff alleges her husband's death was the result of policies and practices that allowed for repeated and systematic failures in the provision of medical care at the GCJ. In order to prove these allegations, Plaintiff seeks to demonstrate that policymakers at the GCJ were on notice of repeated failures to provide adequate medical care and did nothing to correct those problems.

Evidence that policymakers at the GCJ were on notice of systematically inadequate medical treatment may be found through a variety of sources not limited to actual grievances and Sick Call Request Forms filed by detainees. Other documents describing detainees' medical issues, including Inmate Screening Forms, patient charts and medical notes, MARs, prescription drug ordering and shipping information, forms acknowledging a patient's obligation to supply his or her own medicine from home, and other documents or correspondence relating to a detainee's health issues may also be used to prove instances where the Defendants failed to provide adequate medical care. For example, the information recorded in a detainee's Inmate Screening Form might be compared to subsequently generated documents for the same detainee to determine whether the Defendants adequately responded to the detainee's medical needs or documented a valid reason for denying treatment. Or, an MAR indicating a detainee was given or denied prescription medication may be compared to the GCJ's prescription drug ordering and shipping documents to determine whether the GCJ had those prescriptions in stock, and, if not, whether they filled an order for medication after being made aware of the detainee's needs. Neither example involves an actual grievance or complaint, yet both demonstrate how GCJ could be on notice of that detainee's medical condition

and fail to provide adequate care.

The circumstances surrounding Mr. Awalt's death are illustrative. Mr. Awalt did not file a grievance form, Sick Call Request Form, or general request form stating he suffered from seizures or needed medication. Instead, Plaintiff alleges that Mr. Awalt reported to the guards at intake that he suffered from seizures and that he was taking anti-seizure medications twice a day. Plaintiff further alleges that Mr. Awalt repeatedly made oral requests for medication once he began experiencing seizures in his cell. If GCJ recorded Mr. Awalt's condition and medical needs on his Inmate Screening Form but never followed up to order the medication or determine whether his prescription was valid, even after Mr. Awalt complained to the guards that he was suffering seizures, the Inmate Screening Form could be used by Plaintiff to demonstrate GCJ's indifference toward providing medical care after being put on notice of a detainee's medical condition.

The Court recognizes that many Inmate Screening Forms, including those containing references to a detainee's medical condition, will yield information irrelevant to Plaintiff's *Monell* claims. As the Grundy County Defendants point out in their response brief, intake records containing detainee requests for medical care or medical prescriptions are often poor indicators of whether a detainee received adequate medical care. This is because many detainees falsely report to booking officers that they suffer from a medical condition, report have prescriptions that are either outdated or do not exist, or identify chronic conditions at the intake stage that do not require medical attention during their detention. It is also possible that a detainee will be released on bond before the medical condition or prescription identified in the detainee's Inmate Screening Form can be verified. In these situations, the Inmate Screening Form would identify medical issues that the Defendants would have a legitimate reason not to treat.

8

However, discovery is not improper simply because a party's request is likely to unearth some documents that eventually prove to be irrelevant to that party's claim, especially where, as here, that request is "reasonably calculated" to *also* "lead to the discovery admissible evidence" that will potentially bring to light situations identical to those allegedly suffered by the plaintiff. *See* Fed. R. Civ. P. 26(b)(1); *see, e.g., S.E.C. v. Dowdell*, 144 Fed. Appx. 716, 724 (10th Cir. 2005) (finding that every document requested by a subpoena need not be relevant as long as the "information sought . . . is reasonably calculated to lead to the discovery of admissible evidence as required by Rule 26(b)(1)"). Otherwise, reasonably calculated and potentially fruitful discovery requests would be barred simply because they are not likely to yield a high concentration of relevant documents. While "[d]iscovery is not to be used as a fishing expedition," *EEOC v. Harvey L. Walner & Associates*, 91 F. 3d 963, 971 (7th Cir. 1996), nor should it leave the requesting party at the mercy of how comfortably its claims align with the producing party's document filing system.

The Defendants' reliance on *Wright v. City of Chicago* is misplaced. In that case, a plaintiff whose Complaint implicated the City of Chicago's policies, procedures, and practices relating to arrests without imprisonment and the impoundment of vehicles asked the City to: (1) identify every single Chicago police officer who had been subject to an investigation of misconduct for police brutality, false imprisonment, malicious prosecution, assault and battery, improper impoundment of vehicles, and section 1983 complaints from 2004 to 2010; (2) produce all records relating to other suits against the City of Chicago or its police officers related to accusations of false imprisonment, malicious prosecution, assault and battery, improper impoundment of vehicles, and section 1983 complaints from 2004 to 2010; and (3) produce all investigative files from 2004 to 2009 for all civilian abuse complaints against City of Chicago police officers. *Wright*, No. 09 C 3489, 2010 WL

48755800, *2 (N.D. Ill. Nov. 23, 2010). After comparing the focus of the plaintiff's *Monell* claims to his request for production, the court granted the City's motion to limit the plaintiff's *Monell* discovery, finding that the plaintiff's request reflected an attempt to litigate "the ineffectiveness of the police disciplinary system for all types of misconduct" rather than the policies that were the "moving force" behind the plaintiff's alleged constitutional violations. *Id.* at *2–3.

