IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH AWALT, as Administrator of the ESTATE OF ROBERT AWALT, | ) ) | |
| | ) | No. 11 CV 6142 |
| Plaintiff, | ) | |
| | ) | Judge Thomas M. Durkin |
| RICKMARKETTI as Administrator of the Estate ofTERRY MARKETTI, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMBINED RESPONSE TO
DEFENDANTS' MOTIONS TO BIFURCATE TRIAL**

Arthur Loevy                                    Elizabeth Wang
Michael Kanovitz                           LOEVY & LOEVY
Jon Loevy                                        2060 Broadway, Ste. 460
Anand Swaminathan                      Boulder, CO 80302
Steven Art                                        (720) 328-5642
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
(312) 243-5900

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The So-Called *Monell* Evidence Is Also Admissible 404(b) Evidence Against Cullinan And Clauson, And Defendants Have Not Shown That Unfair Prejudice Would Result From Having A Single Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Plaintiff Can Prevail On Her *Monell* Claims Against CHC And The Sheriff Without Establishing Liability Of An Individual Defendant, So Bifurcation Would Be A Waste Of Judicial Resources And Prejudicial To Plaintiff Because There Will Undoubtedly Be Two Trials. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

  A. A Trial on Plaintiff's *Monell* Claims Is Certain Regardless of the Outcome of a Trial on Plaintiff's Claims against the Individual Defendants. . . . . . . . . . . . . . 12

  B. Bifurcation Would Be Prejudicial to Plaintiff Because the Unavoidable Second Trial Would Require Duplicative Testimony and a Substantial Waste of Time and Resources. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**TABLE OF AUTHORITIES**

**Cases**

*Awalt v. Marketti*, 2014 WL 1161500 (N.D. Ill. Apr. 9, 2012). . . . . . . . . . . . . . . . . . . . . . . passim

*Beard v. Obaisi*, 2012 WL 5305357 (C.D. Ill. Oct. 25, 2012). . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Berry v. Deloney*, 28 F.3d 604 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cage v. City of Chicago*, 2010 WL 3613981 (N.D. Ill. Sept. 8, 2010). . . . . . . . . . . . . . . . . . . . 13

*Carter v. Dart*, 2011 WL 1466599 (N.D. Ill. Apr. 18, 2011). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Crawford v. City of Kansas*, 1997 WL 381758 (D. Kan. June 11, 1997). . . . . . . . . . . . . . . . . 17

*Demouchette v. Dart*, 2011 WL 679914 (N.D. Ill. Feb. 16, 2011). . . . . . . . . . . . . . . . . . . . . . 4

*Evans v. City of Chicago*, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010). . . . . . . . . . . . . . . . . . . 13

*Fall v. Indiana Univ. Bd. of Trustees*, 33 F. Supp. 2d 729 (N.D. Ind. 1998). . . . . . . . . . . . . . . 11

*Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999). . . . . . . . . . . . . . . . 2, 3

*Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962 (N.D. Ill. 2010). . . . . . . . . . . . . . . . . . . . 13

*King v. Kramer*, __ F.3d __, 2014 WL 3954028 (7th Cir. Aug. 14, 2014). . . . . . . . . . . . . . . . 6

*Kitchen v. Burge*, No. 10 CV 4093. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Krocka v. City of Chicago*, 203 F.3d 507 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Martinez v. Cook County*, 2011 WL 4686438 (N.D. Ill. Oct. 4, 2011). . . . . . . . . . . . . . . . . . . 13

*McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861 (7th Cir. 1994). . . . . . . . . . . . . . . 10

*Medina v. City of Chicago*, 100 F. Supp. 2d 893 (N.D. Ill. 2000). . . . . . . . . . . . . . . . . . . . . . 17

*Monell v. Dep't of Social Services*, 436 U.S. 658 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Nat'l Union Fire Ins. Co. v. Dowd & Dowd*, 191 F.R.D. 566 (N.D. Ill. 1999). . . . . . . . . . . . . . 11

*Ojeda-Beltran v. Lucio*, 2008 WL 2782815 (N.D. Ill. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pickett v. Dart*, 2014 WL 919673 (N.D. Ill. Mar. 10, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618 (N.D. Ill. 2000). . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smith v. Hunt*, 707 F.3d 803 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Tanner v. City of Waukegan*, 2011 WL 686867 (N.D. Ill. Feb. 16, 2011). . . . . . . . . . . . . . . . . . . 4

*Taylor v. Kachiroubas*, 2013 WL 6060492 (N.D. Ill. Nov. 15, 2013). . . . . . . . . . . . . . . . . . . . . 16

*Terrell v. Childers*, 1996 WL 385310 (N.D. Ill. July 3, 1996). . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Terry v. Cook County Dep't of Corrections*, 2010 WL 2720754 (N.D. Ill. July 8, 2010). . . . . . . 16

*Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010). . . . . . . . . . . . . . . . passim

*United States v. Gomez*, __ F.3d __, 2014 WL 4058963 (7th Cir. Aug. 8, 2014). . . . . . . . . 3, 5, 10

*United States v. James*, 487 F.3d 518 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. McKibbins*, 656 F.3d 707 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Veal v. Kachiroubas*, 20214 WL 321708 (N.D. Ill. Jan. 29, 2014). . . . . . . . . . . . . . . . . . . . . . . 16

*Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Woodward v. Correctional Medical Servs. of Ill., Inc.*, 368 F.3d 917 (7th Cir. 2004). . . . . . . . . 17

**Rules**

Federal Rule of Civil Procedure 42(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rule of Evidence 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**INTRODUCTION**

Defendants move to bifurcate the trial of Plaintiff's claims brought pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1976). *See* Dkts. 288, 290. The issue is whether the evidence that is admissible solely against Correctional Healthcare Companies ("CHC") [1] would be so unfairly prejudicial to Dr. Cullinan as to justify the substantial extra burden on the Court, the witnesses, the jurors, and the parties that bifurcation would entail. In weighing these factors, the Court must consider the likely impact on Cullinan in light of the slew of other prejudicial evidence against Cullinan that is fairly admitted. For many reasons, bifurcation should be denied.

At the outset, there is very little *Monell*-only proof at issue in Defendants' motions. First, most of the evidence that Plaintiff intends to introduce in support of her *Monell* claims will be admissible against Dr. Cullinan or Nurse Clauson (the CHC Defendants) under Rule 404(b)(2) to prove their individual liability. Thus, the potential for prejudice does not favor bifurcation because this evidence will necessarily be introduced in a trial against the individual defendants anyway. The Seventh Circuit's preferred method for addressing potential prejudice from evidence properly admitted under 404(b)(2) is to give a limiting instruction, not to bifurcate. On this basis alone, Defendants' motion to bifurcate should be denied.

Second, the small subset of evidence that would be admissible only on the *Monell* claims against the Sheriff and CHC and not against any of the individual defendants carry little risk of unfair prejudice to the individuals given that there is already a great deal of evidence of the same kind which the jury will be allowed to consider on the claims against the individuals. So, there is little risk of unfairness to the Defendants by admission of incremental additional evidence with a proper limiting instruction.

---

[1] Henceforth, Plaintiff will use "CHC" to refer to CHC and HPL collectively.

On the other hand, Plaintiff, the witnesses, and the jurors will be unfairly prejudiced by having separate trials. If the Court were to bifurcate, a second trial is inevitable regardless of the outcome of the first trial. That is because *Thomas v. Cook County Sheriff's Dep't* recognized that a jury in a medical-care case can easily find that a policy or practice is entirely to blame for a deprivation of constitutional rights without finding that any individual acted with deliberate indifference. 604 F.3d 293, 305 (7th Cir. 2010). The evidence adduced during discovery provides ample evidence for Plaintiff to proceed on exactly such a theory here. Bifurcation will result in substantial duplication of witness testimony, and will be a waste of judicial resources.

Finally, Plaintiff has significant economic and non-economic reasons to proceed on her *Monell* claim against CHC even if she were to prevail against Defendants Cullinan and/or Clauson individually. Not only is she determined to make sure that such a tragedy never occurs again by holding the corporation responsible, but she can obtain punitive damages against CHC—which, if a jury sides with Plaintiff, are likely to be substantial.

## DISCUSSION

This Court has discretion to decide particular claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *see also Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). In considering a bifurcation motion, the Court must also "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party," *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999), or third parties, like the witnesses and jurors selected to sit on the case.

Bifurcation is the exception, not the rule, and separate trials should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 619 (N.D. Ill. 2000). In considering bifurcation, the court "should remain mindful of the traditional role of

2

the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety," *id.* at 620, and that the usual procedure for addressing concerns about evidence of limited admissibility is through clear limiting instructions, which juries can and do follow.

The potential prejudice to the individual defendants that may arise from the jury hearing the *Monell* evidence in a single trial can be remedied with cautionary warnings, limiting instructions, and other instructions to the jury. *United States v. Gomez*, __ F.3d __, 2014 WL 4058963, at *12 (7th Cir. Aug. 8, 2014) (*en banc*) (revising this Circuit's Rule 404(b) framework and affirming that limiting instructions "may help to reduce the risk of unfair prejudice inherent in other-act evidence," and that jurors "are capable of understanding the foundational principle in our system of justice that 'we try cases, rather than persons'"). *Gomez* invites district courts to devise customized limiting instructions to prevent jurors from relying on inappropriate inferences. Any prejudice to Plaintiff from the delay and extra expense caused by two separate trials cannot be remedied except by denying separate trials. *See Real*, 195 F.R.D. at 621. "[T]he weight of authority holds that [post-*Thomas,*] bifurcation is now heavily disfavored." *Awalt v. Marketti*, 2014 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012) (Kendall, J.) (collecting cases).

