**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ELIZABETH AWALT, as Administrator of
the Estate of Robert Awalt,

      Plaintiff,

  v.

RICK MARKETTI, as Administrator of the
Estate of Terry Marketti; KEVIN
CALLAHAN, in his official capacity as
Sheriff of Grundy County; DUANE
MCCOMAS, individually and in his
official capacity as Superintendent of
Grundy County Jail; MELANIE VAN
CLEAVE; PATRICK SEALOCK; MATTHEW
WALKER; KIM LEAR; ROGER THORSON;
ROBERT MATTESON; DAVID OBROCHTA;
COUNTY OF GRUNDY; CORRECTIONAL
HEALTH COMPANIES, INC.; HEALTH
PROFESSIONALS, LTD.; DR. STEPHEN
CULLINAN; MARJORIE CLAUSON;
unknown employees of Correctional
Healthcare Companies, Inc. and Health
Professionals, LTD; unknown Grundy
County Correctional Officers; unknown
Medical Personnel,

      Defendants.

No. 11 C 6142

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Elizabeth Awalt ("Plaintiff"), as administrator for the estate of her husband Robert Awalt ("Awalt"), alleges that Grundy County and the Grundy County Sheriff's Office, directly and doing business through its prison medical services providers Correctional Health Companies, Inc. ("CHC"), and Health Professional,

Ltd. ("HPL"), caused Awalt's death by being deliberately indifferent to his medical needs while he was in custody at the Grundy County Jail (the "Jail"). R. 120. Plaintiff also alleges that former Grundy County Sheriff, Terry Marketti ("Sheriff Marketti"), Duane McComas, individually and in his official capacity as Superintendent of Grundy County Jail, and correctional officers Melanie Van Cleave, Patrick Sealock, Matthew Walker, Kim Lear, Roger Thorson, Robert Matteson, David Obrochta (the "Correctional Officers"), along with CHC employees Dr. Stephen Cullinan and Nurse Marjorie Clauson, are liable for Awalt's death. *Id.* Grundy County, the Sheriff's Office, Sheriff Kevin Callhan, Rick Marketti (as administrator for Sheriff Marketti's estate), Superintendent McComas, and the Correctional Officers (collectively, the "County Defendants"), moved to bifurcate trial of the claims against the individual defendants Superintendent McComas and the Correctional Officers from the trial of the claims under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), against the Sheriff's Office and the County. R. 288. CHC, HPL, Dr. Cullinan, and Nurse Clauson (collectively, the "Medical Defendants"), also moved to bifurcate trial of the claims against the individual defendants Dr. Cullinan and Nurse Clauson from the trial of the *Monell* claims against CHC and HPL. R. 290. Plaintiff opposed these motions. R. 306. The Court granted these motions by oral ruling on November 25, 2014. R. 416; R. 418. This memorandum opinion and order supplements the reasons for granting the motions the Court stated on the record on November 25.[1]

---

[1] The Court previously described in detail the facts relevant to this case in denying

2

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Bifurcation of trial of certain issues or claims is appropriate "where the efficiency of a consolidated trial is outweighed by its potential prejudice to the litigants." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). The decision to bifurcate trial of any issues or claims is within the Court's discretion. *Id.*[2]

Plaintiff has proffered a large amount of evidence relating to the liability of the County, the Sheriff's Office, CHC, and HPL (the "Entity Defendants"). This evidence largely relates to the medical care provided to detainees at the Jail prior to and during the time Awalt was detained there. Plaintiff intends to use this evidence to show that the Entity Defendants' policies and practices regarding medical care were deficient and caused Awalt's death. Much of this evidence, however, also directly implicates the past actions of Dr. Cullinan and Nurse Clauson because they were the only two medical professionals providing care at the Jail for most, if not

---

in part and granting in part Defendants' motions for summary judgment, *see* R. 412 (*Awalt v. Marketti*, 2014 WL 6686498 (N.D. Ill. Nov. 24, 2014)), and the Court assumes familiarity with those facts for purposes of this memorandum opinion and order.

[2] Plaintiff notes that in an earlier decision in this case, the Court (Kendall, J.) stated that the "weight of authority holds that bifurcation is now heavily disfavored." *Awalt v. Marketti*, 2012 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012). Of course, at that point in the case the question was whether discovery should be bifurcated, not whether a trial should be bifurcated. And the cases the Court cited to support the statement that "bifurcation is now heavily disfavored," were all cases deciding whether discovery should be bifurcated. That broader issue of case management during discovery is not relevant to the specific issue of potential evidentiary prejudice during trial before the Court on these motions.

all, of the relevant time period. The salient issue as to Defendants' motions to bifurcate the trial is whether the unfair prejudice to Dr. Cullinan and Nurse Clauson posed by this evidence outweighs the efficiency of a consolidated trial.

