10209-T1169
SGS/cml

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH AWALT, as Administrator of the ESTATE OF ROBERT AWALT, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Law No.: 11 CV 6142 |
| RICK MARKETTI, as Administrator of the Estate of TERRY MARKETTI, *et al.*, | ) ) ) ) |
| Defendants. | ) |

## STEPHEN CULLINAN, M.D.'S
## MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COMES Defendant, STEPHEN CULLINAN, M.D., by and through his attorneys, HEYL, ROYSTER, VOELKER & ALLEN, and for his Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a), states as follows:

1. Fed. R. Civ. P. 50(a) requires the Court to resolve an issue against a party when that party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The Court is to grant a motion for judgment as a matter of law against the party on a claim that can be maintained only with a favorable finding on the issue lacking a sufficient basis. *Id*. In other words, judgment as a matter of law is appropriate if the Court finds that "no rational jury could have found for the plaintiff." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 948 (7th Cir. 1998). Such a motion may be made at any time before the case is submitted to the jury, and should detail the judgment sought, as well as the law and facts that entitle the moving party to the judgment. Fed. R. Civ. P. 50(a)(2).

1

2. Plaintiff alleges that Dr. Cullinan failed to 1) "intervene in order to prevent the denial of care" to Robert Awalt ("Decedent"); 2) "supervise other individuals who failed to provide care" to Decedent; and 3) provide care to Decedent. *See* Second Amended Complaint.

3. Based on the evidence that Plaintiff presented to the jury in the instant matter, the Court should grant this Motion for Judgment as a Matter of Law as to all of the aforementioned allegations.

## FAILURE TO INTERVENE

4. Plaintiff alleges that Decedent was denied medical attention, and that although Dr. Cullinan had a realistic opportunity to prevent harm from occurring to Decedent, Dr. Cullinan "failed to take reasonable steps" to prevent said harm. *Id*.

5. Plaintiff's theory of liability is based on the so-called "standby officer" instruction. *See Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477-78 (7th Cir. 1997). However, Plaintiff's claim fails as a matter of both law and proof. The failure to intervene and not been extended to jail medical providers, and Plaintiff has not submitted evidence from which any reasonable juror could find that Dr. Cullinan both knew that Decedent was having seizures in jail or not receiving his medication.

6. In *Byrd v. Brishke*, the "seminal" failure to intervene case in the Seventh Circuit, the Court examined a case involving police officers who found the plaintiff in an injured condition at a local tavern. *Id*. at 7-9; *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The police officer defendants beat the plaintiff with "blackjacks, nightsticks, fists, feet and clubs" and then placed him under arrest. *Brishke*, 466 F.2d at 7-9. In holding that there is a duty to intervene imposed upon police officers, the Seventh Circuit wrote "[w]e believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by

his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Id*. at 11.

7.  Liability is imposed upon a police officer who is present and fails to intervene to prevent "other law enforcement officers from infringing the constitutional rights of a citizen under § 1983" when a plaintiff proves that the police officer had reason to know "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang*, 37 F.3d at 285 (emphasis in the original). The duty to intervene is imposed upon not only a supervisory police officer, but also those nonsupervisory police officers who are present at the scene of such summary punishment." *Brishke*, 466 F.2d at 11. The Seventh Circuit Court of Appeals opined that such a duty to intervene grows from a police officer's "duty to enforce the laws and preserve the peace." *Id*.

8.  A query of relevant case law, including cases cited by Plaintiff in her response to Dr. Cullinan's objections to Plaintiff's Proposed Jury Instruction No. 26, reveals no instance in which the Seventh Circuit has extended the doctrine of failure to intervene beyond law enforcement officers. *See, e.g.*, *Windle v. City of Marion*, 321 F.3d 658, 661 (7th Cir. 2003) (explaining that the case is based on a 1997 incident in which police officers wrongfully intercepted cellular phone conversations between lovers); *Yang*, 37 F.3d at 283 (examining a case of mistreatment at the hands of two Chicago police officers who were later convicted of felonies for the incident); *Brishke*, 466 F.2d at 11 (in which a plaintiff was beaten by police officers); *Montano v. City of Chi.*, 535 F.3d 558, 561 (7th Cir. 2008) (where Chicago police officers "forcibly arrested and jailed" plaintiffs in what was alleged to be "flagrant mistreatment"); *Lanigan*, 110 F.3d at 478 (where a chief of police was accused of failure to

intervene during a "poke and push"). In fact, no case law was found in which an allegation of a failure to intervene was successful against any individuals other than police officers, chiefs of police, wardens or deputy wardens. Moreover, Plaintiff failed to prove the same, as explained below. As such, the Court should grant Dr. Cullinan's Motion for Judgment as a Matter of Law as to Plaintiff's failure to intervene claim.

