IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH AWALT, as Administrator of the Estate of ROBERT AWALT, <br><br> Plaintiff, <br><br> v. <br><br> CORRECTIONAL HEALTHCARE COMPANIES, INC., HEALTH PROESSIONALS, LTD., STEPHEN CULLINAN, and MARJORIE CLAUSEN, <br><br> Defendants. | No. 11 C 06142 <br><br> Hon. Thomas M. Durkin, District Judge <br><br> JURY TRIAL DEMANDED |

**MOTION TO DETERMINE DEFENDANT CULLINAN'S FINAL
POLICYMAKING AUTHORITY FOR CORRECTIONAL
<u>HEALTHCARE COMPANIES, INC. AND HEALTH PROFESSIONALS, LTD.</u>**

Plaintiff ELIZABETH AWALT, as Administrator of the ESTATE OF ROBERT AWALT, by her attorneys, LOEVY & LOEVY, respectfully submits this motion for a judicial determination that Defendant Stephen Cullinan is a final policymaker for Correctional Healthcare Companies, Inc. ("CHC"), and Health Professionals, Ltd. ("HPL"), with respect to clinical issues and medical care of detainees at the Grundy County Jail. In support, Plaintiff states as follows:

**I.     AUTHORITY RELEVANT TO IDENTIFICATION OF POLICYMAKERS**

    **A.     The Court and Not the Jury Must Determine Policymakers Before the Jury
              Is Instructed at the Conclusion of the *Monell* Case**

*Jett v. Dallas Independent School District* holds that the Court—not the jury—must determine where final policymaking authority lies "*before* the case is submitted to the jury." 491 U.S. 701, 737 (1989) ("As with other questions of state law relevant to the application of federal

law, the identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury.") (emphasis in original); *see also St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 & n.1 (1988). Following this instruction, the Seventh Circuit has said in no uncertain terms that district courts should "not . . . let the policymaker question go to the jury." *McGee v. Bauer*, 956 F.2d 730, 733 (7th Cir. 1992); *see also Eversole v. Steele*, 59 F.3d 710, 715 n.5 (7th Cir. 1995) (jury should not have input into the questions about who plays final policymaking role); *Milligan-Hitt v. Board of Trustees of Sheridan County School Dist. No. 2*, 523 F.3d 1219, 1224 (10th Cir. 2008) ("[J]ury instructions regarding policymaking authority are inappropriate because the judge, not the jury, identifies those officials whose wrongs can create municipal liability.") (internal quotations and alternations omitted); *Rojas v. Town of Cicero*, 2011 WL 2463316, at *4 (N.D. Ill. June 21, 2011) (Holderman, J.) (quoting *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989), for the proposition that "[a]though identification of the policymaker may often involve fact-sensitive inquires, the Supreme Court has determined as a matter of policy that courts, and not juries, are to make this decision"); *Johnson v. Cook County*, 2012 WL 2905485, at *19 (N.D. Ill. July 16, 2012) (Feinerman, J.) (same). The Seventh Circuit has applied the same rule in an unpublished decision to the determination of whether policymaking authority has been delegated. *Hunt v. Chicago Housing Authority*, 972 F.2d 351 (1992) (unpublished).

While *Kujawski v. Board of Commissioners of Bartholomew County*, 183 F. 3d 734, 739-40 (7th Cir. 1999), reversed a grant of summary judgment to a municipality because the facts presented to the district court in the summary judgment record suggested that the municipality had delegated its policymaking authority, it did not overrule the Supreme Court's command that judges and not juries make this determination. In fact, the Seventh Circuit a decade later cited

*Kujawski* for the proposition that "[t]he determination of whether a person has policymaking authority . . . is to be decided by the court." *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675-76 (7th Cir. 2009) (citing *Jett* and *Kujawski*).

A summary judgment record might not provide a district judge with the facts necessary to make the ultimate decision about final policymaking authority, but that does not mean that the question is one for a jury. *See Smith v. Wilson*, 2011 WL 1704269, at *1 (W.D. Wis. Apr. 27, 2011) (noting that the summary judgment record did not allow the judge to make a determination about final policymakers but evidence in the trial did permit that determination). There is no case after *Jett* that holds that a jury should determine the final policymaker. To ask the jury to do so would be error. *McGee*, 956 F.2d at 733 (stating that "[t]he district court . . . should not have let the policymaker question go to the jury").

The timing of the Court's decision is a different question. There is almost no discussion in the case law about the latest time at which the policymaker decision can be made. While Plaintiff submits that the decision with respect to Defendant Cullinan's authority certainly could be made by the Court at this point (based on the record described below), the Supreme Court's discussion of submitting the case to the jury most naturally suggests that this Court can, at latest, make the decision before instructing the jury at the conclusion of the case. *Accord Wallace v. Powell*, 2012 WL 2590150, at *16 (M.D. Pa. July 3, 2012) (concluding that the court would wait until evidence was submitted at trial to make the final determination of policymakers); *Hardy v. Town of Greenwich*, 2009 WL 2176117, at *2 (D. Conn. July 22, 2009) ("The identity of the final policymaker is a question of law to be determined by this Court prior to charging the jury."). Accordingly, time remains for the Court to review evidence submitted by the parties on the question of final policymaking authority.

