UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH AWALT, as Administrator of the Estate of Robert Awalt,<br><br>Plaintiff,<br><br>v.<br><br>RICK MARKETTI, as Administrator of the Estate of Terry Marketti; KEVIN CALLAHAN, in his official capacity as Sheriff of Grundy County; DUANE MCCOMAS, individually and in his official capacity as Superintendent of Grundy County Jail; MELANIE VAN CLEAVE; PATRICK SEALOCK; MATTHEW WALKER; KIM LEAR; ROGER THORSON; ROBERT MATTESON; DAVID OBROCHTA; COUNTY OF GRUNDY; CORRECTIONAL HEALTH COMPANIES, INC.; HEALTH PROFESSIONALS, LTD.; DR. STEPHEN CULLINAN; MARJORIE CLAUSON; unknown employees of Correctional Healthcare Companies, Inc. and Health Professionals, LTD; unknown Grundy County Correctional Officers; unknown Medical Personnel,<br><br>Defendants. | No. 11 C 6142<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Elizabth Awalt ("Plaintiff"), as administrator for the estate of her husband Robert Awalt ("Awalt"), brought this case seeking damages for Awalt's death while he was detained in the Grundy County Jail. Prior to any trial, Plaintiff reached settlements with the Grundy County Sheriff's Office and its employees who were

named as defendants, and Nurse Marjorie Clausen who was employed by Correctional Health Companies, Inc. ("CHC"), and Health Professional, Ltd. ("HPL") (together "CHC/HPL"), which the County contracted with to provide medical services in the Jail. A jury trial proceeded against CHC/HPL and its employee, Dr. Stephen Cullinan. Because evidence relevant to the claims against CHC/HPL was unduly prejudicial to Dr. Cullinan, the trial was bifurcated and claims against him were tried first, with the intent that the same jury would hear the additional evidence against CHC/HPL. The jury hung on the claims against Dr. Cullinan, and the entire bifurcated trial was rescheduled. Before the retrial commenced, Dr. Cullinan settled the claims against him. The trial was again rescheduled, but CHC/HPL settled the claims against it before trial.

The settlements with the County Defendants, Nurse Clausen, and Dr. Cullinan provided for Plaintiff's attorney's fees and expenses. The settlement with CHC/HPL provided that Plaintiff and CHC/HPL would submit a fee petition for resolution by this Court. For the following reasons, the Court awards Plaintiff's counsel $3,279,127.72 in fees and expenses.

## Legal Standard

The Civil Rights Attorney's Fees Awards Act of 1976 provides that a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee" in suits brought under certain federal civil rights statutes, including 42 U.S.C. §§ 1983, 1985, and 1986. 42 U.S.C. § 1988(b). "[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such

an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quotation marks omitted). CHC/HPL has stipulated that Plaintiff is a prevailing party in this case.

"[I]n view of [its] superior understanding of the litigation," this Court has considerable "discretion in determining the amount of a fee award." *Hensley*, 461 U.S. at 437. The Court must "'provide a reasonably specific explanation for all aspects of a fee determination,'" but its explanation "need not be lengthy." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 651 (7th Cir. 2011) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010)).

The "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This calculation is commonly known as the "lodestar." *E.g.*, *Pickett*, 664 F.3d at 639. "The party seeking an award of fees" has the burden to "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.

The hours worked component of the lodestar excludes hours "not reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours. *Id.* at 434 (quotation marks omitted). "[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (quotation marks omitted). The Court also may reduce the hours calculation "[w]here the documentation of hours is inadequate." *Hensley*, 461 U.S. at 433.