Plaintiff's discovery request here is not nearly as broad or as disconnected from her *Monell* claims. Plaintiff alleges that the policies, practices, and customs at the GCJ with respect to medical treatment were the moving force behind the violation of Mr. Awalt's constitutional right to adequate medical care. Her requests for production are narrowly tailored around those allegations. Plaintiff's discovery request seeks the production of documents related to detainee medical issues only. The discovery request in *Wright* sought to litigate police misconduct in areas far outside the scope of the plaintiff's *Monell* claims; Plaintiff's request here does not reflect an attempt to litigate GCJ's policies outside of the medical context. Perhaps *Wright* would be instructive if Plaintiff sought to use *Monell* discovery to uncover information pertaining to GCJ's policies, practices, or customs with respect to other aspects of prison administration (guard staffing, prison sanitation, nutrition, etc.). Here, however, Plaintiff's request for production is sufficiently confined so that it is reasonably calculated to lead to evidence specifically dealing with the Defendants' provision of medical care. Accordingly, the Court finds discoverable any documents reflecting detainees' medical issues, including grievances and complaints, screening forms, patient charts and notes, MARs, prescription drug ordering and shipping information, and any correspondences relating to detainee health issues.

## II.  Reasonableness of the Time Period Covered by Plaintiff's Request

Plaintiff's request for documents pertaining to medical care at the GCJ over the five-year

10

period prior to Mr. Awalt's death is not overly broad.  In order to prevail on a *Monell* theory of liability, Plaintiff must prove more than just one, or two, or even three instances of inadequate medical care. *Thomas*, 604 F. 3d 293, 303 (citing *Cosby v. Ward*, 843 F. 2d 967, 983 (7th Cir. 1998); *Gable v. City fo Chicago*, 296 F. 3d 531, 538 (7th Cir. 2002)).  Instead, she must show that her husband's constitutional rights were violated as a result of a widespread policy, practice, or custom of denying medical care that the Defendants were aware of and failed to correct. *See id*; *Minix v. Canarecci*, 597 F. 3d 824, 834 (7th Cir. 2010).  The Court finds Plaintiff's request for documents dated September 14, 2005 to September 19, 2010 reasonably calculated to lead to the discovery of evidence that is relevant and admissible to prove her *Monell* claims.  While decisions to allow or disallow discovery requests involve many fact-specific determinations, *Semien v. Life Ins. Co. Of North America.*, 436 F. 3d 805, 814 (7th Cir. 2006), courts in this district have found *Monell*-related discovery requests comparable to Plaintiff's appropriate and not unduly burdensome. *See, e.g., Padilla v. City of Chicago*, No. 06 C 5462, 2011 WL 3651273, *4 (N.D. Ill. Aug. 18, 2011) (setting aside Magistrate Judge's discovery ruling and granting plaintiff's motion to compel production of documents related to police misconduct over a five-year period); *Johnson v. City of Joliet*, , 2007 WL 495258, *4 (N.D. Ill. Feb. 13, 2007) (ordering production of any documents relating to complaints or lawsuits against city's Building Inspections and Permit Department over a five-year period in a case where plaintiff alleged that the city's building inspector directed the demolition of her garage based on her race).

The Grundy County Defendants argue that Plaintiff's discovery request encompasses an irrelevant time period to the extent that it calls for the production of documents that predate the GCJ's contract with the Medical Care Defendants.  The Medical Care Defendants began providing

services to the GCJ on December 1, 2008. According to the Grundy County Defendants, Plaintiff's *Monell* claims are so intimately linked to her claims against the Medical Care Defendants that any documents pertaining to the GCJ's provision of medical care before December 1, 2008 are irrelevant. The law, as well as this Court's previous ruling on the Medical Care Defendants' Motion to Dismiss, does not support the Grundy County Defendants' position.