**I.      THE SO-CALLED *MONELL* EVIDENCE IS ALSO ADMISSIBLE 404(B) EVIDENCE AGAINST CULLINAN AND CLAUSON, AND DEFENDANTS HAVE NOT SHOWN THAT UNFAIR PREJUDICE WOULD RESULT FROM HAVING A SINGLE TRIAL**

Defendants Cullinan and Clauson argue that they would be prejudiced by the introduction in a single trial of Plaintiff's evidence on the *Monell* claims against CHC and the Sheriff. *See* Dkt. 290 at 5-11. But, besides simply listing the proposed evidence, they have not explained why this evidence would cause *undue* or *unfair* prejudice. *See Houseman,* 171 F.3d at 1128 (noting district court's duty to balance the competing interests of each party, judicial economy, and unfair prejudice); *cf. United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011) ("Because

3

all probative evidence is to some extent prejudicial, we have consistently emphasized that Rule

403 balancing turns on whether the prejudice is unfair."). "Evidence is unfairly prejudicial where

'its admission makes it likely that the jury will be induced to decide the case on an improper

basis, commonly an emotional one, rather than on the evidence presented.'" *Smith v. Hunt*, 707

F.3d 803, 810 (7th Cir. 2013) (citation omitted).

Unlike other cases in which courts have bifurcated *Monell* claims, this is a case in which

much of the "*Monell*" evidence is admissible against Cullinan and Clauson. This is very

different, for instance, from an excessive force case in which the plaintiff seeks to introduce

other excessive force complaints against other, non-party police officers in order to show that a

city had a widespread practice and turned a blind eye to it. The cases cited by Defendants are

distinguishable on this ground. *See Tanner v. City of Waukegan*, 2011 WL 686867, at *10 (N.D.

Ill. Feb. 16, 2011) (finding prejudice against the individual officers because the *Monell* evidence

against the city involved acts of misconduct of *non-party* officers); *Demouchette v. Dart*, 2011

WL 679914, at *10 (N.D. Ill. Feb. 16, 2011) (finding that it would be too difficult for the

individual defendants to distinguish *their own acts* from those of *other* indifferent medical

personnel); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (N.D. Ill. 2008).

In those cases, the other complaints were not against the individual defendant officer; the

plaintiffs were seeking to use evidence regarding *other* officers to show a pattern and practice on

the part of the municipality. In such cases, courts have found the prejudice to the individual

defendants great enough to warrant bifurcation because the jury would be hearing evidence on

*Monell* claims that it would not otherwise hear against the individual defendant officers. Here,

however, the evidence of other acts is Cullinan's and Clauson's own misconduct, not other CHC

4

doctors or nurses. This evidence will be admissible against Cullinan or Clauson individually under Rule 404(b)(2). Thus, there is nothing to be gained by bifurcation.

Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a person's character or propensity to behave in a certain way, but it expressly permits the use of this evidence for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Recently, the Seventh Circuit affirmed that other-act evidence need not be excluded whenever a propensity inference can be drawn; rather, such evidence could still be used "when its admission is supported by some propensity-free chain of reasoning." *Gomez*, 2014 WL 4058963, at \*6-\*7. Put another way, Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity evidence." *Id.*[2] Here, the evidence claimed to be solely "*Monell* evidence" will be admissible under Rule 404(b)(2) against Cullinan or Clauson for propensity-free purposes including knowledge, intent, opportunity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2).

First, Cullinan and Clauson's motive and intent are relevant to the deliberate indifference inquiry. To establish the subjective element of the deliberate indifference inquiry, a detainee "must establish that prison officials acted with a sufficiently culpable state of mind to support liability," which can be done by showing "that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (internal quotation marks omitted); *see also Beard v. Obaisi*, 2012 WL 5305357, at \*2 (C.D. Ill. Oct. 25,

---

[2] Plaintiff will discuss the admissibility of this evidence in greater detail in response to motions *in limine*.

2012).[3] Here, although Cullinan and Clauson cite the lawsuits and licensing board actions taken against Cullinan, *see* Dkt. 290 at 6-7, and the discipline and termination of Clauson, *see id.* at 8-9, as evidence that warrants bifurcation, they are all relevant to the deliberate indifference inquiry, and would therefore be admissible as to individual liability. *Beard*, 2012 WL 5305357, at \*2 (evidence of correctional physician's prior disciplinary actions, sanctions, and lawsuits were relevant to proving deliberate indifference). Evidence regarding Cullinan and Clauson's competence is relevant not only to Plaintiff's federal denial of medical care claim, but is also relevant to Plaintiff's state law negligence claims.[4] *See* Dkt. 120 (Second Amended Complaint) at 21-22.

Furthermore, there are a number of other reasons that this evidence will be admissible for a permissible purpose, but the need to introduce those particular purposes will depend on the particular defenses Cullinan and Clauson raise at trial. First, Cullinan may well raise the defense that he did not have notice of Robert Awalt's condition or the seriousness of the risk, in which case Rule 404(b) will allow evidence of past instances where medical need was ignored to demonstrate that Cullinan knew of Awalt's need and chose to ignore the risk. *See* Dkt. 290 at 9-10. For instance, Cullinan may claim that when he called the Jail on the day that Awalt died and heard that Awalt was behaving erratically, he had no reason to know that Awalt was acting that way because of his seizure condition. If he raises that defense, then the prior instances where he

---

[3] Robert Awalt was an arrestee for whom the Fourth Amendment standard applied until his probable cause hearing on September 15, 2010, after which he was a detainee for whom Fourteenth Amendment standard applied. *See King v. Kramer*, __ F.3d __, 2014 WL 3954028, at \*2 (7th Cir. Aug. 14, 2014); *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

[4] Defendant Cullinan claims that Plaintiff intends to have her expert Dr. Greifinger opine on Cullinan's past lawsuits and disciplinary actions in violation of the Court's order barring him from doing so. *See* Dkt. 290 at 6, 7. Plaintiff has no intention of violating the Court's order. The Court's ruling on the *Daubert* motions did not bar, *in limine*, all reference to Cullinan's past lawsuits or disciplinary actions.