Plaintiff does not argue that Dr. Cullinan and Nurse Clauson face no prejudice from the evidence of the Entity Defendants' policies and practices. This is not surprising considering the sheer amount of evidence Plaintiff intends to introduce against the Entity Defendants that also implicates Dr. Cullinan and Nurse Clauson. There are at least 13 former detainees who would testify that they received insufficient medical care at the Jail while under the care of Dr. Cullinan and Nurse Clauson. Additionally, Plaintiff's expert, Dr. Greifinger, would testify that the Entity Defendants provided deficient medical care to at least six detainees other than Awalt in the three months leading up to and including Awalt's period of detention, during which time Dr. Cullinan and Nurse Clauson were the only medical professionals working at the Jail. Plaintiff potentially intends to introduce numerous grievance and medical request forms submitted by detainees at the Jail that reference Dr. Cullinan and Nurse Clauson. Considering the extent of this evidence, the prejudice to Dr. Cullinan and Nurse Clauson is undeniable. Although bifurcation will clearly require several witnesses to testify twice, this inefficiency pales in comparison to the risk of unfair prejudice to Dr. Cullinan and Nurse Clauson posed by the sheer magnitude of evidence about their past actions that is relevant to the liability of the Entity Defendants.

Notably, courts in this District that have permitted claims brought pursuant to Section 1983 against both individuals and entities to proceed in the same trial did so when the evidence against the entities concerned the actions of non-party individuals and did not directly implicate the individuals on trial. *See Giles v. Ludwig*, 2013 WL 6512683, at *2 (N.D. Ill. Dec. 6, 2013) (citing cases). Yet, even when the evidence against the entity does not directly implicate the individuals on trial, some courts in this District still bifurcate trial of the claims against the individual and the entity because the "evidence . . . regarding [an] [entity]-wide policy, practice or custom involving multiple improper [individual] actions poses a danger of undue prejudice to the [individuals] by creating the perception that the [entity] routinely acts improperly, even if the [individuals] acted properly in this case." *Veal v. Kachiroubas*, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014); *see also Tanner v. City of Waukegan*, 2011 WL 686867, at *10 (N.D. Ill. Feb. 16, 2011) ("If admitted as part of his case against the City, such evidence could prejudice the individual defendants' ability to distinguish their own actions from those of other non-party officers."). Here, where there is a great magnitude of evidence against the Entity Defendants that directly implicates the individual defendants, the risk of unfair prejudice is great and bifurcation is appropriate.

Plaintiff argues, however, that "the potential for prejudice does not favor bifurcation because this evidence will necessarily be introduced in a trial against the individual defendants anyway" under Federal Rule of Evidence 404(b)(2). R. 306 at 1. "Rule 404(b) excludes relevant evidence of other crimes, wrongs, or acts if the

5

purpose is to show a person's propensity to behave in a certain way, but other-act evidence may be admitted for 'another purpose' including, but not limited to, 'proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014) (quoting Fed. R. Evid. 404(b)). It is not enough, however, "for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. Rather, the proponent must be able to identify a "chain of reasoning that supports the non-propensity purpose for admitting the evidence." *Id.* "Finally, even if other-act evidence is relevant without relying on a propensity inference, it may be excluded under Rule 403, which . . . gives the district court discretion to exclude relevant evidence if its probative value is 'substantially outweighed by a danger of . . . unfair prejudice.'" *Id.* at 856-57 (quoting Fed. R. Evid. 403).

Here, Plaintiff has identified a number of *hypothetical* "chains of reasoning" to justify admission of the other-act evidence for non-propensity purposes against Dr. Cullinan and Nurse Clauson under Rule 404(b). The chains are hypothetical because Plaintiff admits that "the need to introduce those particular purposes will depend on the particular defenses Cullinan and Clauson raise at trial." R. 306 at 6; *see also id.* at 6 ("Cullinan may well raise the defense . . . ."); *id.* at 7 ("if Cullinan claims . . . the prior instances of his misconduct would be admissible . . . ."); *id.* ("Cullinan may raise the defense . . . . In that case, past instances of misconduct . . . would be admissible under Rule 404(b) . . . ."); *id.* ("Cullinan is expected to claim . . .