9. Even if the Court decides to extend the doctrine of failure to intervene beyond law enforcement defendants and excessive force, Plaintiff has nonetheless failed to present adequate evidence of a failure to intervene on the part of Dr. Cullinan such that a rational jury could find for Plaintiff. As detailed above, such an allegation requires that Plaintiff prove that Dr. Cullinan had reason to know "that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang*, 37 F.3d at 285 (emphasis in the original). Based on the evidence presented to the jury, there is no indication that Dr. Cullinan was aware of any violation of Decedent's constitutional rights on the part of law enforcement officials.

10. Plaintiff has not presented any evidence that Correctional Officer Van Cleave or anyone else at Grundy County Jail told Dr. Cullinan that Decedent suffered any seizures in custody or had not been receiving the medication that Dr. Cullinan prescribed. Had they done so, Dr. Cullinan testified without equivocation that he would ordered the inmate "sent out of the facility" to the emergency room. Even if he had been so aware, Plaintiff has nonetheless failed to show that Dr. Cullinan had a realistic opportunity to prevent said harm. The Court should therefore grant this motion as to Plaintiff's allegation of failure to intervene.

## FAILURE TO SUPERVISE

11. Plaintiff alleges that a person who Dr. Cullinan supervised failed to provide or secure appropriate medical attention to Decedent. *See* Second Amended Complaint. Further,

Plaintiff alleges that Dr. Cullinan either knew Decedent was not receiving appropriate care, or knew that someone he supervised had a practice of "failing to provide or secure appropriate medical attention for detainees." *Id*. Plaintiff must prove that Dr. Cullinan "approved, assisted, condoned, or purposely ignored" failure by those he supervised to provide appropriate medical attention, and that Decedent was injured as a result. *Id*.

12. "Supervisory liability will be found… if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it…. [T]o be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct." *Lanigan*, 110 F.3d at 477. Further, an individual cannot be held liable for a § 1983 action "unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Songuist*, 699 F.2d 864, 869 (7th Cir. 1983). Since ruling in *Lanigan*, the Seventh Circuit Court of Appeals has clarified the meaning of personal involvement. *Id*. at 477. Though omissions may also violate civil rights, "supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable…." *Yang*, 37 F.3d at 285; *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Additionally, the Court held that "gross negligence is also not enough to impose supervisory liability." *Lanigan*, 110 F.3d at 477. Instead, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones*, 856 F.2d at 992-93.

13. Here too, a review of relevant case law, including cases cited by Plaintiff, does not reveal Seventh Circuit cases in which a failure to supervise is applied to non-law enforcement officials. *See, e.g.*, *Backes v. Vill. of Peoria*, 662 F.3d 866, 869 (7th Cir. 2011) (applying the doctrine where the Central Illinois Emergency Response Team forcibly removed a suspect from a car utilizing spike strips, pepper balls, and physical contact); *Sanville v.*

*McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001) (applying the doctrine where wardens were accused of failing to adopt adequate suicide prevention policies); *Fillmore v. Page*, 358 F.3d 496, 500 (7th Cir. 2004); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (an opinion based on a plaintiff's allegation against a police trainer); *Jones*, 856 F.2d at 993 (in which the Seventh Circuit Court of Appeals examined actions of police officers and their use of "deceitful reports"); *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001-02 (7th Cir. 2003). In these cases, only law enforcement officers, chiefs of police, deputy wardens and wardens are the only individuals against which a failure to supervise was successful. In fact, in the one case where a failure to supervise claim was brought against medical professionals, the Northern District failed to find the doctrine to be applicable. *Harris v. Ghosh*, 2012 U.S. Dist. 128209, * 19 (N.D. Ill. 2012). Even setting aside the fact that a failure to supervise has not been extended to medical professionals, Plaintiff nonetheless failed to present competent evidence of this to the jury. As such, the Court should grant Dr. Cullinan's Motion for Judgment as a Matter of Law as to Plaintiff's failure to supervise claim.

14. The Northern District of Illinois has also demonstrated its discomfort with contentions that an allegation of a failure to supervise can take the place of, or is akin to, the doctrine of *respondeat superior*. In *Harris v. Ghosh*, the Court held that a medical defendant's alleged failure to supervise medical technicians "is not by itself a basis for liability" because "agency principles of *respondeat superior* and vicarious liability do not apply to § 1983 claims." *Id*. Courts in the Seventh Circuit have not extended causes of action for a failure to supervise away from the arena of excessive force by law enforcement because failure to supervise functions much like the doctrine of *respondeat superior*, a doctrine that expressly has no place in § 1983 claims.