B.     Law Governing the Court's Determination of Final Policymakers

When the Court takes up the analysis, the following principles will apply. "Reviewing the relevant legal materials, including state and local positive law, as well as 'custom or usage' having the force of law, . . . the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett*, 491 US at 737. In *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009), the Seventh Circuit said that "helpful in determining whether an official is a final decisionmaker is an inquiry into: (1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority."

"Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). There are two approaches for determining whether an actor makes policy:

> One equates "policy" with the legislative power of a jurisdiction. The holder of the ultimate power to establish rules of general applicability is the "policymaker." . . . The opposing approach equates "policy" with the ability to take final action in the name of the jurisdiction—that is, the executive power.

*Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992).

The Seventh Circuit's most recent substantive discussion of the issue in *Vodak v. City of Chicago* reiterates that "[i]t doesn't matter what *form* the action of the responsible authority that injures the plaintiff takes. It might be an ordinance, a regulation, an executive policy, or an executive act . . . . The question is whether the promulgator, or the actor, as the case may be—in other words, the decisionmaker—was at the apex of authority for the action in question." 639

F.3d 738, 748 (7th Cir. 2011) (quoting *Gernetzke v. Kenosha Unified School Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001)). "The qualification 'for the action is question' is vital. . . . [O]ne can be an official policymaker in one domain but not in another." *Vodak*, 639 F.3d at 748 (noting that the superintendent was the final policymaker for the City of Chicago during a demonstration and subsequent arrests where his authority was effectively unconstrained, despite oversight and ordinances that constrained his authority in other areas); *see also McMillian v. Monroe County*, 520 U.S. 781, 785 (1997) ("[O]ur cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue").

There are few published decisions about final policymakers in the context of a *Monell* claim against a corporate defendant. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 824 (7th Cir. 2009) (noting that when it comes to nongovernmental health care providers serving as state actors, the lower courts "still remain, to some degree, in uncharted waters"). But what emerges from the case law is that the principles that have developed for municipal corporations should apply equally to private corporations. As the Fourth Circuit wrote in *Austin v. Paramount Parks, Inc.*:

> The foregoing principles of § 1983 "policymaker" liability were articulated in the context of suits brought against municipalities and other local government defendants. Nevertheless, these principles are equally applicable to a private corporation acting under color of state law when an employee exercise final policymaking authority concerning an action that allegedly causes a deprivation of federal rights.

195 F.3d 715 (4th Cir. 1999).

The Seventh Circuit routinely analyzes *Monell* claims against private corporations by analogy to its case law on *Monell* claims against municipal corporations. *See*, *e.g.*, *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) (saying in the context of a *Monell* claim against a private corporation, "A policy may be found if the constitutional injury was caused by a person

with final policymaking authority") (internal citations and quotation marks omitted); *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 n.1 (7th Cir. 2004) (holding that a corporation acting under color of state law "is treated the same as a municipality for purposes of § 1983"); *Jackson v. City of Chicago*, 2001 WL 1286804, at *9 (N.D. Ill. Oct. 23, 2001) ("The test to determine whether a private corporation acting under the color of state law violated a plaintiff's constitutional rights is the same test applied to municipal corporations.").

Accordingly, to identify the employees of CHC and HPL with final policymaking authority, this court must determine whether the employee in question is constrained by policies, or acts with meaningful oversight from a superior, or has the authority to make policy decisions, with respect to the particular subject area at issue.

## II.     DEFENDANT CULLINAN IS A FINAL POLICYMAKER FOR CHC AND HPL

Consistent with the principles outlined above, a corporate employee may be a final policymaking authority when exercising either express or *de facto* authority in a particular area. In other words, final policymaking authority lies not only with the person that a corporation expressly imbues with authority but also with those who in fact exercise the authority based on the corporation's actual means of operating. *Proprotnik*, 485 U.S. at 126 ("[T]here will be cases in which policymaking responsibility is shared among more than one official or body.").

Both express policies and the actual operations at CHC and HPL point to Defendant Cullinan as a person with final policymaking authority.

The written policies of CHC and HPL, implemented at the Grundy County Jail, unambiguously delineate the areas in which Defendant Cullinan had final authority at the Grundy County Jail. During his first trial testimony, Defendant Cullinan made clear that he was the responsible physician for the Grundy County Jail, within the meaning of those written

policies. Exhibit A (Trial Transcript, Aug. 8, 2015) at 111:10-12. The policies define "responsible physician" as "a designated M.D. or D.O. who has the *final authority at a given facility regarding clinical issues*." Exhibit B (CHC-HPL Policies and Procedures for Grundy County Jail) at CHC 8. In addition, the policies state: "The responsible physician has the final responsibility for making and/or approving all medical decisions regarding the care provided to inmates." *Id.* at CHC 12; *see also id.* at CHC 30 (responsible physician must oversee clinical aspects of the emergency response plan).