The hourly rate component of the lodestar "must be based on the market rate for the attorney's work." *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). "The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* (quotation marks omitted). "The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (quotation marks omitted). "[O]nce an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Gautreaux*, 491 F.3d at 659-60 (quotation marks omitted). In the absence of "evidence of the attorneys' actual market rates," the Court properly considers as "next-best evidence" the "rates awarded to similarly experienced . . . attorneys [from the same city] in other civil-rights cases in the district." *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) (quotation marks omitted). "[T]here is a strong presumption that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554. That presumption can be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a fee." *Id.*

## Analysis

**I.    Fees**

**A.    Rates**

The parties' positions on the appropriate rates for Plaintiff's counsel and paralegals are as follows:

| Attorney Name | Plaintiff's Claim | CHC/HPL's Position |
|---|---|---|
| Arthur Loevy | $600 | $425 |
| Michael Kanovitz | $550 | $400 |
| Jon Loevy | $550 | $450 |
| Dan Twetten | $450 | $300 |
| Joel Feldman | $415 | $300 |
| Elizabeth Wang | $400 | $285 |
| Anand Swaminathan | $400 | $285 |
| Steven Art | $375 | $225 |
| Frank Newell | $375 | $225 |
| Cindy Tsai | $375 | $225 |
| Julie Goodwin | $375 | $220 |
| Sarah Grady | $315 | $215 |
| Tom Kayes | $300 | $215 |
| Sladjana Vuckovic | $275 | $205 |
| Sean Goodwin | $275 | $205 |
| Sam Heppell | $250 | $200 |
| Tim Eavenson | $250 | $200 |
| **Paralegal Name** | | |
| Mort Smith | $150 | $100 |
| Melinda Ek | $150 | $100 |
| Sarah Pfander | $125 | $100 |
| John Darrah | $125 | $100 |
| Tatiana Swancy | $125 | $100 |
| Kelsey Lutz | $125 | $100 |
| Blake Bunting | $125 | $100 |
| Andy Thayer | $125 | $100 |
| Melissa Stein | $125 | $100 |
| Anne Gottschalk | $125 | $100 |
| Caroline Hirst | $125 | $100 |
| Lisa Avila | $125 | $100 |

5

*See* R. 605-1.

In a case that CHC/HPL concedes "addressed similar issues [and] was of similar complexity," Judge Holderman found that attorneys from Plaintiff's counsel's firm (including several of the attorneys in this case) met their burden of establishing the market rate for their services, based on evidence substantially similar to the evidence submitted in support of Plaintiff's petition in this case. Judge Holderman reasoned as follows:

> A court should consider the following factors when setting a reasonable hourly rate:
>
> > (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
>
> *Hensley,* 461 U.S. at 430 n. 3. "The burden of proving the 'market rate' is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Spegon v. Catholic Bishop of Chi.,* 175 F.3d 544, 554-55 (7th Cir.1999). Here [the plaintiff] ha[s] submitted affidavits from each of the attorneys regarding their billing rates, billing records, an expert report by Bruce Meckler surveying prevailing hourly rates in the Chicago area, the Laffey Matrix, and citations to other cases with comparable hourly rate awards to the attorneys in question and other comparable attorneys. Considering the *Hensley* factors, the court finds

6

> that Fox has amply met his burden of demonstrating that
> the requested hourly rates are appropriate.

*Fox v. Barnes*, 2013 WL 4401802, at *2-3 (N.D. Ill. Aug. 15, 2013).[1] With one exception, Judge Holderman's reasoning applies equally to this case, such that Plaintiff has met her burden to establish the market rate for her counsel's services.

The exception is Plaintiff's request for an hourly rate of $600 for Arthur Loevy. This rate is $50 an hour greater than that for Jon Loevy and Michael Kanovitz, who are considered to be in the "top tier of civil rights trial attorneys in the Chicago area." *Jimenez v. City of Chicago*, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14, 2012). Arthur Loevy's additional years of experience as compared to Jon Loevy and Kanovitz appear to be the sole basis for requesting an additional $50 per hour. However, at this level of expertise, an attorney's number of years of experience is largely irrelevant. The Court will limit the "top tier" rate to $550 per hour.