Official policies that give rise to liability under section 1983 include policies promulgated by policymakers, the acts of policymaking officials, and practices so persistent and widespread as to practically have the force of policy for the entity in question. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Here, evidence of a widespread practice of failing to adequately address detainees' medical needs would implicate the Grundy County Defendants under a *Monell* theory of liability regardless of who the GCJ contracted with to provide medical services. Neither Grundy County's responsibility to provide medical care nor the standard for "adequate care" are tethered to which medical provider Grundy County selects. *See King v. Kramer*, 680 F. 3d 1013, 1020 (7th Cir. 2012) (discussing how a county has an obligation to provide medical care whether it adopts its own policies or its contractor's); *see also Grawcock v. Hodges*, No. 1:10-CV-345-RLM, 2012 WL 3245977, at *9 (N.D. Ind. Aug. 6, 2012) ([D]elegating the medical care doesn't absolve the Sheriff of any liability for unconstitutional policies created by the delegate."). Furthermore, when this Court ruled on the Medical Care Defendants' Motion to Dismiss, it recognized that the Medical Care Defendants "may be found liable for violating § 1983 by maintaining an unconstitutional policy or practice even if none of the individual Grundy County Defendants are found liable under § 1983." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, *11 (N.D. Ill. Apr. 9, 2012). The converse is also true – Grundy County may be found liable for maintaining a widespread practice of failing

12

to provide adequate medical care even if the individual Medical Care Defendants are found not liable. Therefore, documents related to the provision of medical care at the GCJ both before and after the beginning date of the GCJ's contract with the Medical Care Defendant are relevant to Plaintiff's claims.

### III. Undue Burden

The Court does not find Plaintiff's discovery request unduly burdensome. Due to the fact that *Monell* claims implicate a potentially large number of events taking place in an organization over a period of time, they naturally, and necessarily require extensive and often burdensome discovery. However, in this case, these are not *undue* burdens. GCJ maintains roughly 15,000 inmate files, the oldest of which date back to the mid-1980s. As Plaintiff's discovery request is confined to detainees held at the GCJ during a five-year period, only a fraction of these files will need to be reviewed. Plaintiff also estimates that the Medical Care Defendants maintain roughly 1,000 medical files. If Plaintiff's estimate is reasonably accurate, the task of producing these files for the time period requested should be relatively modest. Furthermore, not every inmate file containing medically-related information (such as an Inmate Screening Form identifying a medical condition) will have a corresponding medical file. Indeed if the Defendants' predictions with respect to Intake Screening Forms prove accurate, many detainees reporting medical conditions at intake will not have a medical file at all. For example, a medical file is unlikely to exist for a detainee who makes a statement regarding his medical condition that Defendants later determine to be false. Similarly, no medical file would be generated for a detainee suffering from a chronic medical condition that does not manifest during the detainee's detention at the GCJ. In such cases, Plaintiff's inquiry will likely end once it is determined whether the Defendants had a legitimate reason for

denying medical care.

The Court recognizes that it is difficult at this stage to determine the exact amount of time and resources that will be necessary to comply with Plaintiff's request. However, any concern that Plaintiff's request might prove more cumbersome than the parties anticipate is sufficiently put to rest by the fact that Plaintiff has agreed to have her attorneys and paralegals review the files at the GCJ or pay a GCJ employee a reasonable rate to review the files and produce the requested documents. Therefore, the Court finds that Plaintiff's request for production does not impose an undue burden on the Defendants.

### IV.    Protective Order

On March 21, 2012, this Court entered a Protective Order containing specific terms and conditions related to the procurement and disclosure of protected health information of Mr. Awalt. That Order defines "protected health information" in general terms as health information "of an individual (Dkt. No. 67, ¶ 1(d)), and discusses the possibility that the parties may be required to produce protected health information of both "parties and non-parties." (*Id.* ¶ 2(b)). However, the Order's terms extend only to protected health information documenting "the physical and neurological condition of Robert Awalt from September 14, 2000 through September 20, 2010 [and] the provision of medical care to Robert Awalt from September 14, 2000 through September 20, 2010." (*Id.* ¶ 3(a)-(b)). The Order does not specifically identify that its terms extend to the protected health information of non-parties.

The discovery of medical records raises significant privacy concerns, especially where, as here, "the medical records at issue are not the plaintiff's, but a non-party to the case." *Gordon v. Countryside Nursing and Rehabilitation Center, LLC*, No. 11 C 2433, 2012 WL 2905607, at *2

(N.D. Ill. July 16, 2012) (citing *Beard v. City of Chicago*, No. 03 C 3527, 2005 WL 66074, at *7 (N.D. Ill. Jan. 10, 2005)). Here, the medical files Plaintiff seeks to compel almost certainly contain protected health information of non-interested third parties. In anticipation of that production, the Court directs the parties to submit a second protective order governing the distribution and use of any records of non-parties produced in response to Plaintiff's request.

## CONCLUSION

For the reasons stated, Plaintiff's Motion to Compel Discovery is denied with respect to documents the Grundy County Defendants and Medical Care Defendants have agreed to produce since Plaintiff filed her Motion to Compel Discovery, and granted with respect to the portions Plaintiff's request with which Defendants have not complied. Defendants are directed to produce to Plaintiff documents pertaining to detainees' medical issues, including but not limited to medical grievances and sick call requests, for the period beginning September 14, 2005 to September 19, 2010. The parties are further directed to submit to the Court a Protective Order governing the distribution and use of non-parties' protected health information.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 17, 2012