6

has denied adequate care to seizure patients can be used to show that Awalt's erratic behavior was enough to put him on notice that Awalt was having a problem with seizures.

Second, if Cullinan claims that he would never ignore a patient's serious medical need, the prior instances of misconduct would be admissible to show his intent. For example, Lincoln Whitaker is a nurse who may testify that Cullinan and CHC had a policy of pushing costs down at the expense of inmate care, including discontinuing many inmates' regular medications. *See* Dkt. 290 at 11. Cullinan and Clauson will argue that the decision to prescribe Dilantin but not also Topamax was a decision based on the application of medical judgment and did not constitute deliberate indifference. Whitaker's testimony would be admissible to show that, to the contrary, they intentionally withheld this medication from Awalt to save money.

Third, Cullinan may raise the defense that he would never have ignored a detainee in Awalt's state because of the oversight provided in his job. In that case, past instances of misconduct and CHC's failure to provide any oversight would be permissible under Rule 404(b) to show that Cullinan had the opportunity to commit misconduct without fear of consequences.

There are numerous other ways in which prior instances of misconduct by Cullinan or Clauson would be admissible for non-propensity uses under Rule 404(b)(2):

- Cullinan is expected to claim that it was reasonable and an exercise of professional medical judgment for him to prescribe Benadryl and phenytoin to Awalt over the phone, without having spoken to Awalt, examined him, reviewed his medical files, or spoken to Awalt's treating physicians. Evidence that, on a prior occasion, the Michigan Department of Licensing Records had disciplined Cullinan for the same actions with respect to an inmate (prescribing and changing an inmate's medication order without conferring with the inmate's doctor, talking to the inmate, reviewing his patient record, or examining the inmate), would be probative of Cullinan's intent, knowledge of risk of harm, lack of accident, and absence of mistake. *See* Exhibit M3 (Administrative Complaint of Board of Health Professions) at P2196-2200 to Medical Defs.' Mot. to Bifurcate; *see also id.* at P2208-2213, P2228-29; Exhibit M10 at P3081-3084 (Consent Order) to Medical Defs.' Mot. To Bifurcate.

7

- Clauson admits that she did not give Awalt his Topamax, even though she knew that he was taking it (in addition to phenytoin). Exhibit A (Clauson Dep. at 80:5-81:22, 107:12-112:10). Defendant Clauson may argue that she did not know that suddenly stopping Awalt's Topamax was likely to cause serious risk to him. *Id.* at 115:9-116:10. Evidence that Clauson had, on a prior occasion, suddenly stopped giving seizure medication to another detainee (K.M.),[5] which caused that detainee to have seizures, would be probative of Clauson's intent and knowledge of risk of harm. Exhibit B (K.M. Dep. at 5:22-8:23, 27:13-30:7, 33:19-37:6).

- Detainee D.D. was abruptly taken off his prescription medication of Xanax while he was at the Jail in July 2010. Exhibit C (Greifinger supplemental report) at 4. As a result of this abrupt withdrawal, he developed tremors, severe agitation and anger. Instead of addressing the medication problem, Cullinan placed D.D. into medical lockdown on July 20, 2010 due to D.D.'s "anger" problems. *Id.* at 4-5. Evidence that Cullinan allowed the abrupt discontinuation of medication from a detainee and that this resulted in serious severe symptoms of withdrawal would be probative of Cullinan's intent, knowledge of risk of harm, lack of accident, and absence of mistake.

- Cullinan did an incomplete history and examination of detainee J.D., who was at the Jail from September 2010 to February 2011. J.D. reported severe abdominal pain on September 6, 2010, and chest pain and a history of hypertension the next day. Without examining J.D., Cullinan gave a telephone order for aspirin and hydrochlorthiazide. About two weeks later, Cullinan saw J.D. for chest pain. Cullinan did an incomplete history and physical examination, did not inquire into J.D.'s history and did not examine his abdomen. He diagnosed hernia and chest wall pain, but no further care was ordered. J.D. continued to complaint of pain and symptoms relating to his hernia, and finally in February 2011, he was taken to the hospital for surgery to reduce the hernia and repair an obstructed bowel. *See* Exhibit C (Greifinger supplemental report) at 3-4. The fact that Cullinan had, on this prior occasion, failed to conduct a complete examination of the patient or review his medical history, is probative of Cullinan's intent, knowledge of risk of harm, lack of accident, and absence of mistake.

- Evidence of a prior lawsuit against Cullinan in which a pretrial detainee died of seizures at a county jail would be probative of Cullinan's knowledge of the risk of harm, lack of accident, absence of mistake, and intent. *See* Exhibit M4 Part 2 at P2622-2623 to Medical Defs.' Mot. to Bifurcate.

---

[5] Where Plaintiff has referenced the specific medical conditions of inmates, Plaintiff has filed a redacted version of their depositions on the public docket, as well as a redacted version of Dr. Greifinger's supplemental report and will provide unredacted versions in the courtesy copy to the Court.