6

."); *id.* at 8 ("Clausen may argue . . . ."). Thus, contrary to Plaintiff's contention that the evidence against the Entity Defendants will "necessarily" be admissible under Rule 404(b) against Dr. Cullinan and Nurse Clauson, Plaintiff also admits that the admissibility of the evidence is dependent upon Dr. Cullinan and Nurse Clauson's testimony at trial. On Plaintiff's own terms, the question of whether the evidence against the Entity Defendants is admissible under Rule 404(b) is not ripe for decision.

In addition to the open question of whether Plaintiff will be able to establish a "chain of reasoning" sufficient to satisfy Rule 404(b) during trial, the Court cannot undertake the individualized analysis of whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice in a pre-trial vacuum. As already noted, the sheer amount of evidence at issue makes the risk of unfair prejudice very great. Without hearing the actual testimony of Dr. Cullinan and Nurse Clauson at trial, the Court cannot precisely determine the probative value of the evidence at issue. And as discussed, Plaintiff has admitted that the probative value is uncertain at this point. If circumstances were different, the probative value was more certain, and the risk of prejudice was not so great, the Court might have been able to make a ruling under Rule 404(b) prior to the trial such that bifurcation could have been avoided. Here, because the risk of unfair prejudice is great and the probative value of the evidence is uncertain, the Court finds that the trial must be bifurcated to avoid an undue risk of unfair prejudice.

For similar reasons, the Court concludes that limiting instructions would fail to cure any unfair prejudice to Dr. Cullinan and Nurse Clauson under these circumstances. The fact that the care Dr. Cullinan and Nurse Clauson provided to detainees at the Jail is implicated by much, if not all, of the *Monell* evidence, would make it difficult, if not impossible, for the jury to avoid drawing propensity inferences regardless of any instruction. *See generally Gomez*, 712 F.3d at 1162-63 (Hamilton, J., dissenting in part). Bifurcation of the trial is necessary to avoid this risk.

This does not mean that Plaintiff is barred from seeking to have evidence admitted under Rule 404(b) during the trial of the individual defendants. Plaintiff simply has to make the appropriate showing under *Gomez*. Such a showing requires Plaintiff to describe the evidence she intends to offer in detail, rather than in the broad categories that Plaintiff has provided to the Court so far.[3]

Lastly, the parties argue over whether *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010), counsels in favor of bifurcation. Defendants contend that, unlike the circumstances in *Thomas*, it is not possible for a jury to find any of the Entity Defendants liable absent individual liability, and therefore, the trial

---

[3] To the extent that any of the individual County Defendants (i.e., Superintendent McComas or any of the Correctional Officers) were responsible for any of the medical care provided to detainees prior to Awalt's period of detention, the County Defendants have not argued that unfair prejudice to the individual County Defendants would result from this evidence being presented during their trial. Nevertheless, trial of the individual County Defendants will be bifurcated from trial of the *Monell* claims against the County and the Sheriff's Office, because the *Monell* evidence against the CHC and HPL may also be relevant against the County and the Sheriff's Office. Efficiency counsels in favor of having this evidence presented against all Entity Defendants at the same time in the second phase of the trial.

8

should be bifurcated because a trial of the Entity Defendants may not be necessary. Plaintiff, however, has described a number of scenarios in which one or more of the Entity Defendants could be found liable even absent a finding of individual liability. *See* R. 306 at 14-17. The Court finds these scenarios reasonable enough such that the possibility of *Monell* liability will not be foreclosed if the jury finds there is no individual liability. And *Thomas* is not relevant to whether the probity of certain evidence outweighs any unfair prejudice, which is the salient issue on these motions.

**Conclusion**

For the foregoing reasons, the County Defendants' motion to bifurcate trial, R. 288, and the Medical Defendants' motion to bifurcate trial, R. 290, are granted. Despite the need to bifurcate the trial for the reasons stated, the same jury will hear both the evidence against the individual defendants and the Entity Defendants. The individual defendants will be tried first, and after the jury has returned verdicts as to the individual defendants, the same jury will then hear the additional evidence necessary to try the Entity Defendants. This procedure will reduce the need to duplicate presentation of evidence to the jury, and avoid the time and resources necessary to pick a second jury. The Court anticipates that presentation of the evidence against the Entity Defendants in the second trial will be more efficient and tailored given the fact that the jury will be already well acquainted with the overall facts of the case from the first trial. The jury will simply be told there are two phases to the trial. The parties should suggest a jury

instruction that explains this procedure and prevents the jury from speculating that any particular verdict in the first trial might eliminate the need for a second trial.

ENTERED

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 8, 2014