15. Even if the Court decides to extend the failure to supervise doctrine into the uncharted territory of non-law enforcement actions, the evidence presented by Plaintiff nonetheless fails to reach the standards set by the Seventh Circuit – namely that the jury must find that Dr. Cullinan caused or was personally involved in a constitutional deprivation. Again, even gross negligence is sufficient, and Plaintiff instead must attain the high bar of proving that Dr. Cullinan acted either knowingly or with deliberate, reckless indifference. No competent evidence was presented in Plaintiff's case in chief. Nowhere did Plaintiff present evidence that Dr. Cullinan had information relating to the facts alleged, nor did she prove that he was deliberately or recklessly indifferent towards the medical needs of Plaintiff. No Witness, nor any physical evidence, demonstrated that any information collected by jail guards relating to Decedent's ongoing seizures was provided to Dr. Cullinan. As a result, the Court should grant this motion as to Plaintiff's allegation of a failure to supervise on the part of Dr. Cullinan.

## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

16. Plaintiff alleges that Dr. Cullinan was deliberately indifferent to Decedent's medical need, and that Decedent was harmed as a result. *See* Second Amended Complaint.

17. The standard for "deliberate indifference to serious medical needs… contains both an objective element and a subjective element. The former requires that the deprivation suffered by the prisoner be 'objectively, sufficiently serious.' In the medical care context, the objective element requires that the inmate's medical need be sufficiently serious. The subjective element requires that the officials act with a 'sufficiently culpable state of mind.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). Continuing, the United States Supreme Court opine that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994).

18. Plaintiff has failed to meet such a standard. Instead, the jury has seen no evidence that Dr. Cullinan knew of and disregarded excessive risk to Decedent's health or safety. He was not made aware of facts from which such an inference about Decedent could be made, and he consequently could not have made such an inference. As such, the Court should enter a judgment as a matter of law as to Plaintiff's deliberate indifference claim.

## STANDARD OF CARE

19. Dr. Pedelty testified that Decedent should have reached a therapeutic level of Dilantin if he received it as prescribed. According to Dr. Pedelty, Dr. Cullinan allegedly breached the standard of care by failing to obtain a complete medical history of Decedent on September 15, 2010. That alleged breach, she admitted, did not and could not have caused Decedent's death from any failure to provide medical care.

20. Causation is an essential element of Plaintiff's § 1983 claims. Dr. Pedelty understandably did not, and could not, criticize the ultimate treatment prescribed by Dr. Cullinan, a doctor with decades of experience in correctional facilities. Both her and Dr. Filkins' expert admissions are fatal to Plaintiff's case – namely that under the loading dose and daily regimen of Dilantin prescribed, Decedent would have reached a "steady state" and a therapeutic level of Dilantin by Sunday, September 19, 2010 if he arrived with no Dilantin in his system. Dr. Cullinan's treatment simply could not have caused Decedent's death, regardless of whether it

10209-T1169
SGS/cml

was due to the guards' failing to administer Dilantin to Decedent (contrary to their representations on his MAR) or suicide.

21. Absent any evidence that anyone reported active seizures to Dr. Cullinan or that Decedent was not receiving Dilantin as prescribed, Dr. Cullinan is entitled to judgment as a matter of law. Any other result is inconsistent with the Court's ruling that evidence of Decedent's pre-arrest medical history is irrelevant. There is simply no evidence that such information would have required a different course of treatment, the prescription of Dilantin. In contrast, if the medical history would have required some unspecified difference in the course of treatment, then the preclusion of such evidence from the jury was unduly prejudicial and unfair.

WHEREFORE, Defendant, STEPHEN CULLINAN, M.D., respectfully requests that this Court grant his Motion for Judgment as a Matter of Law.

STEPHEN CULLINAN, M.D.

BY: _/ s / Scott G. Salemi_
HEYL, ROYSTER, VOELKER & ALLEN
Scott G. Salemi
ARDC #: 6209932

10209-T1169
SGS/cml

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon all attorneys to the above cause via the CM/ECF System on the 8th day of August, 2015.

TO:

*Attorneys for Plaintiff*
Arthur R. Loevy – loevylaw@loevy.com
Jonathan I. Loevy – jon@loevy.com
Steven Edwards Art - steve@loevy.com
Elizabeth Wang – elizabethw@loevy.com
Julie M. Thompson – julie@loevy.com
Cindy Tsai - cindy@loevy.com
Anand Swaminathan – anand@loevy.com
Michael Kanovitz – mike@loevy.com
Sarah Copeland Grady – sarah@loevy.com
Thomas Kayes – kayes.thomas@gmail.com
Loevy & Loevy
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900

                                          */ s / Scott G. Salemi*
                                            Scott G. Salemi

HEYL, ROYSTER, VOELKER & ALLEN
Second Floor, PNC Bank Building
120 West State Street
P.O. Box 1288
Rockford, Illinois 61105 1288
T: 815.963.4454 / F: 815.963.0399