There can be no reasonable dispute that under CHC and HPL's express policies the buck stops with Defendant Cullinan when it comes to medical issues at the Grundy County Jail. These positive rules and regulations are analytically equivalent to state laws assigning duties among the actors in local governmental units. *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009) ("An executive official may have policymaking authority by express delegation."). In the area of clinical treatment of detainees at the Grundy County Jail, Defendant Cullinan is a final policymaker in the sense that his decisions on the subject of healthcare provided at Grundy County Jail represent CHC and HPL policy. *Cf. Kujawaski*, 183 F.3d at 738.

Moreover, the customs of CHC and HPL are further evidence that Defendant Cullinan was at the apex of clinical decisionmaking at the Grundy County Jail in September 2010. No one even arguable constrained his authority—through policies or otherwise. For starters, all of CHC and HPL's policies were mere "guidelines," and all CHC and HPL representatives who have testified in this case state were not binding on the discretion of doctors practicing in jails. Exhibit C (Wolk Dep.) at 50:22-51:4, 139:4-16; Exhibit D (Streul Dep. at 65:14-23, 66:10-23, 68:5-20, 76:23-77:12); and Exhibit E (Peterson Dep.) at 286:6-287:9, 287:11-16, 386:7-12. So expansive was Defendant Cullinan's authority to disregard written directives that he testified in his

deposition that he did not know anything about CHC and HPL's written policies, Exhibit F (Cullinan Dep.) at 310-11, 405-06, and he testified at trial that the signature on the policies acknowledgement page was not even his, Exhibit G (Trial Transcript, Aug. 6, 2015) at 28:4-6.

Moreover, Dr. Wolk himself testified and will tell the jury that CHC and HPL had no written policies for oversight of doctors, Exhibit C (Wolk Dep.) at 38:20-39:17, and that he peer reviewed Defendant Cullinan's work "not more than three or four times," *id.* at 43:15-16. That is not the type of oversight that can be deemed a meaningful constraint on Defendant Cullinan's ability to exercise policymaking authority over clinical issues at the Grundy County Jail. Indeed, the first time that Dr. Wolk even heard about Mr. Awalt's death was when he received the subpoena for his deposition in this case. *Id.* at 118:23-119:1.[1]

Finally, Defendant Cullinan himself testified that he did not report to Dr. Wolk about his work and was not required to do so. Exhibit F (Cullinan Dep.) at 30:1-31:10. When asked whether he had any supervisor in written discovery, Defendant Cullinan simply said no. Exhibit H (Cullinan's Resp. to Pl.'s First Set of Interrogatories, No. 12).

Defendant Cullinan's authority—whether in a positive enactments like written policies or based on evidence outlining "customs and practices having the force of law," *Valentino*, 575 F.3d at 676—demonstrates that Defendant Cullinan is the policymaker for all clinical issues and medical care of detainees at the Grundy County Jail. Defendant Cullinan is at the "apex of authority" with respect to these issues, and so his actions in these areas are the actions of the corporation. *Gernetzke*, 274 F.3d at 468-69.

---

[1] Whether there is some dispute about whether Dr. Wolk delegated his policymaking authority *with respect to the review of inmate complaints from the Grundy County Jail*—the issue at summary judgment—does not affect the Court's determination of whether Defendant Cullinan was the final policymaker *with respect to the administration of medical care at the Grundy County Jail*.

### III. OTHER FINAL POLICYMAKERS FOR CHC AND HPL

There are other subject areas in which CHC and HPL may well have different final policymaking officials. *Proprotnik*, 485 U.S. at 126 ("[T]here will be cases in which policymaking responsibility is shared among more than one official or body."). Plaintiff intends to submit additional briefing on these final policymakers before the jury is instructed at trial.

WHEREFORE, Plaintiff respectfully requests that the Court find that Defendant Cullinan is a final policymaking authority for CHC and HPL with respect to clinical issues and medical care of detainees at the Grundy County Jail.

RESPECTFULLY SUBMITTED,

/s/ Steven Art
*One of Plaintiff's Attorneys*

Michael Kanovitz
Anand Swaminathan
Cindy Tsai
Steven Art
Sarah Grady
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

      I, Steven Art, an attorney, hereby certify that on August 12, 2015, I caused the foregoing MOTION TO DETERMINE DEFENDANT CULLINAN'S FINAL POLICYMAKING AUTHORITY FOR CORRECTIONAL HEALTHCARE COMPANIES, INC. AND HEALTH PROFESSIONALS, LTD. to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

                                                RESPECTFULLY SUBMITTED,

                                                /s/ Steven Art
                                                One of Plaintiff's Attorneys