CHC/HPL makes several arguments in attempt to rebut Plaintiff's evidence supporting the hourly rates sought. First, CHC/HPL argues lower rates should be

---

[1] The Laffey matrix is a table of hourly rates prepared by the United States Attorney's Office in the District of Columbia for attorneys in the Washington, D.C. area. The Seventh Circuit has not explicitly endorsed the use of the Laffey matrix, and has "expressed some skepticism about applying the *Laffey* Matrix outside of Washington, D.C." *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014). Nevertheless, the Seventh Circuit has "left it to trial judges to exercise their discretion in evaluating [the Laffey matrix's] usefulness in any particular case," *id.*, and courts in this district have accepted it as evidence of a reasonable hourly rate. *See Hadnott v. City of Chicago*, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010) (citing cases and concluding "that the Laffey Matrix is 'satisfactory evidence' of the prevailing rate, so that the burden shifts to opposing counsel to show why a lower rate is essential").

awarded based on a number of other fee awards in similar cases in this jurisdiction. *See* R. 625 at 9-10 (citing *Weyker v. Quiles*, 2015 WL 5177970 (E.D. Wis. Sept. 4, 2015) ($500 per hour); *Smith v. Altman*, 2015 WL 5675376 (N.D. Ill. Sept. 21, 2015) (counsel with 24 years of experience awarded $425 per hour); *id.* (counsel with 17 years of experience awarded $350 per hour); *Golden v. World Sec Agency Inc.*, 2014 WL 37829 (N.D. Ill. Jan. 6, 2014) (counsel with 20 years of experience awarded $425 per hour); *Degorski v. Wilson*, 2014 WL6704561 (N.D. Ill. Nov. 26, 2014) (counsel with 15 years of experience awarded $450 per hour); *Jimenez*, 2012 WL 5512266 (Jon Loevy awarded $495 per hour; Michael Kanovitz awarded $450 per hour; Arthur Loevy awarded $425 per hour; Joel Feldman awarded $325 per hour; Steve Art awarded $225 per hour)). But CHC/HPL concedes that attorneys from Plaintiff's counsel's firm have been awarded higher hourly rates. *See* R. 625 at 9. And Plaintiff cites a number of civil rights cases from this district which awarded higher fees. *See* R. 614-1 at 10 (citing *Delgado v. Mak*, 2009 WL 211862 (N.D. Ill. Jan. 29, 2009) ($525 per hour); *Foltin v. Ugarte*, 09 C 5237, Dkt. Nos. 144 & 165 (N.D. Ill. 2012) ($535 per hour); *Flanagan v. Cook County*, 2009 WL 3156716, *9 (N.D. Ill. Sep. 28, 2009) ($500 per hour)). Taken as a whole, these past awards do not serve to rebut Plaintiff's requested hourly rates.

CHC/HPL also cites ALM Legal Intelligence's Survey of Law Firm Economics in support of the lower rates they suggest. This survey collected data in 2013 and does not break out data for civil rights attorneys in particular. The Court agrees with Plaintiff that the data for employment law attorneys is the closest analogy.

The survey shows a range of $355 to $481 per hour for attorneys at the partner level, and $265 to $372 per hour for associates, in the area of employment law. *See* R. 625-2 at 164. Taking into account inflation from 2013 when this survey was conducted, this data does not serve to rebut Plaintiff's requested hourly rates.

Lastly, CHC/HPL argues in passing that "attorney years of experience should be considered as of 2012-2014, when the majority of activity occurred, rather than presently in 2016 when only minimal fee petition work has occurred." R. 625 at 10 n.6. Defendants cite no authority for this argument, and it is contrary to Seventh Circuit law. *See Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744-45 (7th Cir. 2003) ("We have allowed district courts to use either current rates or past rates with interest when calculating the lodestar amount, because either method provides an adjustment for delay in payment which is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee[.]"); *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016).

Plaintiff also seeks fees for the work of ten paralegals at $125 per hour, and two at $150 per hour. CHC/HPL argues for a rate of $100 per hour. The case law CHC/HPL cites, however, is somewhat outdated. Moreover, these cases hold that rates lower than Plaintiff's counsel's requested rates are reasonable, not that higher rates are unreasonable. *See* R. 625 at 14. Courts in this district have awarded a $125 per hour rate to Plaintiff's counsel's paralegals. *See Fields v. City of Chicago*, 2018 WL 253716, at *5 (N.D. Ill. Jan. 1, 2018); *Jimenez*, 2012 WL 5512266, at *5. The Court will do so here as well, thus decreasing the rate for two of the paralegals.