8

- Cullinan will argue that he was not aware of the need for Topamax because it was not communicated to him, and that the failure to therefore prescribe it met the standard of care, and cannot constitute deliberate indifference. But Topamax was listed on Awalt's intake form. Evidence that in prior lawsuits Cullinan had made prescription decisions without reviewing the intake form or consulting other available medical records, resulting in negative patient outcomes, is relevant to establishing intent to the level of deliberate indifference, knowledge of risk of harm, and absence of mistake and lack of accident.

- Evidence that Clauson responded to an inmate grievance regarding medication by stating that "Meeting with a nurse once a week would be a privilege not a right" (*see* Dkt. 290 at 10-11) is probative of intent and absence of mistake or accident. Clauson will argue that she acted reasonably in seeing Awalt initially and calling Cullinan to get Dilantin prescribed, while keeping the Topamax information to herself to review later. Plaintiff can argue that the failure to address Topamax urgently and see Awalt upon the complaints of other inmates is due to her negative attitude toward inmates. This is relevant to deliberate indifference and tends to show that her withholding of Topamax was intentional, not negligence or a mistake.

The examples above provide non-propensity bases to admit nearly all of the categories of evidence that Cullinan and Clauson cite in their motion to bifurcate. *See* Dkt. 290 at 6-11. As such, there is very little evidence, if any, that is relevant and admissible only as to Plaintiff's *Monell* claims against CHC and the Sheriff. Of course, how this plays out will depend in part on what defenses are pursued at trial—thus far, Defendants have not disavowed any arguments—but as it stands, the incremental prejudice to the individual defendants from the admission of the small amount of *Monell*-only evidence, with an accompanying limiting instruction, does not support bifurcation.

For their part, the County Defendants argue that the evidence of Cullinan's misconduct may prejudice them, but they do not specifically identify how any of this evidence would be unfairly prejudicial to the individual defendant officers. They only argue that it is prejudicial because Plaintiff will argue that Sheriff Marketti failed to properly screen medical providers. *See* Dkt. 288 at 9-10. But there is nothing *unfairly* prejudicial about this fact, and so the County

9

Defendants inadvertently make Plaintiff's argument for her. It is entirely relevant for the non-propensity purpose of proving deliberate indifference against the Sheriff that he failed to review Cullinan's background, despite clear evidence of wrongdoing and incompetence. This is not inadmissible propensity evidence vis-à-vis the County Defendants.

For these reasons, the *Monell* evidence is also admissible 404(b) evidence against Cullinan and Clauson, as well as the County Defendants. The admission of such evidence no doubt prejudices these defendants to the extent it is probative of their unlawful conduct, but the mere existence of prejudice does not end the matter by any stretch, for if that were the case, the number of federal trials would multiply out of control. Instead of bifucating claims every time there is potential prejudice, FRE 105 directs the district court to provide instructions to the jury "restrict[ing] the evidence to its proper scope." *See Awalt*, 2014 WL 1161500, at \*13; *Gomez*, 2014 WL 4058963, at \*12 (directing district courts to give specific limiting instructions).

In this case, the jury could be specifically instructed to consider evidence solely for the purpose for which it is introduced. For example, a jury instruction could rather easily be devised to instruct a jury to consider certain past bad acts of Dr. Cullinan to assess whether he acted with deliberate indifference, and/or had knowledge of a serious risk of harm, but not to show that Cullinan has a propensity to ignore inmates' medical needs. Defendants question the efficacy of this solution, but limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them. *See McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 870-71 (7th Cir. 1994) (no need to bifurcate to avoid prejudice where it is presumed jury could follow limiting instruction on how to consider the evidence); *United States v. James*, 487 F.3d 518, 524 (7th Cir. 2007) (presumption that juries follow instructions is rebuttable but very strong); *Terrell v.*

10

*Childers*, 1996 WL 385310, at \*14 (N.D. Ill. July 3, 1996) (rejecting argument that prejudicial evidence against one defendant would "spill over" onto others because court "will not try the case with the notion that jurors will not faithfully undertake their obligations"); *Nat'l Union Fire Ins. Co. v. Dowd & Dowd*, 191 F.R.D. 566, 567 (N.D. Ill. 1999) ("a properly instructed jury will be able to follow and absorb the testimony of a carefully-organized—albeit longer—trial of the entire matter" where the facts were not particularly complex).

The seminal case on this point is the Seventh Circuit's decision in *Berry v. Deloney*, 28 F.3d 604 (7th Cir. 1994), a case where a high school student sued her guidance counselor regarding what she claimed was coerced sex and a resulting abortion. The *Berry* plaintiff sought to bifurcate the damage issue from the liability phase to ensure the jury would not hear evidence concerning her prior sexual history and past abortions when deciding the liability issues. *Id.* at 606-09. Despite the manifestly prejudicial nature of such testimony, the Seventh Circuit affirmed the refusal to bifurcate on the grounds that it was confident the properly-instructed jury would not misapply evidence. *Id.* ("The trial court's repeated admonition to the jury to consider the disputed evidence only in assessing damages precluded any need for a bifurcation motion . . . The parties' interests were better served by the simultaneous trial of liability and damage issues. Testimony as to liability would come from the same witnesses who would testify as to damages, making this action conducive to adjudication in a single, comprehensive proceeding").