9

For these reasons, the Court awards Plaintiff her requested fee rates, with the exceptions noted above.

**B.    Hours**

In addition to arguing that Plaintiff's counsel's hourly rates should be decreased, CHC/HPL make a number of arguments that the Court should decrease the number of hours for which Plaintiff's counsel should be awarded fees. For the following reasons, the Court rejects these arguments.

**1.    Work Related to Other Defendants**

The parties agree that Plaintiff's counsel should not be awarded fees for work related solely to the claims against the County Defendants who settled earlier in the case. Plaintiff identifies 80.35 hours that meet this description, but CHC/HPL argues that this "allocation of 80.35 hours cannot possibly account for the years of litigation of separate and distinct claims against the other Defendants." R. 625 at 18. CHC/HPL challenges a number of line items as unrelated to the claims against them. As Plaintiff points out, however, Plaintiff's counsel have already excluded many of those line items from their fee request. The Court has reviewed the remaining line items and finds they are sufficiently related to claims against CHC/HPL that their inclusion in Plaintiff's fee award is justified.

CHC/HPL appears to seek exclusion of any line item that expressly mentions the County or trial work. But express mention of the County does not make a task any less related to the case as a whole than any other task identified in a line item that CHC/HPL has not sought to exclude. The Supreme Court has held the hours

10

spent pursuing an unsuccessful claim should be excluded from a fee award only if the claim "is distinct in all respects from [the plaintiff's] successful claims." *Hensley*, 461 U.S. at 440. "[W]hen time is spent jointly preparing two distinct claims, the fact that one claim produces no recovery will not deprive the plaintiff of every hour spent in joint preparation." *Nanetti v. Univ. of Ill. at Chi.*, 944 F.2d 1416, 1419 (7th Cir. 1991).

Contrary to CHC/HPL's argument, the claims in this case against the County and its employees, and CHC/HPL and its employees, are not distinct. Although Plaintiff brought a number of claims against a number of defendants, all the claims in this case arose out of actions by County and CHC/HPL employees regarding Awalt's detention, health, and death, in accordance with, or violation of, County and CHC/HPL policies. Indeed, Plaintiff alleged that Awalt's death was the result of County employees following policies set by CHC/HPL. Due to the regular interaction of all defendants in connection with Awalt's death, it makes sense that almost all of Plaintiff's counsel's work would have served to advance claims against all defendants.

CHC/HPL's request to exclude Plaintiff's counsel's time spent preparing for Dr. Cullinen's trial is a case in point. CHC/HPL apparently believes this time should be excluded from the award because the claims against it were not at issue during the trial. But the trial was of Dr. Cullinen, who was a CHC/HPL employee. Moreover, as Plaintiff points out, the Court did not bifurcate the trial because the claims were distinct. Rather, the trial was bifurcated so as not to prejudice Dr.

11

Cullinen. All the evidence in Dr. Cullinen's trial (and by extension the work to present that evidence) would have been relevant to the trial of CHC/HPL, which was to be heard and decided by the same jury. Thus, although the claims against CHC/HPL were not to be decided during the first trial, the attorney work to present the evidence in Dr. Cullinen's trial is indisputably relevant to the claims against CHC/HPL.

### 2. Number of Counsel at Trial

CHC/HPL also argues that Plaintiff's counsel over-staffed Dr. Cullinan's trial, in that that CHC/HPL "had three attorneys who conducted the [trial] against Dr. Cullinan," whereas Plaintiff had "six or more counsel and paralegals who prepared and attended the trial." R. 625 at 21. This is inaccurate. The trial transcripts reflect that five attorneys attended trial for Plaintiff, while four attended trial for CHC/HPL. One attorney is an immaterial difference and is not a justification for decreasing the hours included in Plaintiff's counsel's award.