In sum, if the Seventh Circuit is fully confident that a jury can sort out testimony about past sex and abortions, then surely the less prejudicial testimony at issue here can also be admitted and circumscribed through a limiting instruction. *See*, *e.g.*, *Fall v. Indiana Univ. Bd. of Trustees*, 33 F. Supp. 2d 729, 735-37 (N.D. Ind. 1998) (refusing to bifurcate on prejudice grounds because "the degree of potential prejudice associated with the [policy and practice]

11

evidence objected to [in this case] pales in comparison to the probative effect of the evidence

relating to the Berry plaintiff's sexual history and previous abortions").[6] The evidence in issue

here simply is not unfairly prejudicial and does not warrant bifurcation.

II.    **PLAINTIFF CAN PREVAIL ON HER *MONELL* CLAIMS AGAINST CHC AND THE SHERIFF WITHOUT ESTABLISHING LIABILITY OF AN INDIVIDUAL DEFENDANT, SO BIFURCATION WOULD BE A WASTE OF JUDICIAL RESOURCES AND PREJUDICIAL TO PLAINTIFF BECAUSE THERE WILL UNDOUBTEDLY  BE TWO TRIALS**

   A.    **A Trial on Plaintiff's *Monell* Claims Is Certain Regardless of the Outcome of a Trial on Plaintiff's Claims against the Individual Defendants**

Defendants ask this Court to ignore the holding of *Thomas*, which makes clear that

Plaintiff need not first succeed on her claims against an individual defendant in this case in order

to hold CHC or the Sheriff liable on a *Monell* theory. A verdict for Plaintiff on her *Monell* claims

would be entirely consistent with a verdict for the individual defendants on Plaintiff's other

constitutional claims. Judge Kendall's ruling in this regard—although not binding on this

Court—remains correct now that discovery is complete. As she held:

> It is possible that a jury will find in favor of the individual Defendants on Mrs. Awalt's other constitutional claims while finding against CHC or HPL on a *Monell* theory. . . . The Defendant Medical Care Providers in this case may be found liable for violating § 1983 by maintaining an unconstitutional policy or practice even if none of the individual Grundy County Defendants are found liable under § 1983. . . . This case presents a situation in which two such results [liability against corporation or municipality but no liability against individuals] would be entirely compatible. As the court noted in *Thomas*, a split verdict might result if a jury concluded that the individual officers were not deliberately indifferent to a prisoner's serious medical condition, but rather could not respond to his needs because of the policies in place at the jail. It is entirely plausible that CHC or HPL promulgated policies or customs that created unconstitutional conditions under *Monell.* At the same time it is equally plausible that no individual actor was deliberately indifferent to Mr. Awalt's serious medical needs. If a jury concluded that this was the case, it would result in an entirely consistent verdict—albeit a split one.

---

[6] For some reason, Defendants Cullinan and Clauson have attached 49 exhibits comprising thousands of pages to their motion for bifurcation. Clearly, Plaintiff does not intend to introduce every one of these pages or reference every incident mentioned in these documents at trial.

*Awalt*, 2014 WL 1161500, at *11.

In other words, the Defendants may be found liable for maintaining an unconstitutional policy or practice even if none of the individual defendants in the case is found liable under § 1983. *Thomas* explains that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." 604 F.3d at 305. Following *Thomas*, courts have stated repeatedly that "a plaintiff can succeed against a municipality under a *Monell* claim despite failing to prove that any particular individual defendant is liable for violating plaintiff's constitutional rights so long as the two results are compatible." *Martinez v. Cook County*, 2011 WL 4686438, at *1 (N.D. Ill. Oct. 4, 2011); *see also Cage v. City of Chicago*, 2010 WL 3613981, at *1 (N.D. Ill. Sept. 8, 2010); *Evans v. City of Chicago*, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010); *Pickett v. Dart*, 2014 WL 919673 (N.D. Ill. Mar. 10, 2014); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014).

As *Thomas* recognized, a jury in a medical-care case like this one might find that individual officers "were not deliberately indifferent to [a plaintiff's] medical needs, but simply could not respond adequately because of [policies in place]." 604 F.3d at 305. An individual's actions might not rise to the level of unconstitutional indifference to serious medical needs or there might be a failure of proof in that regard (though Plaintiff contends this is not such a case), but at the same time the corporations might have promulgated constitutionally problematic policies or customs that render them liable under *Monell*. *Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962, 974-75 (N.D. Ill. 2010). The County Defendants claim that "Plaintiff has not alleged that any 'policy' directly caused Mr. Awalt's death independent of the individual Defendants' own culpability." Dkt. 288 at 12. This is a misreading of *Thomas* and it is also not true, as set forth both in the reports of Plaintiff's experts Dr. Greifinger and Richard Bard, and in

13

Plaintiff's recent supplement setting out her *Monell* theories in detail. *See, e.g.,* Exhibit D (Greifinger report); Exhibit E (Bard report); Exhibit F (Plaintiff's Supplemental *Monell* Response to Defendants' Interrogatories).