### 3. Inadequate Billing Entries

CHC/HPL argues that hundreds of Plaintiff's counsel's billing entries are either vague or constitute impermissible "block billing" of multiple activities, "making it impossible to discern the time spent on any specific activity." R. 625 at 17. CHC/HPL, however, does not explain how any particular billing entry is vague or problematically imprecise.

Regarding vagueness, CHC/HPL makes no argument about why it found any particular billing entry to be unclear. The Court has reviewed the billing entries CHC/HPL cites, and the Court does not find them to be vague.

Block billing can be problematic if it prevents a party or the Court from being able to determine whether the amount of time spent on a particular task is reasonable. CHC/HPL, however, does not argue that Plaintiff's counsel spent an unreasonable amount of time on any particular task or the case in general. Rather, CHC/HPL argues that block billing prevents "[t]he Court [from being able to] determine from those entries the time spent on activities related to claims against other Defendants." R. 625 at 17. But CHC/HPL has not articulated a clear principle by which to distinguish work that applied only to the claims against it as opposed to other defendants. And it has not identified any particular billing entry as including work that should not be attributed to the claims against it. This is unsurprising since, as discussed, the claims against CHC/HPL and the other defendants are so intertwined that the vast majority of the litigation work was relevant to all defendants. For that reason, block billing (to the extent Plaintiff's counsel employed it) does not pose the problem it might in a different case with more distinct claims. The Court will not reduce Plaintiff's counsel's fee award on this basis.

### 4. Relative Culpability

CHC/HPL also contends that the hours that are properly attributed to CHC/HPL "should be reduced to a reasonable amount, based on a relative culpability basis." R. 625 at 20. CHC/HPL's argument for a "relative culpability"

reduction is not supported by the cases it cites. In *Volling v. Antioch Rescue Squad*, the court made an assessment of relative culpability to assess fees against certain defendants who had settled while claims against co-defendants continued. 2014 U.S. Dist. LEXIS 51363 (N.D. Ill. Dec. 4, 2012). The fee allocation was an interim decision until the liability of all the defendants was determined.

In *Harvey v. Mohammed*, the court set-off a fee award based on prior settlements. 951 F. Supp. 2d 47 (D.D.C. 2013). CHC/HPL, however, waived this option in their settlement agreement. And CHC/HPL does not request a set-off on this motion.

CHC/HPL also argues that "regardless of whether the [C]ounty Defendants were jointly and severally liable [for Plaintiff's claims], fees for time spent against all of the Defendant collectively [should] be divided equally among them." R. 625 at 24 (citing *Halderman v. Pennhurst State Sch. & Hosp.*, 725 F. Supp. 861 (E.D. Pa. 1989)). Generally, co-defendants who are jointly and severally liable for a civil rights violation are jointly and severally responsible for payment of attorney's fees under Section 1988. *See Robinson v. City of Harvey*, 617 F.3d 915, 917 (7th Cir. 2010) ("[W]hen multiple defendants are jointly and severally liable for an award of damages, they are also jointly and severally liable for attorneys' fees under § 1988."). The Seventh Circuit has also held, however, that "it may be appropriate for the district court to apportion fees between an active instigator of a wrong and more passive codefendant who had a more peripheral or ministerial role in the wrong." *Herbst v. Ryan*, 90 F.3d 1300, 1305 (7th Cir. 1996) (citing *Council for Periodical*

14

*Distributors Assocs. v. Evans*, 827 F.2d 1483, 1487 (11th Cir. 1987)). But CHC/HPL makes no such argument. Rather, CHC/HPL merely divides liability equally among all the defendants during the time periods preceding their settlements. *See* R. 625 at 20. This is not what the Seventh Circuit has contemplated, and it strikes the Court as highly inequitable. Moreover, the Court does not perceive CHC/HPL as having a "peripheral or ministerial role" in this case. To the contrary, the procedures for providing medication and physician visits to inmates at the Jail were central to Plaintiff's allegations. Therefore, the Court rejects CHC/HPL's request to apportion fees.