A finding of municipal or corporate liability against the Sheriff or CHC is entirely possible even if individual responsibility amongst the defendant officers, Cullinan, and Clauson is too diffuse. This is especially true in a case, like this one, where all of the individuals claim they were not around to hear Awalt's cries for help. It is wholly possible that a jury might not find any one individual defendant responsible and instead might find that responsibility for Awalt's death was lies at the institutional level. In that case, a systemic breakdown as a result of the Sheriff's or CHC's policies or practices would be the moving force behind Awalt's death even if no single individual were responsible.

There are numerous *Thomas*-like theories under which a jury might find the entities responsible but not the individual defendants. For instance:

Defendant Clauson testified at her deposition that she did not order phenytoin for Awalt until September 17, 2010, and that "rush" order was not unpacked until September 20, 2010, after Awalt's death. *See* Exhibit D ¶ 131. CHC's policy is that Clauson could not reorder medications until she was down to eight pills, which was a two-day supply for Awalt. *Id.* Another inmate at the jail at the same time who had also been prescribed phenytoin did not receive her phenytoin on September 17-18, 2010 because there was no stock and a "rush order" was indicated on her MAR as well. *Id.* On these facts, it is entirely possible that a jury might find that Defendant Clauson's actions were not deliberately indifferent, but that she was unable to provide adequate care for Awalt due to CHC's policy because there was an insufficient supply of medications at the Jail. *See id.* ¶ 155. And, because CHC's policies on health care at the Jail were

14

ultimately approved by the Jail, a jury could find, in addition, that the Sheriff's Office was liable even if it did not find Clauson deliberately indifferent. *See Thomas*, 604 F.3d at 305.

A jury could also find the individual defendant corrections officers were not deliberately indifferent to Awalt's medical needs, but that they simply were not adequately trained to recognize and respond to seizure disorders as a result of the Sheriff or CHC's policies. For instance, detainee Raymond Woods testified that, on the day Awalt died, Defendant Officer Van Cleave said to Awalt, "stop faking seizures, that's not what they look like." Exhibit G (Woods Dep. at 113:24-115:15, 117:1-18, 127:2-16). Van Cleave testified that no one from CHC or HPL provided any health training to her, besides Nurse Clauson, and that neither Clauson nor anyone from CHC or HPL provided any training on seizures or recognizing the need for emergency care or chronic illnesses. Exhibit H (Van Cleave Dep. at 71:1-74:24). Furthermore, Superintendent White, one of the Sheriff's Rule 30(b)(6) witnesses, testified that he did not know of any policy at the Jail in 2010 that stated what a guard was supposed to do if an inmate had a seizure within sight of the guards. Exhibit I (White Dep. at 149:11-150:2). In fact, CHC's contract manager for the Jail, Synthia Peterson, removed health training for correctional officers from CHC's site-specific policies at the Jail; changes that would have been approved by the Jail. Exhibit J (Peterson Dep. at 182:22-183:14, 189:6-21); Exhibit D (Greifinger report) ¶ 149-52. A jury could find that Van Cleave simply did not have the training or knowledge to know what seizures looked like and how to respond to them. In that case, a verdict for the individual officers would not be inconsistent with a verdict against the Sheriff and/or CHC regarding its failure to train.

Clauson will also testify that she was not deliberately indifferent in failing to give Topamax because she referred to a nurse's drug reference guide before deciding not to give Awalt Topamax. A jury might find that this conduct was negligent but not deliberately

15

indifferent, but also find that the policy of the Sheriff or CHC was responsible because these entities had no policy or practice for weaning detainees off of medications or of treating seizures. *See* Exhibit I (White Dep. at 152:4-21); Exhibit J (Peterson Dep. at 367:4-7, 368:23-369:6).

A jury might also find that Awalt's death was caused by the Sheriff's policy of understaffing the Jail and not contracting for sufficient hours of medical care by Clauson or Cullinan. *See* Exhibit D ¶ 110; Exhibit J (Peterson Dep. at 100:14-20, 242:11-243:19, 273:2-274:12).

The defendants must explain how a verdict against CHC or the Sheriff's Office in the absence of individual liability would create inconsistent verdicts. They have not done so, because they cannot. *See Carter v. Dart*, 2011 WL 1466599, at *3 (N.D. Ill. Apr. 18, 2011) ("[T]he fact that Plaintiff's *Monell* claim and his claims against the individual Defendants share a common element . . . is not sufficient to justify bifurcation."); *Terry v. Cook County Dep't of Corrections*, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) (noting the "dearth of cases favoring bifurcation post-*Thomas*").

The cases cited by Defendants—*Kitchen v. Burge*, No. 10 CV 4093, *Taylor v. Kachiroubas*, 2013 WL 6060492 (N.D. Ill. Nov. 15, 2013), and *Veal v. Kachiroubas*, 20214 WL 321708 (N.D. Ill. Jan. 29, 2014)—are easily distinguishable. In those cases, the plaintiffs alleged that they were wrongfully convicted on the basis of false confessions physically coerced from them by police officers. In that kind of case, there was no theory by which the municipality's alleged failures caused injury to the plaintiff in the absence of violations by the individual defendants (or other employees of the municipality). Moreover, in those cases, there would be little additional economic inventive to proceed against the municipality on a *Monell* claim if the plaintiffs succeeded on the individual claims because the plaintiffs could not obtain punitive

16

damages against the governmental entities. Here, however, Plaintiff can obtain punitive damages against CHC. *Woodward v. Correctional Medical Servs. of Ill., Inc.*, 368 F.3d 917, 930 (7th Cir. 2004).