### 5. Relevance of Prior Settlements and Representations to Probate Court

Lastly, CHC/HPL argues that Plaintiff's counsel made representations regarding fees in a settlement with the County, and to the probate court in seeking approval of settlements with Dr. Cullinan and Nurse Clauson, that undermine their contention that the fees they seek by this petition are reasonable. Defendants point out that Plaintiff's counsel agreed that $250,000 is attributable to fees and costs in their settlement with the County, and that they represented that $720,000 in fees and $334,740.31 in costs was "reasonable" in seeking approval of settlements from the probate court. Of course, these representations were made in the context of the particular agreements and proceedings at issue. More importantly, neither was a representation that the amounts constituted the entirety of Plaintiff's counsel's fees and costs. For these reasons, these representations are irrelevant to the instant inquiry.

15

### C.    Fee Totals

Plaintiff's counsel seeks fees in the amount of $3,187,175. The Court has decreased the rate for attorney Arthur Loevy from $600 per hour to $550 per hour. Arthur Loevy billed 178 hours in this case. Multiplying $550 per hour by 178 hours results in a total of $97,900, which is $8,900 less than Plaintiff's counsel's request.

The Court also has decreased the rate for paralegals Mort Smith and Melinda Ek from $150 to $125 per hour. Smith and Ek billed a combined total of 225 hours in this case. Multiplying $125 per hour by 225 hours results in a total of $28,125, which is $5,625 less than Plaintiff's counsel's request.

The Court's order decreased Plaintiff's counsel's fee award by a total of $14,525. Therefore, the Court awards Plaintiff's counsel fees in the amount of $3,172,650.

## II.    Expenses

### A.    Expert Witnesses

Plaintiff seeks an expense award including fees paid to expert witnesses. In 1991, the Supreme Court held that whether expert fees are recoverable in a case brought pursuant to Section 1988 is covered by the statutory text, and at that time the statute did not provide for recovery of such expenses. *See W.V. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86-87, 101 (1991). Shortly thereafter, Congress amended the statute to provide for recovery of expert fees, but only in cases brought pursuant to Section 1981 or 1981a, not cases brought pursuant to Section 1983. See 42 U.S.C. § 1988(c) ("In awarding an attorney's fee under subsection (b) of this section in any

16

action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court may include expert fees as part of the attorney's fee."). Other courts in this district and around the country have recognized that the statute controls what expenses are recoverable, and have held that expert fees are not recoverable in a Section 1983 case. *See Thorncreek Apartments I, LLC v. Village of Park Forest*, 2016 WL 4503559, at *11 (N.D. Ill. Aug. 2016); *Fields*, 2018 WL 253716, at *11 (describing this as "an unfortunate gap").

Plaintiff cites several cases in which courts in this district have awarded expert fees as expenses under Section 1988. *See* R. 636-1 at 24. Those cases, however, did not address Congress's failure to include Section 1983 claims in the scope of the statute. Plaintiff argues that "fundamental principles governing fee shifting support reimbursement of expert witness fees." *Id.* But any such principle is superseded by the Supreme Court's decision that the statute controls what expenses are recoverable under Section 1988. The Court finds that Section 1988 does not permit recovery of expert fees in a Section 1983 case, and so will not award them here. By the Court's count, the expenses associated with experts to which CHC/HPL has objected total $271,392.10. This amount is subtracted from the award.

### B. Other Expenses

Plaintiff's counsel has submitted a 20-page spreadsheet listing their expenses and hundreds of page of receipts as justification. CHC/HPL makes both categorical and particular objections to Plaintiff's counsel's expense requests. CHC/HPL also

argues that Plaintiff's counsel has failed to sufficiently justify many expenses such that it is not possible to determine whether they were reasonably incurred. The Court reviewed each objected to expense line item, and will address CHC/HPL's objections in turn.