This last point can be put another way: if this trial were to be bifurcated, not only is it true that there would still be two trials if Defendants won on individual liability, it is also true that there would be two trials if Plaintiff won on individual liability. Even putting to the side that Plaintiff will seek punitive damages against CHC, there are other, non-economic reasons to pursue *Monell* claims in this case, and in turn, not to bifurcate. *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000), teaches that there are strong equities in favor of not bifurcating that have to do with the non-economic benefit of obtaining a judgment against an entity like the corporate defendants here for their own policies and practices rather than simply proceeding to judgment against an individual employee of a large corporation: "Deterrence of future misconduct is a proper object of our system of tort liability . . . . Depending on the size of the verdict and the size of the municipality . . . a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its polices and customs." One of the allegations in this case is that CHC and the Sheriff have promulgated polices and fostered practices in the Grundy County Jail that cause serious bodily harm and even death to detainees housed there. A judgment on that claim is different in kind—in terms of its deterrent effect and its propensity to cause real reform of prison conditions—than a judgment against an employee of CHC or the Jail. This is yet another reason to avoid bifurcating Plaintiff's *Monell* claims against the Defendants in this case.

17

B.   **Bifurcation Would Be Prejudicial to Plaintiff Because the Unavoidable Second Trial Would Require Duplicative Testimony and a Substantial Waste of Time and Resources**

As discussed above, it is impossible that bifurcating the *Monell* claims in this case would avoid a second trial. To bifurcate, then, would be a massive duplication of effort, a waste of judicial resources, and prejudicial to Plaintiff due to the delay and expense in pursuing all of her claims to resolution.

A second trial would require calling many of the same witnesses twice. *See Crawford v. City of Kansas*, 1997 WL 381758, at *1-*2 (D. Kan. June 11, 1997). The underlying factual scenario of what happened would have to be presented twice. This would include re-calling the parties, EMTs and hospital personnel, inmate witnesses and other third-party witnesses, the coroner, and competing experts on the cause of death and other medical issues. Indeed, for medical personnel alone, there are three EMTs and half a dozen treating doctors and nurses.[7]

As the Court has observed, much of the evidence pertaining to *Monell* is also relevant to individual liability issues. To determine whether a particular policy, procedure or act of a final policymaker caused death, there needs to be testimony about the cause of death. The witnesses in this category who would need to testify twice are the coroner, Dr. Denton (the pathologist), Dr. Filkins (Plaintiff's expert pathologist), Dr. Pedelty (Plaintiff's expert neurologist), Dr. Blum (Defendants' expert pathologist), and other defense experts. There are also four expert witnesses who will testify about policy and practice issues, and parts of their testimony will be relevant to individual liability and non-prejudicial. For instance, Dr. Greifinger may opine about the

---

[7] As another example, there are numerous third-party inmate witnesses Plaintiff may call who would need to appear twice to testify both about their observations of Robert Awalt, and their own experiences of inadequate medical care at the Jail. These witnesses include: Jeryl Daniels-Seward, Daniel Donaldson, Zachary Drummond, Todd Fitch, Matthew Haberkorn, Jeremie Porter, and Ray Woods.

inappropriateness of Cullinan and Clauson's actions regarding Awalt in addition to policy and practice issues associate with their care. *See* Exhibit D (Greifinger report) ¶¶ 128-29, 140, 142.

Furthermore, the five Rule 30(b)(6) witnesses for both CHC and the Sheriff's Office would need to testify twice as well—once about the operations of the jail and the procedures for providing medication and medical care to Awalt himself, and a second time on the policies and procedures relevant to the *Monell* claims. Indeed, some of the evidence on policies and procedures, customs, training, and discipline relevant to the *Monell* claims may also be relevant to the individual claims. For instance, evidence on officers' knowledge of policies and procedures may be relevant to punitive damages if they acted contrary to those policies and procedures. Plaintiff is entitled to use evidence of individual defendants' non-compliance with particular CHC and HPL polices to show, for example, that those individuals acted with deliberate indifference to Mr. Awalt's serious medical needs. Thus, the Defendants' policies become part of the case whether or not particular *Monell* claims are bifurcated.

For all of these reasons, bifurcation will necessarily require two trials, with substantial duplication and expenditure of resources. The prejudice to Plaintiff of such an approach is substantial. By contrast, there is minimal prejudice to Defendants from one trial because there is a very limited amount of evidence that is admissible only as to CHC and the Sheriff's Office (not but Cullinan or Clauson), and any prejudice can be mitigated through a carefully crafted limiting instruction.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests that this court deny the Defendants' motion to bifurcate Plaintiff's *Monell* claims at trial.

RESPECTFULLY SUBMITTED,

/s/ Elizabeth Wang

Arthur Loevy
Michael Kanovitz
Jon Loevy
Anand Swaminathan
Steven Art
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
(312) 243-5900

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
(720) 328-5642

20