### 1. Copying

CHC/HPL objects to the inclusion of copying expenses in the award petition. By the Court's count this totals $17,661.71. This is a reasonable amount for copying in a case spanning over five years, and there is no obligation to justify copying costs on a document-by-document basis. *See Nat'l Org. for Women, Inc. v. Schneidler*, 750 F.3d 696, 698 (7th Cir. 2014) ("Having a lawyer devote the time necessary to demonstrate the necessity of . . . every copy of a document would be far more costly than the copying itself."). Thus, the Court will not exclude this amount from the award.

### 2. Court Reporters

CHC/HPL also objects to expenses for canceled depositions on August 28 and 29, 2012, and March 25 and 27, 2013. These are reasonably incurred litigation expenses, which the Court includes in the award. The Court, however, excludes the expense for an expedited deposition transcript invoiced on May 20, 2013, as no justification for the expense to expedite was provided.

### 3. Mailing & Travel

CHC/HPL's remaining objections are primarily to mailing and travel expenses. CHC/HPL objects that Plaintiff's counsel has failed to explain the purpose

of many of the mailing charges. But mailing of documents and other materials is inherently necessary for prosecution of a case. And like the Seventh Circuit held with regard to copying, the Court finds it unreasonable to require counsel to record the purpose of every package sent in the course of a litigation.

However, the Court notes that Plaintiff's counsel's petition includes many charges for next day mail or delivery service, without justification for this additional cost. Of course, the Local Rules for this district require next day delivery of courtesy copies, so use of next day or messenger service is justified for such deliveries.[2] But without an analogous justification for other instances of use of next day delivery service, the Court will not award those expenses.

Contrary to CHC/HPL's argument, the expense of local travel (including by taxi) is recoverable when reasonable. *See Fields*, 2018 WL 253716, at *11. The cost of gasoline, parking, and airfare is similarly compensable if sufficiently justified. Some of Plaintiff's counsel's travel expenses were sufficiently justified to enable the Court to determine that they were reasonable. For instance the cost of parking to attend status hearings on April 4, 2012, and May 22, 2012; and the parking and car rental expenses for defendant Robert Matteson's deposition on January 30 and February 1, 2013. There is a basis for the Court to find these expenses were reasonably made because the documentation provided explains their purpose. Thus, the Court has included such expenses in the award.

---

[2] Review of this fee petition has led the Court to amend its case procedures (as posted its website) to prohibit the expense of next day delivery or messenger delivery of courtesy copies going forward.

For many other claimed expenses, however, Plaintiff's counsel failed to provide similar information. For many expense items, the only information provided is a date and a notation attributing the expense to the "Awalt" case. The notation associating an expense with this case is not helpful to the Court in determining whether the expense is reasonable. Clearly, Plaintiff's counsel believes all these expenses were necessary to prosecute the case, otherwise they would not have included them in their petition. Similarly unhelpful is the date, because the Court does not have a calendar of events—such as depositions and witness interviews—that would allow the Court to verify that an expense is reasonable.

All that being said, it would be unreasonable and unjust to deny Plaintiff's counsel the entirety of their travel and other expenses for a case that lasted more than five years. There is no doubt that in that time counsel traveled to numerous events necessary to prosecute the case. The documentation submitted with the petition, including affidavits from Plaintiff's counsel and their staff, is sufficient to justify some award of expenses.

By the Court's count, the objected-to expenses for mailings, travel, and other incidental expenses which the Court finds are insufficiently supported according to the reasoning discussed above total $29,689.68. Because the Court finds that some award of such expenses is reasonable and justified, the Court will award one third, or $9,896.56 of this amount, subtracting the other two-thirds, or $19,793.12, from the award..

## C.    Expense Totals

Plaintiff's counsel seek an amended expense award of $397,662.94. The Court has held that $271,392.10 in expert expenses are not compensable. The Court also has held that $19,793.12 in other expenses are also not compensable. Therefore, the Court awards Plaintiff's counsel a total of $106,477.72 in expenses.

## Conclusion

For the foregoing reasons, the Court awards Plaintiff's counsel a total of $3,172,650.00 in fees, and $106,477.72 in expenses, for a grand total award of $3,279,127.72.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  May 23, 2018